**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT D. KRAUSE, AIS # 248039,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **2:07-cv-00468-MEF-TFM** |
| | ) | |
| **PRISON HEALTH SERVICES, INC. AND** | ) | |
| **RICHARD ALLEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**SPECIAL REPORT AND ANSWER OF**
**DEFENDANT PRISON HEALTH SERVICES, INC.**

---

COMES NOW, Defendant PRISON HEALTH SERVICES, INC. ("PHS"), pursuant to this Court's Order dated July 31, 2007, requiring PHS to provide its Special Report and Answer, and submits the following Special Report and Answer addressing the allegations asserted by Plaintiff ROBERT D. KRAUSE ("Plaintiff"):

**I.    INITIAL DISCLOSURES**

PHS makes the following initial disclosures as required by this Court's July 31, 2007, Order for Special Report:

A.    The sworn statement of Dr. John Peasant[1];

B.    The sworn statement of Nettie Burks[2]; and

---

[1]    A true and correct copy of Dr. John Peasant's affidavit ("Peasant Aff.") is attached hereto as **Exhibit A** and incorporated herein by reference.

[2]    A true and correct copy of Nettie Burks' affidavit ("Burks Aff.") is attached hereto as **Exhibit B** and incorporated herein by reference.

C.    The sworn statement of Evelyn Campbell with a true and correct copy of excerpts from Plaintiff's medical records attached thereto.[3]

## II.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

### A.    PROCEDURAL HISTORY

Plaintiff instituted this action on or about May 24, 2007. (See Complaint). In his Complaint, Plaintiff names as Defendants, the Alabama Department of Corrections, Prison Health Services, Inc., Commissioner Richard Allen and Governor Bob Riley. (See Complaint at p. 1). According to Plaintiff, his substantive claim arises out of a purported violation of his constitutional rights because he was "denied medical treatment" on or about July 1, 2006. (Id. at p. 2). In the narrative on page 3 of Plaintiff's Complaint, he provides a myriad of allegations regarding the conditions of his confinement at Ventress Correctional Facility ("Ventress") as well as certain complaints related to medical treatment he has sought and/or received for a hernia. (Id. at p. 3). Specifically, Plaintiff claims that he was "diagnosed with hernia [on] August 8, 2006," and was transferred from Kilby Correctional Facility to Ventress on September 13, 2006. (Id.). Though it is unclear from the specific allegations in Plaintiff's Complaint, Plaintiff apparently alleges that the hernia in his "private area" is "larger than a softball, very painful," and that the medical staff at Ventress has "sandbagged on ordering operation for over ten months." (Id.).

Though Plaintiff alleges that "more [than] 60% of the inmates at Ventress will experience either their TP germ, staff infection or get [hepatitis] if they are treated at the dentist," Plaintiff does not allege that he has contracted any of these infectious diseases and/or infections or has

---

[3]    A true and correct copy of Evelyn Campbell's affidavit ("Campbell Affidavit") is attached hereto as **Exhibit C** and incorporated herein by reference. For purposes of this Special Report and Answer, PHS will cite to and refer to portions of Plaintiff's medical records by Bates-number which begin with the prefix "PHS."

been injured in any way as a result of any medical condition of any other inmate at Ventress. (Id. at p. 3). In addition to his Complaint regarding the presence of infectious diseases and/or his hernia condition, Plaintiff also complains about overcrowding and various other aspects of his confinement at Ventress which do not relate in any way to PHS. (Id.).

On May 30, 2007, the Court entered its Order for Defendants to submit Special Report. (Doc. 4). PHS subsequently requested additional time due to the belated service of the Complaint in this action upon PHS and, in response to PHS's request for additional time, the Court extended PHS's deadline to respond to the Complaint in this action until August 29, 2007.

**B.      PROCESSES AND PROCEDURES AT VENTRESS CORRECTIONAL FACILITY**

**1.      SICK CALL PROCESS**

When an inmate has a non-emergency medical or health problem and/or complaint, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff at Ventress and/or request medical treatment for this problem. (Burks Aff. at ¶ 5). The sick call request process is well-known at Ventress and is utilized by inmates at Ventress on a daily basis. (Id.). When an inmate first arrives at Ventress, he is taken to the Health Care Unit to be processed into the system and receives an orientation as to the availability of medical services at the facility as well as the procedures for obtaining medical care. (Id.). During this orientation, the medical staff gives each inmate an information sheet and verbally goes through the sheet with newly-arriving inmates, informing them how to utilize the sick call request form process. (Id.).

Sick call request forms are available in the Health Care Unit at the shift commander's station or may be obtained from the ADOC officer in each dorm at Ventress. (Id.). An inmate making a sick call request is required to complete the top portion of the sick call request form

(stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature) and submit the sick call request form by placing it in a locked box located outside the facility's kitchen (i.e., chow hall). (Id.).  The sick call request forms are removed from the locked box each day and brought to the Health Care Unit. (Id.). Upon retrieving the sick call request forms, the medical staff compiles a list of inmates having submitted a sick call request form, which is sent to the various dorms at Ventress. (Id.).

Ventress conducts sick call five (5) times per week, Sunday through Friday excluding holidays or unexpected emergencies. (Id.).  Sick call begins at 7:00 p.m. and lasts as long as required to examine all the inmates who report to sick call. (Id.).  Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints at the time they are summoned to the Health Care Unit for sick call. (Id.).

The number of inmates reporting to sick call each day varies between approximately ten (10) and thirty-five (35). (Id.).  The nurse conducting sick call takes reporting inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Ventress. (Id.).  If the inmate fails to report to sick call when summoned, this is often indicated in the sick call request form because it is left blank by the medical staff. (Id.).  If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-threatening, the medical staff will immediately have the inmate brought to the infirmary (located within the Health Care Unit) and the inmate will be examined and treated by a physician. (Id.).

## 2. GRIEVANCE PROCEDURE

The medical staff at Ventress also utilizes a well-established grievance procedure for any inmate who wishes to voice a complaint regarding any medical treatment he has sought or received during his incarceration at Ventress. (Id. at ¶ 6). The initial orientation process at Ventress includes educating inmates as to the availability of the grievance process. (Id.). The existence of Ventress's grievance procedure is well-known among the prison population, as indicated by the fact that the Health Services Administrator ("HSA") at Ventress receives inmate requests and/or inmate grievances on a daily basis. (Id.). The physicians, nurse practitioners, nurses and other medical personnel at Ventress attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted. (Id.). Plaintiff acknowledged receiving the "Access to Health Care" information sheet detailing the various processes and procedures for obtaining health care and/or voicing complaints or concerns regarding a medical condition or problem on September 15, 2006. (Id. and PHS047).

The grievance process is initiated when an inmate submits an informal Inmate Grievance form to the HSA through the institutional mail system. (Id.). This request is reviewed by the HSA and the HSA then provides a written response within five (5) days of receipt of the Inmate Grievance. (Id.). The written response to an Inmate Grievance is included on the bottom portion of the same form containing an inmate's Inmate Grievance. (Id.). Below the portion of the form designated for the "Response," the following notation appears:

> IF YOU WISH TO APPEAL THIS REVIEW YOU MAY REQUEST A <u>GRIEVANCE APPEAL</u> FORM FROM THE HEALTH SERVICES ADMINISTRATOR. RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEALTH SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.

(Id. and PHS002-3).

As stated in the Inmate Grievance forms, the second step of the grievance process involves the submission of a formal Grievance Appeal, at which time the inmate may be brought in for one-on-one communication with the HSA and/or the Director of Nursing. (Id.).  A written response to a formal Grievance Appeal is provided within five (5) days of receipt. (Id.).  Inmate Grievance and Grievance Appeal forms are available from the correctional officers at Ventress. (Id.).  Inmates are instructed to place completed Inmate Grievance and Grievance Appeal forms in the sick call boxes located throughout the facility. (Id.). When received in the Health Care Unit, Inmate Grievance and Grievance Appeal forms are sent to the HSA by the medical records clerk or administrative assistant. (Id.).  The HSA reviews Grievances on a daily basis, provides a response within five (5) days at the bottom of the form and returns a copy of the completed forms to the inmate. (Id.).  The HSA at Ventress encourages inmates who have complaints about the medical care they have sought or received at Ventress to utilize this grievance process.

### C.    MEDICAL TREATMENT PROVIDED TO PLAINTIFF AT VENTRESS.

Within 24 hours of his arrival at Ventress from Kilby Correctional Facility, Plaintiff was examined by the medical staff. (Peasant Aff. at ¶ 4; PHS054).  Upon screening Plaintiff upon his arrival at Ventress, the medical staff noted that Plaintiff was suffering from an inguinal hernia and was using an athletic supporter at the time. (Peasant Aff. at ¶ 4; PHS054, 95).   Plaintiff received a profile ordering him to utilize an "athletic support" or binder for his hernia and was also instructed to avoid straining or lifting more than twenty (20) pounds for a period of 80 days. (Peasant Aff. at ¶ 4; PHS034, 36).

In his practice, Dr. Peasant, the site medical director at Ventress, has on numerous occasions evaluated persons who suffer from various types of hernias. (Peasant Aff. at ¶ 5). An inguinal hernia occurs when muscle in the groin area becomes weakened and permits tissue to be

pushed through the muscular wall. (Id.).  The tissue pushing through the muscle wall of the groin may cause a bulge in the groin or scrotum. (Id.).  Hernias most often occur in those individuals who are overweight or engage in a great degree of lifting or straining. (Id.).  A large number of inguinal hernias are asymptomatic and do not pose any specific risks to the patient and/or pose any long-term health complications for patients. (Id.).  One of the key clinical factors in determining the appropriate course of treatment for inguinal hernias constitutes a physical examination of the hernia and a determination as to whether the hernia is "reducible" or not. (Id.).  An inguinal hernia is "reducible" if applying pressure to the hernia permits a physician to compress the hernia in such a fashion so as to push the bulging tissue back through the muscle wall in the groin. (Id.).  If a hernia should not be reducible at any point in time, then surgery is necessary and appropriate. (Id.).

At no time during Dr. Peasant's examination of Plaintiff did the Plaintiff ever indicate or demonstrate that his hernia was not reducible. (Peasant Aff. at ¶ 6).  The commonly accepted in the field of medicine that the initial course of treatment for a patient with a hernia is compression of the hernia through the use of a binding truss, which basically constitutes a cloth wrapping utilized to compress the tissue back inside the muscular wall. (Id.).  In some instances, the use of a truss over the course of a period of months may result in a self-correction of a hernia without surgery and the pain and complications associated with surgery. (Id.).  Surgical repair of a hernia is appropriate if prolonged use of the truss does not correct the hernia or if the hernia is not reducible. (Id.).  In addition to the risks inherent in any surgical procedure, the surgical repair of a hernia does not always result in a correction of the hernia and there exists a significant likelihood that a surgical repair of a hernia may not prevent a recurrence of the original hernia or

result in additional hernias. (Id.).  Given these risks, the use of a truss is the first step in the course of treatment for a hernia. (Id.).

On September 18, 2006, Plaintiff refused to accept a copy of a "profile"[4] from the Ventress medical staff permitting him the use of truss to bind his hernia.  (Peasant Aff. at ¶ 7; PHS033). Plaintiff was tested for tuberculosis by the medical staff at Ventress on October 3, 2006, and tested negative.  (Peasant Aff. at ¶ 8; PHS046).  Though there are inmates who have contracted infectious diseases at Ventress, Plaintiff has not tested positive for any of these infectious diseases and, to the best of Dr. Peasant's knowledge, has not been exposed to any infectious diseases. (Id.).

When Plaintiff was evaluated by the medical staff on October 31, 2006, he complained that the abdominal truss provided for him was uncomfortable and that he had not been wearing it for any prolonged periods of time. (Peasant Aff. at ¶ 9; PHS005).  During the October 31, 2006, appointment, Plaintiff was counseled on the importance of wearing the provided truss and instructed that all of the existing profiles would be continued. (Peasant Aff. at ¶ 9; PHS005). In an order dated October 31, 2006, Plaintiff was directed to return to the Health Care Unit for a follow-up appointment in approximately four weeks after utilizing the truss provided to him. (Peasant Aff. at ¶ 9; PHS103).

Plaintiff was evaluated on November 30, 2006, by the medical staff. (Peasant Aff. at ¶ 10; PHS004).  At the time of his November 30, 2006, appointment, Plaintiff appeared at the Health Care Unit, but was not wearing the "truss" provided by the medical staff because it was mistakenly confiscated during an inspection of his personal effects by the correctional staff.

---

[4]    Throughout his incarceration at Ventress, Plaintiff received numerous "profiles," which are orders signed by his treating physician ordering the correctional staff to allow an inmate to deviate from the standard protocols, procedures and policies at Ventress due to his medical condition. (Burks Aff. at ¶ 4).

(Peasant Aff. at ¶ 10; PHS004). At the conclusion of the November 30, 2006, appointment, Plaintiff received a new truss plus a physician's order directing correctional staff to allow Plaintiff to retain the truss on his person and/or ordering Plaintiff submit a sick call for a follow-up appointment with the medical staff in approximately thirty (30) days. (Peasant Aff. at ¶ 10; PHS004, 103).

The medical staff re-evaluated Plaintiff's hernia condition on January 25, 2007. (Peasant Aff. at ¶ 11; PHS004). At that time, Plaintiff complained that he had not received the truss as ordered, but also stated that the truss previously provided "did not work." (Id.). On January 25, 2007, Plaintiff received a "profile" in which he was instructed to utilize a truss to compress his hernia and to avoid standing for longer than twenty (20) minutes for a period of 180 days. (Peasant Aff. at ¶ 11; PHS004, 43, 102).

Plaintiff was evaluated during sick call on February 6, 2007, and complained that his hernia was getting "bigger." (Peasant Aff. at ¶ 12; PHS091). In response to these complaints, the medical staff at Ventress ordered that Plaintiff be admitted to the infirmary for bed rest and to receive Motrin for any pain associated with his hernia. (Peasant Aff. at ¶ 12; PHS101). Plaintiff later executed a "Release of Responsibilities," acknowledging his refusal to remain in the infirmary for monitoring by the Ventress medical staff. (Peasant Aff. at ¶ 12; PHS032). Though Plaintiff received a prescription for Motrin, three times per day during the period of time between February 6, 2007, and February 13, 2007, Plaintiff only appeared to receive his medication at pill call on two separate occasions. (Peasant Aff. at ¶ 12; PHS084).

Plaintiff's hernia was evaluated by the medical staff on February 28, 2007. (Peasant Aff. at ¶ 13; PHS007). During the February 28, 2007, examination, the medical staff noted that Plaintiff was wearing a "scrotal support," but not the truss provided to him. (Id.). At the

conclusion of the February 28, 2007, examination, Plaintiff was instructed to use the truss as prescribed by the medical staff. (Id.). On February 28, 2007, Plaintiff received orders from the medical staff at Ventress directing him to utilize only a bottom bunk for a period of 180 days, avoid lifting any weight greater than twenty (20) pounds for a period of twelve (12) months and avoid any straining activity for a period of twelve (12) months. (Peasant Aff. at ¶ 13; PHS031, 101).

When the medical staff examined Plaintiff on March 29, 2007, the medical staff concluded that the truss provided to him was not alleviating his hernia and that surgical evaluation by an outside specialist was necessary. (Peasant Aff. at ¶ 14; PHS007). Plaintiff was notified of his appointment with the site physician for evaluation of his hernia on March 29, 2007. (Peasant Aff. at ¶ 14; PHS042). In an order dated March 29, 2007, Dr. Peasant ordered Plaintiff to return for a follow-up appointment in three weeks and ordered the medical staff to obtain an appointment for Plaintiff with an outside specialist for consultation regarding a possible surgical intervention with regard to his hernia condition. (Peasant Aff. at ¶ 14; PHS101). As of March 29, 2007, Plaintiff's hernia was not a life-threatening condition and did not pose any significant threat to his welfare or his overall health. (Peasant Aff. at ¶ 14).

Between March 31, 2007, and June 28, 2007, Plaintiff received a prescription for Motrin to be taken as much as four times a day as needed. (Peasant Aff. at ¶ 15; PHS079). During this same period of time, Plaintiff only appeared at pill call on five separate occasions to receive the Motrin prescribed to him by the medical staff at Ventress. (Id.).

When the medical staff evaluated Plaintiff on April 19, 2007, the medical staff noted that Plaintiff was still awaiting his previously scheduled appointment with an outside specialist. (Peasant Aff. at ¶ 16; PHS006). Plaintiff attended an appointment with Dr. Brian R. Whyte of

Advanced Surgical Associates, P.C. on April 26, 2007. (PHS073-74). Upon examining Plaintiff, Dr. Whyte indicated that the inguinal hernia in Plaintiff's groin was "reducible," but could be surgically repaired. (Peasant Aff. at ¶ 16; PHS074).

On May 7, 2007, the medical staff at Ventress requested permission to proceed with obtaining a surgical repair of Plaintiff's hernia. (Peasant Aff. at ¶ 17; PHS072). Plaintiff was evaluated again on May 10, 2007, by the medical staff. (Peasant Aff. at ¶ 17; PHS006). During the May 10, 2007, examination, the medical staff noted that there was no marked change in Plaintiff's hernia and that the consultation with the surgeon resulted in a recommendation of proceeding with a surgical repair of his hernia. (Id.).

On June 20, 2007, Dr. Brian C. Gary, the specialist with Advanced Surgical Associates, P.C., approved Plaintiff to proceed with surgery on June 28, 2007. (Peasant Aff. at ¶ 19; PHS070). In preparation for his upcoming surgery, Dr. Peasant immediately ordered Plaintiff to undergo lab testing, an EKG and an x-ray of his chest. (Peasant Aff. at ¶ 19; PHS100). On June 20, 2007, Dr. Peasant also ordered the medical staff to schedule and prepare Plaintiff for a surgical repair of his hernia on June 28, 2007. (Id.). Plaintiff underwent a pre-operative imaging study of his chest on June 22, 2007. (Peasant Aff. at ¶ 19; PHS059). On June 21, 2007, the Ventress medical staff also collected blood samples from Plaintiff in order to verify his ability to proceed with surgery. (Peasant Aff. at ¶ 19; PHS060).

**Plaintiff underwent the surgical repair of his hernia on June 28, 2007.** (Peasant Aff. at ¶ 20). When Plaintiff returned to Ventress following his surgery on June 28, 2007, Plaintiff received medications in order to alleviate his post-operative pain. (Peasant Aff. at ¶ 20; PHS028). Specifically, Plaintiff received Loritab and Tylenol for his complaints of post-surgical pain. (Peasant Aff. at ¶ 20; PHS080-81, 99-100).

Plaintiff was admitted to the infirmary at Ventress for post-operative monitoring. (Peasant Aff. at ¶ 21; PHS010). Plaintiff was housed in the infirmary from June 28, 2007, until July 5, 2007, during which time he was monitored on a constant basis by the medical staff and evaluated at very points throughout the day. (Peasant Aff. at ¶ 21; PHS010-27). As indicated in the Plaintiff's medical records, the post-operative monitoring of Plaintiff demonstrated that Plaintiff's hernia condition and/or his recover from surgery proceeded in appropriate fashion. (Id.).

The medical staff at Ventress conducted a post-operative evaluation of Plaintiff on July 2, 2007, and noted that Plaintiff continued to experience some swelling as a result of his hernia repair. (Peasant Aff. at ¶ 22; PHS008). During the July 2, 2007, examination, Plaintiff was instructed to continue his post-operative instructions. (Id.). The following day, the medical staff again evaluated Plaintiff and noted that the swelling associated with Plaintiff 's hernia repair had decreased and ordered Plaintiff to return for follow-up evaluation in the near future. (Id.).

As of July 5, 2007, Plaintiff indicated that he did not have any complaints of pain or discomfort and an examination revealed that his surgical hernia repair continued to heal in the appropriate manner. (Peasant Aff. at ¶ 23; PHS009). On July 5, 2007, the medical staff removed the staples utilized to close the incision associated with the hernia repair. (Id.). As of July 5, 2007, the day when Plaintiff was discharged from the Ventress infirmary, Plaintiff did not voice any complaints and received specific instructions to continue his post-operative recovery. (Peasant Aff. at ¶ 23; PHS026-27). Specifically, Plaintiff was instructed in an order dated July 5, 2007, to avoid lifting any weight greater than fifteen (15) pounds for a period of 180 days, to apply ointment to his surgical wound for a period of seven days and to report to the Health Care Unit on July 9, 2007, for a follow-up appointment with the site. (Peasant Aff. at ¶ 23; PHS027,

40). Plaintiff's post-surgical evaluation on July 9, 2007, and July 23, 2007, both indicate that he fully recovered from the hernia surgery. (Peasant Aff. at ¶ 24; PHS097).

Throughout his incarceration at Ventress, Plaintiff has utilized the sick call process to bring any of his complaints to the attention of the medical staff. (Peasant Aff. at ¶ 25). Plaintiff submitted a sick call request form dated September 6, 2006, requesting medical attention for his hernia. (Peasant Aff. at ¶ 25; PHS096). In a sick call request form dated September 17, 2006, Plaintiff requested a special needs form which had been provided to him at Kilby. (Peasant Aff. at ¶ 25; PHS094). Rather than attending sick call, Plaintiff signed a waiver indicating his acceptance of the circumstances and his refusal to cooperate during sick call. (Id.). Plaintiff completed a sick call request form on October 23, 2006, complaining of a toothache. (Peasant Aff. at ¶ 25; PHS055). Plaintiff submitted a sick call request form dated October 26, 2006, in which he complained that a hernia in his groin was causing discomfort and requested to see a physician. (Peasant Aff. at ¶ 25; PHS092). Plaintiff was evaluated during sick call on October 27, 2006. (Peasant Aff. at ¶ 25; PHS092-93). On July 9, 2007, Plaintiff completed a sick call request form requesting a follow-up for his hernia surgery. (Peasant Aff. at ¶ 25; PHS090). Plaintiff was evaluated during sick call on July 9, 2007, which eventually led to my follow-up examination of him. (Id.). In sum, Plaintiff submitted two sick call request forms raising complaints about his hernia before undergoing surgery. (Peasant Aff. at ¶ 25).

The surgical repair of Plaintiff's hernia was not ordered in response to this lawsuit, but the process for the surgical repair of his hernia was on-going at the time he filed this lawsuit. (Peasant Aff. at ¶ 27).

### D.     GRIEVANCES FILED BY PLAINTIFF.

Plaintiff filed an "Inmate Grievance" on December 18, 2006, complaining that his hernia was causing him "discomfort and pain [and was] getting larger." (Burks Aff. at ¶ 7 and PHS002).

In the December 18, 2006, Inmate Grievance, he requested medical attention for his hernia "so it can be fixed." (Id.).  In response to the December 18, 2006, Inmate Grievance, the HSA at Ventress reviewed his medical records and confirmed that Plaintiff had been evaluated by the medical staff on October 31, 2006, regarding his hernia condition and was scheduled to be re-evaluated on January 25, 2007. (Id.).  After receiving this response to his Inmate Grievance, Plaintiff did not file any "Grievance Appeal." (Id.).

Plaintiff submitted a second Inmate Grievance dated April 17, 2007, complaining that he had seen a physician on several occasions for evaluation of his hernia condition but required additional medical treatment. (Burks Aff. at ¶ 8 and PHS003).  In a response dated April 17, 2007, the HSA at Ventress informed Plaintiff that he was scheduled for an appointment with a free world physician (i.e. a surgeon) to evaluate the current status of his hernia condition as well as any potential surgical repair of his hernia. (Id.).  Pursuant to existing security protocols at Ventress, Plaintiff was not informed of the date of his appointment with an outside physician and the medical staff was not authorized to provide such information to Plaintiff. (Id.). After receiving this response to his Inmate Grievance, Plaintiff did not file any "Grievance Appeal." (Id.).  Plaintiff never completed the well-established grievance process at Ventress with regard to either of the initial grievances submitted by him. (Burks Aff. at ¶¶ 7-8 and PHS002-3).

## III.    DISCUSSION

Plaintiff's Complaint is based exclusively upon his contention that the medical staff "sandbagged" for 10 months before providing him with any meaningful treatment for his inguinal hernia. (Complaint at p. 3).  As indicated through the attached medical records and affidavits, Plaintiff filed this suit while awaiting a surgical procedure to repair his inguinal hernia.  Plaintiff underwent surgery to correct his inguinal hernia on June 28, 2007. (Peasant Aff. at ¶ 20).  His claims must therefore be limited to his disagreement with the course of treatment

prescribed by the medical staff at Ventress and the passage of time prior to his surgery. Plaintiff's disagreement with the type of medical treatment provided by PHS, the order in which treatment was provided and the process for ensuring the surgical repair of his hernia does not automatically equate an Eighth Amendment claim brought pursuant to 42 U.S.C. § 1983. The evidence presented by PHS demonstrates:

(1)    PHS did not violate Plaintiff's Eighth Amendment right to necessary medical treatment;

(2)    Section 1983 does not permit any finding of liability against PHS on the basis of *respondeat superior*; and

(3)    Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).

Moreover, Plaintiff does not allege in his Complaint that he did not receive any medical treatment or attention for his hernia. Plaintiff's Complaint does not identify any specific instance when he requested medical treatment and PHS refused to provide him with any necessary medical treatment. In sum, Plaintiff simply claims that he was dissatisfied with the specific treatment prescribed for him and the manner in which such treatment was provided. For these reasons and the reasons stated below, Plaintiff is not entitled to assert a claim for deliberate indifference against PHS. Even if Plaintiff's Complaint stated a claim against PHS, such claims are precluded by the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

A.    PHS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHT TO NECESSARY MEDICAL TREATMENT.

Plaintiff's Complaint is devoid of any specific allegation as to the legal basis of his claim, but his allegation that he was "denied medical treatment" indicates his intentions of bringing a claim against PHS for alleged deliberate indifference to his serious medical need, i.e. a purported violation of his Eighth Amendment rights to necessary medical treatment. (Complaint at p. 2).

The Eighth Amendment[5] does not on its face reference in any way any medical care due to incarcerated persons.  See e.g. Marsh v. Butler County, Ala., 268 F. 3d 1014, 1038 (11th Cir. 2001)(en banc).  In Estelle v. Gamble, 429 U.S. 97(1976), the United States  Supreme Court first inferred a prisoner's "right" to necessary medical care from the text of the Eighth Amendment. In reaching this conclusion, the Estelle Court held that the prohibition against cruel and unusual punishment in the Eighth Amendment prohibits prison officials from acting with "deliberate indifference" with regard to prisoners' serious medical needs. 429 U.S. at 104.  Since Estelle, courts have routinely recognized that the Eighth Amendment[6] to the United States Constitution governs the conditions of confinement for prisoners and the treatment of these prisoners during the term of their incarceration.  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); see also Whitley v. Albers, 475 U.S. 312, 327 (1986); Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981).

An alleged claim of "deliberate indifference" under the Eighth Amendment may be actionable under 42 U.S.C. § 1983.[7]  See Graham v. Connor, 490 U.S. 386, 393- 94

---

[5]        The Eighth Amendment applies to the states by virtue of the Fourteenth Amendment's Due Process Clause. Robinson v. California, 370 U.S. 660, 666 (1962).

[6]        Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . ." See Hamm v. DeKalb County, 774 F.2d 1567, 1573-74 (11th Cir. 1985).  To the extent PHS relies upon any cases addressing the application of the Fourteenth Amendment in the prison context, such cases are equally applicable in this case.

[7]        42 U.S.C. § 1983 provides, in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

(1989)(recognizing that § 1983 is not a source of "any substantive right," but rather provides a means for "vindicating federal rights elsewhere conferred."). Every claim by a prisoner that he has not received adequate medical treatment does not state a violation of the Eighth Amendment. McElligott v. Foley, 182 F. 3d 1248, 1254 (11th Cir. 1999).   Courts have devoted an extraordinary amount of time clearly defining the requirements for asserting and succeeding upon an Eighth Amendment claim under § 1983.  Both the Supreme Court and Eleventh Circuit have described the Eighth Amendment standard of deliberate indifference as requiring allegations and evidence of both "objective" and "subjective" components. See e.g. Farmer, 511 U.S. 825 at 834, 837; Chandler v. Crosby, 379 F. 3d 1278, 1289-90 (11th Cir. 2004).

The "objective" component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The underlying conduct or condition must be "extreme" and pose "an unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F. 3d at 1289-90 (quoting Hudson, 503 U.S. at 9) (other citations omitted).  At a minimum, a prisoner must allege and establish the existence of "a serious medical need." Chandler, 379 F. 3d at 1289-90; Farrow v. West, 320 F. 3d 1235, 1243 (11th Cir. 2003).  The Eleventh Circuit's long-standing definition of "serious medical need" is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See e.g. Farrow, 320 F. 3d at 1243 (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F. 3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)).  Additionally, the serious medical need must be such that, if left untreated, "pos[es] a substantial risk of serious harm." Farmer, 511 U.S. at 834.

---

injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

The burden falls squarely upon Plaintiff to allege and ultimately establish the existence of a serious medical need.  See e.g. Hamm v. DeKalb County, 774 F. 2d 1567 (11th Cir. 1985).

If Plaintiff successfully identifies and establishes the existence of a "serious medical need," he must also establish the "subjective" component of an Eighth Amendment violation. Plaintiff must prove PHS acted with "deliberate indifference." See e.g. Farmer, 511 U.S. at 837. This subjective component requires evidence PHS possessed actual knowledge of "an excessive risk to inmate health or safety" and disregarded that risk. Id. at 837.  Evidence demonstrating PHS failed "to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" or serve as a basis for a claim of deliberate indifference. Burks v. Sikes, 169 F. 3d 1353, 1363-1364 (11th Cir. 1999)(other citations omitted); see also Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir.1996) (holding, "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not ....'" (quoting Farmer, 511 U.S. at 838)). Courts summarize this component as requiring evidence of a "subjectively sufficiently culpable state of mind." Id. at 1491 (other citations and internal quotations omitted).

It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official.  See e.g. Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990).  For example, a prisoner's § 1983 claim for inadequate medical treatment cannot survive summary judgment unless and until the inmate produces evidence "of the prison official's subjective awareness" of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." Id.; Campbell v. Sikes, 169 F. 3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87 F. 3d

1266, 1269 (11th Cir. 1996)); <u>Hill</u>, 40 F. 3d at 1186).  Without evidence of this "specific intent," a prisoner's § 1983 claim cannot succeed.  <u>Steele</u>, 87 F. 3d at 1269.

Courts have devoted a significant amount of time identifying the specific types of allegations which do *not* give rise to the claim of "deliberate indifference."  In declaring the "deliberate indifference" standard for the first time, the <u>Estelle</u> Court wrote, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." 429 U.S. at 106.  The Eleventh Circuit in <u>Chandler</u> held a prisoner's discomfort does not give rise to an Eighth Amendment violation. 379 F. 3d at 1295 (citations omitted).  Applying <u>Estelle</u>, the Eleventh Circuit also noted that a complaint that prison medical staff should have done more to diagnose and/or treat a prisoner is "at most . . . medical malpractice." <u>Campbell</u>, 169 F. 3d at 1363.  Indeed, the Eighth Amendment does not prohibit or provide any remedy for any "accidental inadequacy . . . or even medical malpractice actionable under state law." <u>Taylor v. Adams</u>, 221 F. 3d 1254, 1258 (11th Cir. 2000) (quotations and citation omitted).  For this reason, medical decisions not to or when to provide certain types of medical treatment, such as an x-ray, are not actionable as a matter of law under the Eighth Amendment. <u>Id.</u>

In instances when inmates acknowledge treatment but contest the manner in which treatment is provided, courts have applied an altered analysis of claims involving requests for different or alternative types of medical treatment.  When an inmate claims "different treatment should have been provided," such a claim "is tantamount to a medical judgment call," not an Eighth Amendment violation. <u>McElligott</u>, 182 F. 3d at 1259.  In greater detail, the Eleventh Circuit explained in <u>Hamm</u>:

> Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.

> See <u>Bass v. Sullivan</u>, 550 F.2d 229, 231-32 (5th Cir.), <u>cert. denied</u>, 434 U.S. 864, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); <u>accord</u>, <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n. 5 (1st Cir. 1981) ("***Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law***.").

774 F. 2d at 1575 (emphasis supplied).

The second broad category of cases in which courts have historically mandated limitations upon the liability of prison officials under the Eighth Amendment constitute cases of alleged delayed medical treatment. In cases when a prisoner actually receives medical treatment, courts employ an altered analysis of deliberate indifference. As to claims of delayed medical treatment, the Eleventh Circuit has instructed courts to be hesitant to find an Eighth Amendment violation when officials provide medical care to prison inmates. <u>McElligott</u>, 182 F. 3d at 1259 (11th Cir. 1999) (citing <u>Waldrup v. Evans</u>, 871 F. 2d 1030, 1035 (11th Cir. 1989)). In fact, a prisoner alleging delayed medical treatment must show that the official acted with deliberate indifference, meaning the official knew of the serious medical condition and "intentionally or with reckless disregarded, delayed treatment." <u>Hinson v. Edmond</u>, 192 F. 3d 1342, 1348 (11th Cir. 1999). In <u>Hill</u>, the Eleventh Circuit added:

> Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a lay person because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation. * * * Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the condition, and considering the reason for the delay.

40 F. 3d 1176, 1188-89 (11th Cir. 1994) (emphasis added). Whether a claim arises from delayed treatment depends upon "the nature of the medical need and the reason for the delay." <u>Harris v.</u>

Coweta County, 21 F. 3d 388, 393-94 (11th Cir. 1994). Accordingly, in instances where prisoners complain of delays in medical treatment or request different medical treatment, prisoners must overcome a much greater threshold in order to state and/or succeed upon such a §1983 claim.

In this instance, Plaintiff claims he was not allowed to undergo surgery for his hernia within the timeframe deemed acceptable by Plaintiff. (Complaint at p. 3). While Plaintiff's hernia may have risen to the level of a "serious medical condition," the next step in the analysis, i.e. a showing of deliberate indifference, is problematic, especially considering that Plaintiff's claims are grounded in issues of "delay," not denial. Making matters more difficult, Plaintiff does not differentiate and/or specify the purported acts and/or omissions of any specific agent, employee and/or representative of PHS which serve as the basis of his claims.

The evidence submitted in conjunction with this Special Report demonstrates each of the specific steps taken by the medical staff at Ventress in addressing Plaintiff's hernia condition. Upon his arrival at Ventress, the medical staff at Ventress initiated a course of treatment for Plaintiff's inguinal hernia which included use of a truss to potentially alleviate the hernia as well as medication for any complaints of pain or discomfort. (Peasant Aff. at ¶¶ 4-27; PHS004-103). After following this course of treatment for a period of time in the face of notable lack of cooperation from Plaintiff, the medical staff ensured that Plaintiff received a timely consultation with a surgeon who ultimately surgically repaired Plaintiff's inguinal hernia. (Id.). Following his surgery, the medical staff provided Plaintiff with post-surgical evaluation and monitoring, ensuring his full recovery. (Id.). The treatment provided by the medical staff at Ventress did not ever approach the type of "extreme" conduct necessary to support a § 1983 claim. Plaintiff's medical records demonstrate that Plaintiff received adequate and thorough medical attention for

his inguinal hernia.  There is simply no medical evidence suggesting in any way that the passage of time between the various steps of medical treatment of Plaintiff's hernia exacerbated, worsened or otherwise detrimentally impacted Plaintiff's condition.    Accordingly, there is simply no basis to conclude or ever allege that any agent, employee or representative of PHS intentionally acted in any way to deprive Plaintiff of any necessary medical care.

**B.**    **SECTION 1983 DOES NOT PERMIT ANY FINDING OF LIABILITY AGAINST PHS ON THE BASIS OF *RESPONDEAT SUPERIOR*.**

Given the absence of any specific factual allegations pertaining to PHS, PHS is left to assume Plaintiff's claims against PHS are based upon the conduct of the medical staff at Ventress.  Any reliance by Plaintiff upon a theory of *respondeat superior* in attempting to pursue a claim against PHS is also fatal.  It is well-established in the Eleventh Circuit that liability under § 1983 "must be based on something more than a theory of *respondeat superior*." H.C. by Hewett v. Jarrard, 786 F. 2d 1080, 1086 (11th Cir. 1986) (citing Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)); see also Polk County v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability."); Marsh v. Butler County, 268 F.3d 1014, 1035 (11th Cir. 2001); Washington v. Dugger, 860 F. 2d 1018, 1021 (11th Cir. 1988) ("[the inmate's] complaint against [certain defendants] is not supported by any evidence which would permit a fact finder to find their participation in any deliberate indifference to his medical needs.  Of course, these persons cannot be held liable under Section 1983 on the basis of respondeat superior."); Jetter v. Beard, 130 Fed. Appx. 523, 525 (3rd Cir. 2005) (unpubl.) (panel featuring Justice Alito) (dismissing Eighth Amendment claims against supervisory defendants because "liability under Section 1983 cannot be imposed on a supervisor on the basis of *respondeat superior*.  Personal involvement must be alleged and is only present where the

supervisor knew of the actions and acquiesced in them. [The inmate] simply has not alleged any facts to support a conclusion that the supervisory defendants had personal involvement in the medical treatment [the inmate] received at [the prison].").  The Eleventh Circuit has applied this principle in various contexts, precluding claims against various kinds of supervisors and/or employing entities. See  Farrow, 320 F. 3d at 1238 (holding that a supervising physician was not liable under § 1983 for the acts and/or omissions of a physician acting under his supervision); Buckner v. Toro, 116 F. 3d 450, 452-53 (11th Cir. 1997)(recognizing that the principle that *respondeat superior* liability does not exist under § 1983 has been expanded to included private medical contractors employed to perform governmental functions).

Given this black letter law, Plaintiff's claims against PHS must fail to the extent he relies upon any alleged acts and/or omissions of any member of the Ventress medical staff as a basis for his claim against PHS.

### C.    PLAINTIFF'S COMPLAINT IS BARRED BY THE PRISON LITIGATION REFORM ACT.

42 U.S.C. §1997e(a) of the Prison Litigation Reform Act ("PLRA") mandates that "[n]o action may be brought with respect to prison conditions[8] under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

---

[8]    The PLRA does not define "prison conditions." See 42 U.S.C. § 1997e. Nevertheless, 18 U.S.C. §3626(g)(2) defines a "civil action with respect to prison conditions" as any civil action arising under federal law "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison."  The Eleventh Circuit has relied upon this definition of "prison conditions" in applying the PLRA to cases before it. See Higginbottom v. Carter, 223 F. 3d 1259 (11th Cir. 2000).  It is incontrovertible that Plaintiff's allegations in this case relate solely to the "conditions of [her] confinement" at Bullock and, as such, trigger the application of the PLRA.

such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).[9]    Any

remedy available under § 1983 before this Court is not available unless and until Plaintiff utilizes

the grievance process available within the correctional system.    See e.g. Brown v. Sikes, 212 F.

3d 1205, 1207 (11th Cir. 2000); Miller v. Tanner, 196 F. 3d 1190, 1193 (11th Cir. 1999);

Alexander v. Hawk, 159 F. 3d 1321, 1325 (11th Cir. 1998); see also Higginbottom v. Carter, 223

F. 3d 1259, 1261 (11th Cir. 2000) (holding that invoking the grievance process is "a pre-

condition to filing an action in federal court."); A.N.R. v. Caldwell, 111 F. Supp. 2d 1294, 1297-

99 (M.D. Ala. 2000) (dismissing prisoner's complaint for failure to exhaust administrative

remedies through the available grievance process).    The Supreme Court wrote in Porter v.

Nussle, "exhaustion is now required for all 'action [s] ... brought with respect to prison

conditions,' whether under § 1983 or 'any other Federal law.'" 534 U.S. 516, 524,  (2002).

In Alexander v. Hawk, 159 F. 3d 1321, 1328 (11th Cir. 1998) the Court noted:

> In summary we conclude that Section 1997 e(a) requires
> Alexander to submit his claims for monetary and injunctive relief
> to the [Federal Bureau of Prisons] available prison grievance
> program, even if the relief offered by the program does not appear
> to be "plain, speedy, and effective," before filing those claims in
> federal court.    The judicially created futility and inadequacy
> doctrines do not survive the PLRA's mandatory exhaustion
> requirement.

---

[9]    The PLRA's exhaustion requirement applies to all prisoner suits filed after April 26, 1996. See Higginbottom v. Carter, 223 F. 3d 1259 (11th Cir. 2000); Alexander v. Hawk, 159 F. 3d 1321 (11th Cir. 1998).  This requirement was specifically intended to :

> afford[ ] corrections officials time and opportunity to address
> complaints internally before allowing the initiation of a federal
> case . . . [because i]n some instances, corrective action taken in
> response to an inmate's grievance might improve prison
> administration and satisfy the inmate, thereby obviating the need
> for litigation . . . [and i]n other instances, the internal review might
> 'filter out some frivolous claims.'

Porter v. Nussle, 534 U.S. 516, 524-525 (2002)(citations omitted).

According to the Eleventh Circuit, a prisoner's claims must be dismissed under Rule 12(b)(1) or Rule 12(b)(6) of the <u>Federal Rules of Civil Procedure</u> if he has failed to exhaust his administrative remedies. <u>Chandler</u>, 379 F. 3d at 1286.

There can be no dispute that PHS maintains a well-established, widely publicized grievance process within the correctional facilities in Alabama, including Ventress. (Burks Aff. at ¶¶ 5-8). Likewise, there can be no dispute that Plaintiff was advised of and acknowledged the availability of this administrative grievance process. (<u>Id.</u> and PHS002-3). More importantly, there can be no dispute that Plaintiff did not avail himself of the full grievance process or ever seek redress for his complaints through the entire grievance process at Ventress. (<u>Id.</u>). By failing to utilize procedures available to him at Ventress, of which he was aware, Plaintiff failed to exhaust the administrative remedies available to him as required by the PLRA. As such, Plaintiff's Complaint is premature.

## VI. <u>CONCLUSION</u>

Based on the foregoing facts and legal arguments, the Complaint filed by Plaintiff is not entitled to maintain any claim against PHS based upon the facts alleged in the Complaint.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT D. KRAUSE, AIS # 248039,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **2:07-cv-00468-MEF-TFM** |
| | ) | |
| **PRISON HEALTH SERVICES, INC. AND** | ) | |
| **RICHARD ALLEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## ANSWER OF DEFENDANT PRISON HEALTH SERVICES, INC.

_____

COMES NOW, Defendant PRISON HEALTH SERVICES, INC. ("PHS"), and for its Answer to the Complaint filed by Plaintiff ROBERT D. KRAUSE ("Plaintiff"), states as follows:

## FACTUAL ALLEGATIONS

1.      In response to the statements made by Plaintiff in section I of his Complaint regarding "PREVIOUS LAWSUITS," PHS states that it lacks sufficient knowledge and/or information to admit and/or deny the allegations asserted in this section of Plaintiff's complaint and, therefore, denies them.

2.      In response to section II of Plaintiff's Complaint, PHS admits Plaintiff is currently incarcerated in Ventress Correctional Facility.

3.      In response to section III of Plaintiff's Complaint, PHS denies that any of the named Defendants violated Plaintiff's constitutional rights based upon any medical condition suffered by Plaintiff during his incarceration at Ventress Correctional Facility.

4.      PHS denies the allegations asserted in sections IV and V of Plaintiff's Complaint.

5.    PHS denies Plaintiff is entitled to any relief including the relief alleged in section VI of Plaintiff's Complaint.

**AFFIRMATIVE AND OTHER DEFENSES**

**First Defense**

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**Second Defense**

Plaintiff's claims are barred by the doctrine of contributory negligence and/or last clear chance.

**Third Defense**

Plaintiff's claims are barred by the doctrine of assumption of risk.

**Fourth Defense**

Plaintiff's claims are barred by the doctrine of laches.

**Fifth Defense**

Plaintiff's claims are barred by the statute of limitations.

**Sixth Defense**

Plaintiff's claims are barred by the doctrine of waiver.

**Seventh Defense**

The Court lacks subject matter jurisdiction over this dispute.

**Eighth Defense**

This Court is the improper venue in which to assert this action.

**Ninth Defense**

Plaintiff lacks standing to bring this action.

**Tenth Defense**

Plaintiff's claims are barred by the doctrine of unclean hands.

### Eleventh Defense

Plaintiff's claims are barred by the doctrine of qualified immunity.

### Twelfth Defense

Plaintiff's claims are barred by the doctrine of sovereign immunity.

### Thirteenth Defense

Plaintiff's claims are barred by the doctrine of estoppel.

### Fourteenth Defense

Plaintiff's claims are barred by the doctrine of *res judicata* and/or collateral estoppel.

### Fifteenth Defense

Plaintiff's claims are barred, in whole or in part, because of his failure to mitigate damages.

### Sixteenth Defense

PHS avers that the wrongs and damages alleged by Plaintiff were caused solely by the acts and/or omissions of person and/or entities for whom or which PHS is not responsible.

### Seventeenth Defense

Plaintiff's claims are barred because PHS did not breach any duty Defendant allegedly owed to Plaintiff.

### Eighteenth Defense

Plaintiff's claims are barred because there is no casual relationship, legal or proximate, between PHS's actions or failures to act and the Plaintiff's alleged injuries and damages.

### Nineteenth Defense

Plaintiff's claims are barred because of the existence of superseding, intervening causes.

### Twentieth Defense

Plaintiff's claims are barred because of the lack of damages suffered due to any of the alleged wrongs asserted against PHS.

### Twenty-First Defense

Plaintiff has failed to exhaust or attempt to exhaust administrative remedies.  42 U.S.C. § 1997e (a) (2005).

### Twenty-Second Defense

Plaintiff's claims are barred because the action asserted is "frivolous, malicious, and fails to state a claim upon which relief can be granted."  42 U.S.C. § 1997e(c)(1) (2005).

### Twenty-Third Defense

Plaintiff's claims are barred because the injunctive relief sought is not sufficiently narrowly drawn.  18 U.S.C. § 3626(a)(1)(A) (2005).

### Twenty-Fourth Defense

Plaintiff's claims are barred because PHS did not act with deliberate indifference. Estelle v. Gamble, 429 U.S. 97 (1976).

### Twenty-Fifth Defense

Plaintiff's claims are barred because he is seeking to question a medical judgment via 42 U.S.C. § 1983.

### Twenty-Sixth Defense

To the extent Plaintiff seeks to recover any attorneys' fees, PHS objects to any and all such requests for fees that are not asserted in the Complaint or otherwise approved by court order.

**Twenty-Seventh Defense**

Plaintiff's claims for punitive damages violate PHS's United States and Alabama constitutional protections from, including without limitation, excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the law.

**Twenty-Eighth Defense**

PHS reserves the right to assert other defenses as discovery proceeds.

s/ William R. Lunsford
One of the Attorneys for Prison Health Services, Inc.

**OF COUNSEL:**
William R. Lunsford
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street
Huntsville, Alabama 35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
Email: blunsford@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of August, 2007, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system and mailed via regular U.S. mail to the

following:

Robert D. Krause
AIS 248039
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

Albert S. Butler (via electronic mail)
Kim Tobias Thomas (via electronic mail)
Alabama Department of Corrections
P.O. Box 301501
Montgomery, AL 36130-1501

s/ William R. Lunsford
Of Counsel

# Exhibit "A"
Dr. John Peasant's affidavit

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT D. KRAUSE, AIS # 248039,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **2:07-cv-00468-MEF-TFM** |
| | ) | |
| **PRISON HEALTH SERVICES, INC. AND** | ) | |
| **RICHARD ALLEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>AFFIDAVIT OF JOHN M. PEASANT, M.D.</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF BARBOUR** | ) |

Before me, the undersigned Notary Public, personally appeared JOHN M. PEASANT, M.D. who, after being duly sworn, states as follows:

1.      My name is Dr. John Peasant.  I am over the age of nineteen (19) years and have personal knowledge of the information contained in this affidavit.

2.      I have been licensed to practice medicine in the State of Alabama since August 1, 2006.  I am currently employed by Prison Health Services, Inc. ("PHS") as the site medical director at Ventress Correctional Facility ("Ventress").  PHS is the private corporation currently under contract with the Alabama Department of Corrections ("ADOC") to provide medical services to the inmates incarcerated in ADOC facilities within Alabama.

3.      Robert D. Krause is currently incarcerated as an inmate at Ventress Correctional Facility.  I am familiar with Mr. Krause's medical history and conditions and have seen and evaluated him as a patient on numerous occasions.  It is my understanding that a true and correct copy of his medical records are being submitted to the Court concurrently with this Affidavit and

my statements below include specific citations to the Bates-labels affixed to the pertinent portions of Mr. Krause's medical records.

4.     Within 24 hours of his arrival at Ventress from Kilby Correctional Facility, Mr. Krause was examined by the medical staff. (PHS054).  Upon screening Mr. Krause after his transfer to Ventress, the medical staff noted that Mr. Krause was suffering from an inguinal hernia and was using an athletic supporter at the time. (PHS054, 95).   Mr. Krause received a profile ordering him to utilize an "athletic support" or binder for his hernia and was also instructed to avoid straining or lifting more than twenty (20) pounds for a period of 80 days. (PHS034, 36).

5.     During the years of my practice, I have on numerous occasions evaluated persons who suffer from various types of hernias.  An inguinal hernia occurs when a muscle in the groin area becomes weakened and permits tissue to be pushed through the muscular wall.  The tissue pushing through the muscle wall of the groin may cause a bulge in the groin or scrotum.  Hernias most often occur in those individuals who are overweight or engage in a great degree of lifting or straining. A large number of inguinal hernias are asymptomatic and do not pose any specific risks to the patient and/or pose any long-term health complications for patients.  One of the key clinical factors in determining the appropriate course of treatment for inguinal hernias constitutes a physical examination of the hernia and a determination as to whether the hernia is "reducible" or not.  An inguinal hernia is "reducible" if applying pressure to the hernia permits a physician to compress the hernia in such a fashion so as to push the bulging tissue back through the muscle wall in the groin.  If a hernia should not be reducible at any point in time, then surgery is necessary and appropriate.

6.      At no time during my examination of Mr. Krause did he ever indicate or demonstrate that his hernia was not reducible. It is commonly accepted in the field of medicine that the initial course of treatment for a patient with a hernia is compression of the hernia through the use of a binding truss, which basically constitutes a cloth wrapping utilized to compress the tissue back inside the muscular wall.  In some instances, the use of a truss over the course of a period of months may result in a self-correction of a hernia without surgery and the pain and complications associated with surgery.  Surgical repair of a hernia is appropriate if prolonged use of the truss does not correct the hernia or if the hernia is not reducible.  In addition to the risks inherent in any surgical procedure, the surgical repair of a hernia does not always result in a correction of the hernia and there exists a significant likelihood that a surgical repair of a hernia may not prevent a recurrence of the original hernia or result in additional hernias.  Given these risks, the use of a truss is the first step in the course of treatment for a hernia.

7.      On September 18, 2006, Mr. Krause refused to accept a copy of a "profile" from the Ventress medical staff permitting him the use of truss to bind his hernia. (PHS033).

8.      On October 3, 2006, Mr. Krause was tested for tuberculosis at Ventress and tested negative. (PHS046).  Though there are inmates who have contracted infectious diseases at Ventress, Mr. Krause has not tested positive for any of these infectious diseases and, to the best of my knowledge, has not been exposed to any infectious diseases.

9.      When Mr. Krause was evaluated by the medical staff on October 31, 2006, he complained that the abdominal truss provided for him was uncomfortable and that he had not been wearing it for any prolonged periods of time.  (PHS005).  During the October 31, 2006, appointment, Mr. Krause was counseled on the importance of wearing the provided truss and instructed that all of the existing profiles would be continued. (PHS005). In an order dated

3

October 31, 2006, Mr. Krause was directed to return to the Health Care Unit for a follow-up appointment in approximately four weeks after utilizing the truss provided to him. (PHS103).

10.    Mr. Krause was evaluated on November 30, 2006, by the medical staff. (PHS004).  At the time of his November 30, 2006, appointment, Mr. Krause appeared at the Health Care Unit, but was not wearing the "truss" which was provided by the medical staff because it was mistakenly confiscated during an inspection of his personal effects by the correctional staff. (PHS004).  At the conclusion of the November 30, 2006, appointment, Mr. Krause received a new truss plus a physician's order directing correctional staff to allow Mr. Krause to retain the truss on his person and/or ordering Mr. Krause submit a sick call for a follow-up appointment with the medical staff in approximately thirty (30) days. (PHS004, 103).

11.    The medical staff re-evaluated Mr. Krause's hernia condition on January 25, 2007.  (PHS004).  At that time, Mr. Krause complained that he had not received the truss as ordered, but also stated that the truss previously provided "did not work." (PHS004).  On January 25, 2007, Mr. Krause received a "profile" in which he was instructed to utilize a truss to compress his hernia and to avoid standing for longer than twenty (20) minutes for a period of 180 days. (PHS004, 43, 102).

12.    Mr. Krause was evaluated during sick call on February 6, 2007, and complained that his hernia was getting "bigger." (PHS091).  In response to these complaints, the medical staff at Ventress ordered that Mr. Krause be admitted to the infirmary for bed rest and to receive Motrin for any pain associated with his hernia. (PHS101). On February 6, 2007, Mr. Krause executed a "Release of Responsibilities," acknowledging his refusal to remain in the infirmary for monitoring by the Ventress medical staff. (PHS032).  Though Mr. Krause received a prescription for Motrin, three times per day during the period of time between February 6, 2007,

and February 13, 2007, Mr. Krause only appeared to receive his medication at sick call on two separate occasions. (PHS084).

13.    Mr. Krause's hernia was evaluated by the medical staff on February 28, 2007. (PHS007).  During the February 28, 2007, examination, the medical staff noted that Mr. Krause was wearing a "scrotal support," but not the truss provided to him.  (PHS007).  At the conclusion of the February 28, 2007, examination, Mr. Krause  was instructed to use the truss as prescribed by the medical staff. (PHS007). On February 28, 2007, Mr. Krause received orders from the medical staff at Ventress directing him to utilize only a bottom bunk for a period of 180 days, avoid lifting any weight greater than twenty (20) pounds for a period of twelve (12) months and avoid any straining activity for a period of twelve (12) months. (PHS031, 101).

14.    When the medical staff examined Mr. Krause on March 29, 2007, the medical staff concluded that the truss provided to him was not alleviating his hernia and that surgical evaluation was necessary.  (PHS007).   Mr. Krause was notified of his appointment with the site physician for evaluation of his hernia on March 29, 2007. (PHS042).  In an order dated March 29, 2007, I ordered Mr. Krause to return for a follow-up appointment in three weeks and to obtain an appointment for Mr. Krause with an outside specialist for consultation regarding a possible surgical intervention with regard to his hernia condition. (PHS101). As of March 29, 2007, Mr. Krause's hernia was not a life-threatening condition or pose any significant rise to his welfare or his long-term health.

15.    Between March 31, 2007, and June 28, 2007, Mr. Krause received a prescription for Motrin to be taken as much as four times a day as needed. (PHS079).  Between March 31 and June 28, 2007, Mr. Krause only appeared at pill call on five separate occasions to receive the Motrin prescribed to him by the medical staff at Ventress. (PHS079).

16.    When the medical staff evaluated Mr. Krause on April 19, 2007, the medical staff noted that Mr. Krause was still awaiting his previously scheduled appointment with an outside specialist. (PHS006).    Mr. Krause attended an appointment with Dr. Brian R. Whyte of Advanced Surgical Associates, P.C. on April 26, 2007. (PHS073-74).    Upon examining Mr. Krause, Dr. Whyte indicated that the inguinal hernia in Mr. Krause's groin was "reducible," but could be surgically repaired. (PHS074).

17.    On May 7, 2007, the medical staff at Ventress Correctional Facility requested permission to proceed with obtaining a surgical repair of Mr. Krause's hernia.  (PHS072).  Mr. Krause was evaluated again on May 10, 2007, by the medical staff with regard to his hernia condition.  (PHS006).  During the May 10, 2007, examination, the medical staff noted that there was no marked change in Mr. Krause's hernia and that the consultation with the surgeon resulted in a recommendation of proceeding with a surgical repair of his hernia.  (PHS006).

18.    When Mr. Krause was evaluated on May 31, 2007, by the medical staff, the medical staff noted that he was awaiting surgery at that time for his hernia and the medical staff also provided medical treatment with regard to complaints of decreased visibility in Mr. Krause's left eye.  (PHS006).

19.    On June 20, 2007, Dr. Brian C. Gary, the specialist with Advanced Surgical Associates, P.C., approved Mr. Krause  to proceed with surgery on June 28, 2007. (PHS070).  In preparation for his upcoming surgery, I ordered Mr. Krause to undergo lab testing, an EKG and an x-ray of his chest. (PHS100).  On June 20, 2007, the site physician at Ventress ordered the medical staff to schedule and prepare Mr. Krause for a surgical repair of his hernia on June 28, 2007. (PHS100).  Mr. Krause underwent a pre-operative imaging study of his chest on June 22,

2007. (PHS059).  On June 21, 2007, the Ventress medical staff also collected blood samples from Mr. Krause in order to verify his ability to proceed with surgery. (PHS060).

20.     Mr. Krause underwent the surgical repair of his hernia on June 28, 2007.  When Mr. Krause returned to Ventress following his surgery on June 28, 2007, Mr. Krause received medications in order to alleviate his post-operative pain. (PHS028).  Specifically, Mr. Krause received Loritab and Tylenol for his complaints of post-surgical pain. (PHS080-81, 99-100).

21.     Mr. Krause was admitted to the infirmary at Ventress for post-operative monitoring.  (PHS010).  Mr. Krause was housed in the infirmary from June 28, 2007, until July 5, 2007, during which time he was monitored on a constant basis by the medical staff and evaluated at various points throughout the day.  (PHS010-27).  As indicated in Mr. Krause's medical records, the post-operative monitoring of Mr. Krause demonstrated that Mr. Krause's hernia condition and/or his recover from surgery proceeded in appropriate fashion.  (Id.).

22.     The medical staff at Ventress conducted a post-operative evaluation of Mr. Krause on July 2, 2007, and noted that Mr. Krause continued to experience some swelling as a result of his hernia repair. (PHS008).  During the July 2, 2007, examination, Mr. Krause was instructed to continue his post-operative instructions. (PHS008).  The following day, the medical staff again evaluated Mr. Krause and noted that the swelling associated with Mr. Krause 's hernia repair had decreased and ordered Mr. Krause to return for follow-up evaluation in the near future. (PHS008).

23.     As of July 5, 2007, Mr. Krause indicated that he did not have any complaints of pain or discomfort and an examination revealed that his surgical hernia repair continued to heal in the appropriate manner. (PHS009).  On July 5, 2007, the medical staff removed the staples utilized to close the incision associated with the hernia repair. (PHS009).  As of July 5, 2007, the

day when Mr. Krause was discharged from the Ventress infirmary, Mr. Krause did not voice any complaints and received specific instructions to continue his post-operative recovery. (PHS026-27). Specifically, Mr. Krause was instructed in an order dated July 5, 2007, to avoid lifting any weight greater than fifteen (15) pounds for a period of 180 days, to apply ointment to his surgical wound for a period of seven days and to report to the Health Care Unit on July 9, 2007, for a follow-up appointment with the site. (PHS027, 40).

24.    Mr. Krause's post-surgical evaluation on July 9, 2007, and July 23, 2007, both indicate that he fully recovered from the hernia surgery. (PHS097).

25.    Throughout his incarceration at Ventress, Mr. Krause has utilized the sick call process to bring any of his complaints to the attention of the medical staff. Mr. Krause submitted a sick call request form dated September 6, 2006, requesting medical attention for his hernia. (PHS096). In a sick call request form dated September 17, 2006, Mr. Krause requested a special needs form which had been provided to him at Kilby. (PHS094). Rather than attending sick call, Mr. Krause signed a waiver indicating his acceptance of the circumstances and his refusal to cooperate during sick call. (PHS094). Mr. Krause completed a sick call request form on October 23, 2006, complaining of a toothache. (PHS055). Mr. Krause submitted a sick call request form dated October 26, 2006, in which he complained that a hernia in his groin was causing discomfort and requested to see a physician. (PHS092). Mr. Krause was evaluated during sick call on October 27, 2006. (PHS092-93). On July 9, 2007, Mr. Krause completed a sick call request form requesting a follow-up for his hernia surgery. (PHS090). Mr. Krause was evaluated during sick call on July 9, 2007, which eventually led to my follow-up examination of him. (PHS090). In sum, Mr. Krause submitted two sick call request forms voicing complaints about his hernia before undergoing surgery.

26.    In the case of Mr. Krause, I do not believe that the course of treatment provided to him was inappropriate in any way. Likewise, I am not aware of any additional medical treatment of any kind that should have been provided by any other physician or specialist which would remedy Mr. Krause's hernia in a different manner. My examinations of him have confirmed the appropriateness of the course of treatment provided by the medical staff at Ventress. I have not denied and am not aware of any other member of the medical staff at Ventress who denied Mr. Krause any necessary medical treatment or ignored his complaints. I have examined Mr. Krause on a regular basis regarding his hernia and prescribed medications to control any of the discomfort associated with his hernia. Given the nature of hernias like the hernia experienced by Mr. Krause, it remains possible that his condition will recur in the future. In such an event, I will continue to provide necessary and appropriate medical attention for his condition.

27.    The surgical repair of Mr. Krause's hernia was not ordered in response to this lawsuit, but the process for the surgical repair of his hernia was on-going at the time he filed this lawsuit. I was not notified of the existence of this lawsuit until some point in time within the last 30 days.

John Peasant, M.D.

SWORN TO and SUBSCRIBED before this the 29th day of August, 2007.

Notary Public
MY COMMISSION EXPIRES: 9-8-08

(SEAL)

# Exhibit "B"
Nettie Burks' affidavit

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT D. KRAUSE, AIS # 248039,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **2:07-cv-00468-MEF-TFM** |
| | ) | |
| **PRISON HEALTH SERVICES, INC. AND** | ) | |
| **RICHARD ALLEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**AFFIDAVIT OF NETTIE BURKS, H.S.A.**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF BARBOUR** | ) |

Before me, the undersigned Notary Public, personally appeared NETTIE BURKS, H.S.A. who, after being duly sworn, states as follows:

1.      My name is Nettie Burks.  I am over the age of nineteen (19) years and have personal knowledge of the information contained in this affidavit.

2.      I have been a licensed, registered nurse in the State of Alabama since 1997.  I have worked as a registered nurse at Ventress Correctional Facility ("Ventress") in Clayton, Alabama since 1997.  Since November 3, 2003, I have been employed as the Health Service Administrator (H.S.A.) for Ventress by Prison Health Services, Inc. ("PHS"), the company which currently under contract with the Alabama Department of Corrections ("ADOC") to provide medical services to inmates incarcerated in ADOC facilities in Alabama.

3.      I am familiar with Robert D. Krause, an inmate currently incarcerated at Ventress, though I have not been involved in any significant way in the diagnosis and treatment of his hernia condition.  It is my understanding that a true and correct copy of his medical records are

being submitted to the Court concurrently with this Affidavit and my statements below include specific citations to the Bates-labels affixed to the pertinent portions of Mr. Krause's medical records.

4.      Throughout his incarceration at Ventress, Mr. Krause received numerous "profiles," which are orders signed by his treating physician ordering the correctional staff to allow an inmate to deviate from the standard protocols, procedures and policies at Ventress due to his medical condition.

5.      When an inmate has a non-emergency medical or health problem and/or complaint, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff at Ventress and/or request medical treatment for this problem.  The sick call request process is well-known at Ventress and is utilized by inmates at Ventress on a daily basis.  When an inmate first arrives at Ventress, he is taken to the Health Care Unit to be processed into the system and receives an orientation as to the availability of medical services at the facility as well as the procedures for obtaining medical care.  During this orientation, the medical staff gives each inmate an information sheet and verbally goes through the sheet with newly-arriving inmates, informing them how to utilize the sick call request form process.  Sick call request forms are available in the Health Care Unit at the shift commander's station or may be obtained from the ADOC officer in each dorm at Ventress.  An inmate making a sick call request is required to complete the top portion of the sick call request form (stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature) and submit the sick call request form by placing it in a locked box located outside the facility's kitchen (i.e., chow hall).  The sick call request forms are removed from the locked box each day and brought to the Health Care Unit.  Upon retrieving the sick call

request forms, the medical staff compiles a list of inmates having submitted a sick call request form, which is sent to the various dorms at Ventress. Ventress conducts sick call five (5) times per week, Sunday through Friday excluding holidays or unexpected emergencies. Sick call begins at 7:00 p.m. and lasts as long as required to examine all the inmates who report to sick call. Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints at the time they are summoned to the Health Care Unit for sick call. The number of inmates reporting to sick call each day varies between approximately ten (10) and thirty-five (35). The nurse conducting sick call takes reporting inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Ventress. If the inmate fails to report to sick call when summoned, this is often indicated in the sick call request form because it is left blank by the medical staff. If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-threatening, the medical staff will immediately have the inmate brought to the infirmary (located within the Health Care Unit) and the inmate will be examined and treated by a physician.

6.     The medical staff at Ventress utilizes a well-established grievance procedure for any inmate who wishes to voice a complaint regarding any medical treatment he has sought or received during his incarceration at Ventress. The initial orientation process at Ventress includes educating inmates as to the availability of the grievance process. The existence of Ventress's grievance procedure is well-known among the prison population, as indicated by the fact that I receive inmate requests and/or inmate grievances on a daily basis. The physicians, nurse practitioners, nurses and other medical personnel at Ventress attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted. Mr. Krause acknowledged receiving

the "Access to Health Care" information sheet detailing the various processes and procedures for

obtaining health care and/or voicing complaints or concerns regarding a medical condition or

problem on September 15, 2006. (PHS047).

The grievance process is initiated when an inmate submits an informal Inmate Grievance

form to me through the institutional mail system.  After reviewing the Inmate Grievance, I then

provide a written response within five (5) days of receipt of the Inmate Grievance.  My written

response to an Inmate Grievance is included on the bottom portion of the same form containing

an inmate's Inmate Grievance.  Below the portion of the form designated for the "Response," the

following notation appears:

> IF YOU WISH TO APPEAL THIS REVIEW YOU MAY
> REQUEST A <u>GRIEVANCE APPEAL</u> FORM FROM THE
> HEALTH SERVICES ADMINISTRATOR.    RETURN THE
> COMPLETED FORM TO THE ATTENTION OF THE HEALTH
> SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM
> IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE
> SEGREGATION SICK CALL NURSE ON ROUNDS.

As stated in the Inmate Grievance forms, the second step of the grievance process

involves the submission of a formal Grievance Appeal, at which time the inmate may be brought

in for one-on-one communication with me and/or the Director of Nursing.  A written response to

a formal Grievance Appeal is provided within five (5) days of receipt.  Inmate Grievance and

Grievance Appeal forms are available from the correctional officers at Ventress.  Inmates are

instructed to place completed Inmate Grievance and Grievance Appeal forms in the sick call

boxes located throughout the facility.  When received in the Health Care Unit, Inmate Grievance

and Grievance Appeal forms are delivered to me by the medical records clerk or administrative

assistant.  I review the Grievances daily, provide a written response within five (5) days at the

bottom of the form and return a copy of the completed forms to the inmate.  I encourage inmates

who have complaints about the medical care they have sought or received at Ventress to utilize this grievance process.

7.    Mr. Krause filed an "Inmate Grievance" on December 18, 2006, complaining that his hernia was causing him "discomfort and pain [and was] getting larger." (PHS002).  In the December 18, 2006, Inmate Grievance, he requested medical attention for his hernia "so it can be fixed." (PHS002).  In response to the December 18, 2006, Inmate Grievance, I reviewed his medical records and confirmed that Mr. Krause had been evaluated by the medical staff on October 31, 2006, regarding his hernia condition and was scheduled to be re-evaluated on January 25, 2007.  (PHS002).  After receiving this response to his Inmate Grievance, Mr. Krause did not file any "Grievance Appeal."

8.    Mr. Krause submitted an Inmate Grievance dated April 17, 2007, complaining that he had seen a physician on several occasions for evaluation of his hernia condition but required additional medical treatment. (PHS003).  In a response dated April 17, 2007, I informed Mr. Krause that he was scheduled for an appointment with a free world physician (i.e. a surgeon) to evaluate the current status of his hernia condition as well as any potential surgical repair of his hernia.  (PHS003).  Pursuant to security protocols in place at Ventress, Mr. Krause was not informed of the date of his appointment with an outside physician and the medical staff was not authorized to provide such information to Plaintiff. After receiving this response to his Inmate Grievance, Mr. Krause did not file any "Grievance Appeal."

9.    Based upon my understanding of Mr. Krause's complaints in this case and my knowledge of his medical records, it is evident that Mr. Krause received regular and appropriate medical care for his hernia.  I have not at any time ignored any request by Mr. Krause for medical treatment.  I have not deliberately ignored any medical complaints made by Mr. Krause

or refused to provide Mr. Krause with any necessary medical treatment. I have not taken any

action which has caused Mr. Krause to experience any unnecessary pain and/or suffering.

Further affiant saith not.

Nettie Burks, R.N., H.S.A.

**SWORN TO and SUBSCRIBED** before this the 29th day of August, 2007.

Reba J Currie

Notary Public

MY COMMISSION EXPIRES: _____9-8-08_____

(SEAL)

6

# Exhibit "C"
Evelyn Campbell's Affidavit with a true
and correct copy of excerpts from
Plaintiff's medical records

**A F F I D A V I T**

STATE OF ALABAMA            )
                                   )

BARBOUR COUNTY           )

    I, <u>Evelyn Campbell</u>, hereby certify and affirm that I am a

Administrative Asst. , at <u>Ventress Correctional Facility</u>; that I am one

of the custodian of records at this institution; that the attached documents are

true, exact, and correct photocopies of certain documents maintained here in

the institutional medical file of one <u>Robert Krause</u>, AIS# <u>248039</u>; and that I am

over the age of twenty-one years and am competent to testify to the aforesaid

documents and matters stated therein.

    I further certify and affirm that said documents are maintained in the usual and

ordinary course of business at <u>Ventress Correctional Facility</u>; and that said

documents (and the entries therein) were made at, or reasonably near, the time

that by, or from information transmitted by, a person with knowledge of such acts,

events and transactions referred to therein are said to have occurred.

    This, I do hereby certify and affirm to on this the _1st_day of August _, 2007.

                             *Evelyn Campbell*

SWORN TO AND SUBSCRIBED BEFORE ME THIS 1st DAY OF *August*,
2007.

                           *Reba J Currie*
                           Notary Public
                           My Commission Expires: 9-8-08

**Prison Health Services, Inc.**

**Inmate Grievance**

Robert Krause     248039          6-A-45     12/18/06
NAME              AIS #           UNIT       DATE

---

**PART A—Inmate Grievance**

I have a hernia in my groin
it causes me much discomfort & pain
it is getting larger I need outside
Medical Attione so it can be
fixed

Robert Krause 248039
INMATE SIGNATURE

---

**PART B –RESPONSE**                    DATE RECEIVED _____

You saw the MD on 10/31/06 for about
complaint. Will apt. given for
1/25/07 with MD for re-eval.

_(signature)_
P.H.S. Department Head Signature

DATE

---

If you wish to appeal this review you may request a **Grievance Appeal** form from the Health Services Administrator.  Return the completed form to the attention of the;   Health Service Administrator. You may place the form in the sick call request box or give it to the segregation sick call nurse on rounds.

| H.S.A Selection: | Y | N | | Y | N |
|---|---|---|---|---|---|
| I   Dissatisfied with Quality of Medical Care | ☑ | ☐ | VI   Delay in Health Care Provided | ☑ | ☐ |
| II   Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII   Problems with Medication | ☑ | ☐ |
| III Dissatisfied with Quality of Mental Health Care | ☑ | ☐ | VIII Request to be seen | ☑ | ☐ |
| IV Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX   Request for Off-site Specialty Care | ☑ | ☐ |
| V Conduct of Healthcare Staff | ☑ | ☐ | X   Other | ☐ | ☐ |

Committee Review of Data Collection

---

11/03 – Alabama
Revised 5/16/05

RECEIVED
DATE 12-20-06
BY DS

PHS002

**Prison Health Services, Inc.**

**Inmate Grievance**

| | | | |
|---|---|---|---|
| Robert Krause | 248039 | B-1-35A | 4/17/07 |
| **NAME** | **AIS #** | **UNIT** | **DATE** |

**PART A---Inmate Grievance**   Mrs Burks

I SEEN the doctor ABOUT my heRINA
several times NOW The doctor told me
that He was going to set up Sergury to
have this heRINA FIX IM tired OF Being
IN PAIN & DisconFert when is something
going to Be done ABOUT this ON going
PRoblem that is Just getting worse.

Robert Krause 248039
**INMATE SIGNATURE**

**PART B –RESPONSE**          DATE RECEIVED 4-17-07

You have already been see for an appt.
with a free world doctor for yo hernia.

M. Burks RN
**P.H.S. Department Head Signature**

4·17·07
**DATE**

If you wish to appeal this review you may request a <u>Grievance Appeal</u> form from the Health Services Administrator. Return the completed form to the attention of the;   Health Service Administrator. You may place the form in the sick call request box or give it to the segregation sick call nurse on rounds.

| H.S.A Selection: | Y | N | | | Y | N |
|---|---|---|---|---|---|---|
| I   Dissatisfied with Quality of Medical Care | ☑ | ☐ | VI   Delay in Health Care Provided | | ☑ | ☐ |
| II  Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII  Problems with Medication | | ☐ | ☐ |
| III Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII Request to be seen | | ☑ | ☐ |
| IV Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX   Request for Off-site Specialty Care | | ☑ | ☐ |
| V Conduct of Healthcare Staff | ☐ | ☐ | X   Other | | ☐ | ☐ |
| Committee Review of Data Collection | | | | | | |

11/03 – Alabama
Revised 5/16/05

| Date/Time | Inmate's Name: | D.O.B.: / / |
|-----------|----------------|-------------|

11-30-06  WT 180    B/p 110/70    P 72    R 20    T 98²

S. "F/U hernia"

Pt to return c̄ truss on today.
He reports it was taken in shake down
because he did not have a KOP slip

O. cer̄ WAD

A. Hernia

P. reissue truss & kop slip for
          365 days    F/U 3 month

E. tx plan

1-25-07  WT 184    B/p 122/80    P 68    R 20    T 97⁴

S. "Scheduled by Mrs. Burks to see MD"
Pt states he is here for re-evaluation
of RIH. Did not get truss as
ordered 11/30/06. He states he went
to pick up Truss -- Sat they did
not have one for him. Pt states he
had one, but it did not work

O. Vleg WAD
RIH quite evident - pt c̄ a
~~that~~ truss

A. RIH - will some - Inguinal Canal
          involvement.
          (pt state it hurts standing
               sitting etc).

P. must have truss, wear it +
     return with it on during next visit
     - NO prolonged standing

E. tx plan

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Krause, Robert | D.O.B.: 10/11/68 |
|---|---|---|

10/31/06 Wt. 176# B/p-110/78 T-97.6 P-66 R-18

0730 Hernia-

Ⓢ 38 y/o ♂ ͨ̄ RIH for 2 years _____
c/o pain & discomfort;

Ⓞ Alert, NAD
Abd. soft

♯ groin     RIH - reducible while lying
redness               down -
            Testicles nl

Ⓐ RIH reducible - got resol. in
            Truss - states it
            hurt him

Ⓟ Wear truss
- increase ice & warm for groin
♯ scrot.

R. POC regarding
    hernia's
- cont Angeles

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)    Complete Both Sides Before Using Another Sheet

PHS005

| Date/Time | Inmate's Name: | D.O.B.: / / |
|-----------|----------------|-------------|

4-19-07 WT 183# B/p-110/70 T-96.8 P-74 R-18
1130A F/U hernia

(S) Pt c/o pain & poc

(O) cca NAD

No Mass

(A) RTH

(P) to Surgeon

5-10-07 WT 183 B/p 120/76 P 72 R 20 T 97.8

S. F/U hernia

(O) clr NAD

NO pain

(A) RTH

(P) Who sus mllng for Surgery as recommend
by Dr White

(E) poc

5-31-07/0920 WT 184 B/p 108/66 T 98.4 P65 R18 O₂ Sat 97% — F/u
hernia                              C.Hunter, RN

(S) Pt c hernia & is waiting for surg.
Pt c/o HA & loss of vision in (L) eye
2nd to motorcycle accident. Pt states
he can't stand light in (L) eye. He
wore a patch in the street

(O) NAD PERRLA

(A) —HA c ↓ vision in (L) eye.
— RTH

(P) RTH surg / eye consult

(E) po c

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS006



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Krause, Robert 248039 | D.O.B.: 10 / 11 / 68 |
|---|---|---|

2-28-07 | WT. 184  B P 126/84  P 68  R 20  T 988  F/u Hernia

  Ⓢ Pt c/o ↑ pain in his hernia. The truss is "killing me".

  Ⓞ Pt wearing scrotal support not truss
    Ⓡ IH protrudes into Ⓡ Scrotum.
      reduces c̄ c/o pain

  Ⓐ R IH

  Ⓟ TRUSS

3/29/07 | 190#  B/P 110/80,  P 72.  R 18  T 97.8

  C/o Hernia

  Ⓢ F/u visit TRUSS not working.

2/07 2:09 | Ⓞ R IH reduces
    — Hernia appear inspite of truss.

  Ⓐ R IH
    — Poorly held in place c̄ truss

  Ⓟ Surgical evaluation

  Ⓓ Tx plan

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)          Complete Both Sides Before Using Another Sheet



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Krause, Robert #847039          D.O.B.: 10/11/68 |
|-----------|------------------------------------------------------------------|

7-2-07 | WT. 180   BP 104/60 P 60 R 20 T 92.8   post hernia repair
S 4# P.O. R herniorraphy dsg. C/O swelling in groin.
O Staples in place ∅ sign of infection skin of scrotum blue + cyanotic R scrotal sac distergent.
A S/P R herniorraphy.
P cont. scrotal air
P POC

7-3-07 | WT 180#  BP-110/80  T-97.2  P-68  R-18
0800 | Infirmary
S C/O sl. swelling + ↓ in size of R scrotal sac. Continue to have morning cough.
O purplish skin around R scrotal area R testicle feel large + heavy—
A S/P R herniorraphy
P F/U Thursday – staple removal.
P POC.

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)                    **Complete Both Sides Before Using Another Sheet**

PHS008



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Krause, Robert #248039 | D.O.B.: 10 / 11 68 |
|---|---|---|

7/5/07   Wt 181   B/p 100/60, P 82 R 18, T 97

Ⓢ NO complaints today

Ⓞ staple site looks good
   Ⓡ scrotal still swollen -
   Ø testicular pain

Ⓐ s/p RIH repair

Ⓟ staple out
   F/u manage
   Ø lifting 715 lbs.
   BBD — X 8 wks

Ⓟ POC

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)                    **Complete Both Sides Before Using Another Sheet**



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 6/28/07 | 2015 cont - T 98°, skin w/D to touch, Resp even et unlabored, lungs clear bilaterally. ⊕ BS x4, Abd soft, nondistended. Voids s difficulty. DSG to ® groin D/I, Ø drainage noted. MD notified of inmate's return New orders rec'd. Admitted to INF. Meds given as ordered. Made comfortable in ward. ———— BBrannon RN |
| 2200 | O- Resting quietly. Ø complaints voiced ———— BBrannon RN |
| 29/07 1230 | Lying in bed resting quietly response when called dry clut dry intact. ——— K.Lee LPN |
| 29/07 35 | S - I am okay, but I need something for pain |
| | Q - W/o alert, Oriented resp at ease lungs clear BS present 110/68, 68 18 97.2 O2pat 98% Lortab given for pain. dsg to groin is clean dry intact. |
| | A alet in comfort |
| | P - Continued to observed. ——— K.Lee LPN |
| 8/07 600 | Inmate consumed 80% of breakfast Ø complaints voiced, will report to oncoming shift ———— K.Lee LPN |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED



PHS
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 09/15/06 | 2³⁰p C̄hart reviewed per Mental Health Staff-Will schedule to F/uc Dr Banerji ———— R̄ Warrox |
| 9-15-06 1450 | P/ Rec'd to UCF, Out patien Completed Cleared for kitchen duty JMc |
| 21-07 | Spoke c̄ Stacey at Advance Surgical Associates R/T scheduling appt for RIH repair c̄ mesh. She stated she would call back c̄ date et time ———— CHunter, RN |
| 2-5-07 1430 | Spoke c̄ Stacey again at Advance Surgical Associates R/T surgery appt for RIH repair c̄ mesh. Stacey stated Dr. White has not given/returned date et time of surgery. ———— CHunter, RN - |
| 6/27/07 | 18⁰⁰ S.- " I have to have surgery." O. Inmate brought over to be held in infirmary to be NPO after midnight. Instructed inmate not to eat or drink after 12 midnight. also instructed inmate to call c̄ any complaints Inmate voiced understanding. ——— A Matthewsien |
| 6-28-07 am | 7²⁵-0- Out to f/u world. appt. Per DOC inmate alert et oriented x3 JMc |
| 6/28/07 | 2015- I/m returned from FW surgery appz. BP 120/70 P77 R18 O2 sat 94% |

| INMATE NAME (LAST, FIRST, MIDDLE) | | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|---|
| Krause Robert | | 24804 | 10/11/66 | W/m | VCF |

PHS-MD-70049

Comp Both Sides Before Using Another Sheet

PHS011




**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 6/29/07 8⁰⁰ pm | S- "I need something for pain. It's starting to hurt but It hadn't got real bad yet." |
| | O- w/m made above statement. A: 0 x 3. Skin warm + dry to touch. Respirations even + unlabored. Abd. soft + nondistended. Dressing noted to (R) groin area intact. No drainage to outer portion present. B/P 100/80, P 74, R 18 T 97. O₂ sat 97%. C/o pain scale level (5) pain. Int. Voiding freely |
| | A- Alteration in comfort + |
| | P- Lortab ÷ P0 given. Will continue to observe.          L. Smith C |
| 6/29/07 10¹⁰ pm | O- Lying quietly in bed. No complaints - Thill R? |
| 6/29/07 12⁰⁰ | O- Inmate sitting on side of bed. No complaints voiced. Consumed 50% of meal - Thill R? |
| 6/29/07 1400 | S- "I feel like my intestine is back down. My ball has swollen up real big." |
| | O- Above statement made. Moderate amount of edema note to groin/testicle since this am. Inmate not adhering to not "overdoing it." up constantly. |
| | A- alteration in comfort |
| | P- Dr. Peasant notified. New orders rec'd |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Krause, Robert | 248834 | 10/11/68 | W/M | VCF |

PHS-MD-70049        Complete Both Sides Before Using Another Sheet

PHS012

FOR PROFESSIONAL USE ONLY
**PHS** CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| | Continued |
| 7/29/05 1400 | P- Inmate advised to stay in bed and apply ice pack as ordered per M.D. Nurse Matthews advised of M.D. Order to observe testicle now + call him back in four hours after rechecking area again —TMtt |
| 1600 | O- resting quietly. C/O pain to R groin et scrotum. Scrotum noted to have edema. MD notified. Orders to cont Ice to R groin et scrotum. P- Will cont to monitor. BBrannon RN |
| 1815 | O- C/O 9/10 on pain scale. Loltab 5mg ii PO given at this time. BBrannon RN |
| 2015 | S- "it just hurt." O- BP 108/62 P 74 R 18 O2 Sat 96% T 98. C/O 7/10 on pain scale. to R groin et scrotum. A+O x 3. Skin w/D to touch. Resp even et unlabored. ⊕ BS x 4. Abd soft, non-distended. Dsg to R groin D/I, ∅ drainage noted. Scrotum swollen. Cont to use ice to area. A- Alt in comfort P- Will cont to monitor. —BBrannon RN |
| 2215 | O- C/O 7/10 on pain scale. Loltab 5mg ii PO given @ this time. —BBrannon RN |

PHS013



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | Krause, Robert #248039 |
|---|---|
| 6-30-07 | 0730) Tylenol #3 ㄤ po given as ordered per Dr Leosant. C/o incisional pain & ℞ scrotal pain rated 6/10. B Leile RN |
| 6/30/07 0800 | S- "I feel sore but better than I did yesterday." O Inmate is lying quiet in bed ē cover pulled over his head. Skin warm + dry to touch. Color normal, Breathing regular + unlabored. Tolerated meds well. No acute distress noted. B/p 110/74 - P 68 R 20 - T 97.6 - O2 Sat 95%. A - Alteration in comfort P - Continue to monitor. ————— E Smith, ₱ |
| 6/30/07 1000 | S- I am hurting some. O- inmate is alert + oriented. No acute distress noted. Up to treatment room for a dressing change. Staples intact + dry. Continue to monitor ——— E Smith ₱ |
| 6/30/07 1200 | O. inmate lying quiet on bed ē eyes closed. No acute distress noted. Continue to monitor. — E Smith ₱ |
| 1500 | S- I am alright. O- Inmate ambulates ad-Lib. Voiced no complaint. No acute distress noted. ₱ is couraged much walking due to incision and scrotal swelling. A - Alteration in comfort. P - Continue to monitor. ———— E Smith ₱ |

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

FOR PROFESSIONAL USE ONLY
**PHS** CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED
PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 6-29-07 | 2330) S - skin abright. |
| | O - up ambulating in infirmary around bed. A/O X 3. Skin WID. No C/O. Calm. No distress noted. B. Like RN |
| 6-30-07 | 0130) O - Resting lying on bed c̄ eyes open. Stated "skin not able to sleep." Rated pain a 4/10. B. Like RN |
| 6-30-07 | 0330) S - Will you tell the doctor I can't sleep? Rated R groin/testicle pain 6/10. Received B'fast tray. O - A/O X 3. Skin WID. Medicated for pain c̄ Motrin 600mg & Tylenol 1000mg po. Incision staples dry/intact. B. Like RN |
| 6-30-07 | 0530) S - skin still hurting. Rated 6/10. O - Ambulated to hallway for assessment. Steady gait. A/O X 3. Skin WID. Staples R groin DII. Area is slightly edematous c̄ small amt of bruising. R testicle is twice the size of left testicle & moderate amt of bruising. Area is tender to touch. No drainage, ↑ warmth, or redness to incision. Ate 50% of B'fast. No N/V. B/P 120/60, T 98.6, R 20, P 74, O₂Sat 95%. Heart RRR. Lungs CTA. Abd soft c̄ ⊕ bowel sounds. No peripheral edema. Last bowel movement 6/27/07. Denied any problem c̄ urination. A - Hernia Surgery R. Impaired Skin Integrity. Altered Comfort P - Monitor. Instruct no straining or lifting. Ice to scrotum intermittently. Rest frequently. Report to 1st Shift Nurse. B. Like RN |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Krause, Robert | 248039 | 10-11-68 | W/m | UCF |

PHS-MD-70049          Complete Both Sides Before Using Another Sheet

PHS015



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| | Krause, Robert #248034 |
| 7-01-07 | 0130) O- Resting lying on bed covered by blanket c̄ eyes closed. No distress noted. Resp. regular. B. Leike RN |
| 07-01-07 | 0330) S- I need my pain medicine. Rated 4/10 — D-Ambulated to fence for medication. Motrin 600 c̄ Percogesic # PO given for pain. Calm. B. Leike RN — |
| 7-01-07 | 0530) S- I feel better, I'm mainly sore now. D-Ambulated to hallway for assessment. A/O X3. Skin W/D. Steady gait. B/P 118/70 P80 R16 T98² Sat O₂ 97₂₀. Heart RRR. Rhonchi all lobes. Non productive cough. Abd. soft & tender RLQ c̄ ⊕ B.S. Had small BM on 6/30/07. Denied any problem c̄ urination. Face is pale. Edema to ® testicle. Less than yesterday. ® testicle 1/3 larger than ℗. Extensive bruising testicle & around incision. Abrasion dry/intact. Staples in place. A-Hernia surgery P- Monitor, Report to 1st Shift Nurse. B. Leike RN — |
| 7-01-07 0730 | S- No comment — O- W/m ambulatory to HCU lobby for assessment. A/O X3. Skin W/D to touch. Resp. ease. Ambulatory c̄ steady gait. WT 180# B/p 120/96 T-97.2 P-64 R-18. A. A/H in comfort R/T Hernia Surgery P- Tylenol #3 # PO given — Stauts, LPN |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED



**PHS**CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED
PRISON HEALTH SERVICES INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 6/30/07 | 1530 - I/m to ER, swelling noted to scrotum is decreased, bruising noted to R groin et scrotum. MD notified of findings. Ø new orders rec'd. ——— B Brannon LPN |
| 1730 | O- Resting quietly in bed. Ø acute distress noted. —— B Brannon LPN |
| 1845 | O- C/O 9/10 on pain scale to R groin et scrotum. Tylenol #3 ii PO given at this time. —— B Brannon LPN |
| 1945 | S- "I'm a little better" O- BP 130/90 P74 R18 O2 Sat 97% T 98.8 C/O 5/10 on pain scale to R groin et scrotum. Skin W/D to touch, Resp even et unlabored, Lungs clear bilaterally. BS x4, Abd soft, nondistended voids c ease. Dsg to R groin B/I, Ø drainage. A- alt in comfort P- will cont to monitor. —— B Brannon LPN |
| 2145 | O- resting quietly. Ø distress noted. —— B Brannon LPN |
| 6-30-07 | 2330 S- Can I have something for pain? Rated 6/10. O- Ambulated to fence, steady gait. Skin W/D. Tylenol #3 ii po given for c/o pain. Calm. No acute distress. Staples R groin d/I. B. Liske RN |

| INMATE NAME (LAST, FIRST, MIDDLE) Krause, Robert | DOC# 248034 | DOB 10-11-68 | R/S w/m | FAC. VCF |
|---|---|---|---|---|

PHS-MD-70049          ...mplete Both Sides Before Using Another Sh.

PHS017



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: | D.O.B.: 10 / 11 / 68 |
|-----------|----------------|----------------------|

7/1/07 | 1830 S- "I am hurting bad"

O- Inmate c/o pain 8 on scale ¹⁰/₁₀. Tylenol #3 ♀ PO given at this time. Instructed inmate to remain in bed et rest. Inmate also instructed to call c̄ any further complaints. —A Matthews CRN

1930 S- "I feel better now my pain is like a 3."

O- θ distress noted. Inmate resting in bed. A Matthews CRN

2128 O- Inmate resting in bed θ complaints at this time. ——————— A Matthews CRN

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)     **Complete Both Sides Before Using Another Sheet**

PHS018





PHS

PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 7/1/07 1000 A | O - W/m lying quietly in bunk, arouses easily. States much relief from Tylenol #3 tabs, pain noted # 3 on pain scale. |
| | P - Monitor et Medicate ——— Starks LPN |
| 1200 p | W/m ambulatory around in infirmary, verbalizes o complaints @ this time. |
| | P - Monitor et Medicate ——— Starks LPN |
| 1430 | O - W/m lying quietly in bunk, arouses easily. O Changes noted. |
| | P - Report to oncoming shift ——— Starks LPN |
| 7/1/07 1630 | S - " I need a dressing the old one came off." |
| | O - Inmate amb c̄ steady gait. Resp even et unlabored. Lungs clear b/l. Skin warm et dry to touch. BP 130/80 Pulse 90 Resp 16 Temp 98.8 Temp error 9 too. Sat 96% on RA Pain reported to be 4 on '10 scale. Reports last BM today. Ø complaints c̄ urination. Rt groin wound clean et dry Ø drainage noted. Skin staples intact to wound. Small amt bruising noted to area. TAO applied et covered c̄ 4x4's et tape. Inmate instructed to call c̄ any complaints |
| | A - Post OP Rt hernia repair. |
| | P - Cont to monitor. ——— A matthews LPN |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Krause, Robert | #84/8039 | 10/11/68 | W/m | VCF |

PHS-MD-70049          Complete Both Sides Before Using Another Sheet

PHS019



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| | Krause, Robert #248039 |
| 7-01-07 | 2330) O- Resting lying on bed covered by blanket. Resp regular. No distress noted. B. Luke RN |
| 7-02-07 | 0130) O- Resting lying on bed wrapped in blanket. Resp regular. No distress noted. B. Luke RN |
| 7-02-07 | 0330) O- Sitting SOB eating AM meal. Denied any C/O. Calm. No distress noted. B. Luke RN |
| 7-02-07 | 0530) S- skin sore more than hurting. Rated 2-3. |
| | O- Ambulated to hallway for assessment. A/0X3. Skin W/D. Yellowish color to face - paleness. B/P 94/60 P80 R16 T98° O₂ Sat 95%. Heart RRR. Mild rhonchi all lobes. Abdomen soft tender RLQ c̄ ⊕ BS. BM 7/01/07; normal Denied any problem c̄ urination. Edema & bruising ® testicle. Edema is decreasing. Staples ® groin area are dry/intact c̄ slight bruising. Excoriated skin where tape removed. |
| | A- Hernia surg Surgery ® groin. |
| | P- Monitor. Report to 1ˢᵗ Shift Nurse. B. Luke RN |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 7-2-07 | 8⁰⁰am S. "I'm alright" |
| | O. C/o soreness in (R) lower abdomen and (R) testicle |
| | some discoloration noted @ the incision site. |
| | A. Alt. in comfort. |
| | P. Will cont. to Monitor and see M.D. V. Young ℞ |
| 7-2-07 | 10⁰⁰ O. Alert et oriented to surroundings. Seen by |
| | M.D. no new orders noted. Cont. present tx. |
| | A. Alt in Comfort |
| | P. Will cont. to Monitor. V. Young ℞ |
| 7-2-07 | 12³⁰/pm O. Resting quietly in ward on the bed. No |
| | moaning or groaning or facial grimaces noted. Tolerated |
| | lunch s̄ N/V noted. |
| | A. Alt in comfort |
| | P. Will cont. to Monitor |
| 7-2-07 | 2³⁰/pm O. Quiet on bed. Voiced no c/o pain or discomfort. |
| | No moaning, groaning or facial grimace. Pain scale 3. |
| | A. Alt in comfort R/T (R) Hernia repair. |
| | P. Will cont. to Monitor. V. Young ℞ |
| 7/2/07 1510 | O. Amb. on ward. Offers no c/o. Requesting dsg. ℞ Ethier |
| 1730 | S: I feel fine. |
| | O: Wt 186lbs T99.4 BP 139/80 P-76 O₂Sat 96% |
| | dsg △ done per request. Incision line is intact |
| | tape burn marks noted around outer area |
| | △ wound. |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Krause, Robert | | | | |

PHS-MD-70049    Complete Both Sides Before Using Another Sheet



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 7/2/07 1730 | A- Alt. Post op Hernia repair |
| | P/S Continues to monitor ————— Ed Johnson RN |
| 1930 | O- Sleeping in bed. Offers no Cp. Ed Johnson RN |
| 2200 | O- Continues to lay in bed. Sleeping. DTI Ed Johnson RN |
| 7/3/07 1200 | Lying in bed resting, quietly response when |
| | called ø complaints voice when continued to |
| | observed. ————— K. Lee LPN |
| 7/3/07 300 | S- I am hurting |
| | O- Wm alert, Oriented resp at ease lungs clear |
| | BS present dsg dry intact meds given as ordered |
| | BP 128/72 P80 R20 T97.2. O2Sat 97% |
| | A- Alt in Comfort |
| | P- Continued to observed. ————— K. Lee LPN |
| 7/3/07 530 | Inmate in infirmary talking ø fellow inmate |
| | ø complaints dsg dry & intact. Consumed |
| | 100% of breakfast. will report to oncoming |
| | shift ————— K. Lee LPN |
| 7-3-07 0800 | S- "He's going to keep me back there until |
| | Thursday" |
| | O- Wm ambulatory to HCU today for assessment. |
| | A/ox 3. Skin W/D to touch. Resp ø ease, |
| | Bilat lungs CTA. ⊕ BS x 4 quads. Dsg dry |
| | ø intact. Wt-180# B/P-110/80 T-97 ø P-68 R18 |
| | P- Awaiting MD visit ————— J. Banks LPN |

PHS022

FOR PROFESSIONAL USE ONLY
PHS CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 7-3-07 1000A | O-W/m ambulatory around in infirmary, A/OX 3. denies c/o pain/discomfort. |
| | P- Monitor et Medicate ————— Starks Lp |
| 1400p | O-W/m resting quietly in bunk, arouses easily. denies complaints. |
| | P-Report to oncoming shift ——— Starks Lp |
| 1600 | O- Resting quietly. Ø distress noted P- will cont to monitor. BBrannon Lp |
| 1800 | O- Resting quietly on bed. Ø S's noted P-will cont to monitor. BBrannon Lp |
| 2000 | S-" I'm pretty good." O- BP 150/80 P83 R18 O2 Sat 99%, T 96⁸ c/o 2/10 on pain scale, to Ⓡ groin et scrotum, describes pain as "just sore." Skin W/D to touch, resp even et unlabored, lungs clear bilaterally. ⊕ BS x4, Abd soft, nondistended voids c ease. staples intact to Ⓡ groin, Ø redness, edema or drainage noted very little edema noted to scrotum. meds given as ordered. A- alt in comfort P- instructed to call c needs. voiced an understanding. ——— BBrannon Lp |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Krause, Robert | #848039 | 10/11/68 | W/m | VCF |

PHS-MD-70049      Complete Both Sides Before Using Another Sheet

PHS023



FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS
PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | Krause, Robert #248039 |
|---|---|
| 7/3/07 | 2145 - O - Resting quietly in bed. Ø distress noted. —————————— B.Brannan LPN |
| 7-03-07 | 2330) O- Resting lying on bed covered by blanket. A/O X3. Skin WNO. Denied any C/O. No distress noted. Calm. B. Like RN |
| 7-04-07 | 0130) O- Resting lying on bed c̄ eyes closed covered by blanket. Resp regular. No distress noted. B. Like RN. |
| 7-04-07 | 0330) O- Continues to rest on bed covered by blankie c̄ eyes closed. Resp regular. No distress noted. B. Like RN |
| 7-04-07 0510 | S- "I feel alright. Denied any pain. O- Sitting SOB for assessment. A/O X3. Skin W/O. B/P 102/70, P60, R16, T97°, O₂ Sat 96%. Heart RRR. Rhonchi auscultated all lobes < Right ↑↑ back. Non productive cough. Abdomen soft c̄ ⊕ BS. Having formed bowel movements. Staples RLQ dry/intact. Slight redness incision line, edges approximated. Bruising is fading. No edema. A- ℞ Hernia Repair. P- Monitor. Report to 1st Shift Nurse. B. Like RN — |
| 7-4-07 7°° am | S- "I have a small amount of swelly to my ℞ testicle" O- Last BM ↑3°7, wt 182, P68, O₂Sat 96%, R18, T98°8, B/P 120/70, W/M, ambulates c̄ steady, no bleeding from incision site — Consumed 100% of breakfast ——— RN |

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

### INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 7-4-07 | 9⁰⁰ am - O- "I am okay now" O- lying on bed eyes open, voices no c/o at this time. Staple line intact staples intact, slightly amount of swelling noted. ___ RMuh |
| 7-4-07 | 11⁰⁰ am - O- Ambulates c̄ steady gait c̄ no c/o pain @ this time. Consumed 100% of meal c̄ no N/V @ this time. ___ RMuh |
| 7-4-07 | 1⁴⁰ pm - Pt- continue to monitor groin area swelling and staple line, report ↑ swelling to nurse as soon as possible RMuh |
| 7-4-07 | 16²³ - Inmate amb in infirmary. Voices no complaints at this time. ___ C.Matthews LPN |
| 1930 | S- "I feel fine just still a little sore" O- Inmate amb c̄ steady gait. Resp even & unlabored. Lungs clear bil. Skin W/D to touch. BP ¹⁰⁸/₇₀ Pulse 82 Oxygen Sat 96% on RA. Resp 16. Abd soft nontender BS ⊕ x4. Rt post op hernia sight clean & dry ∅ redness swelling, drainage noted. T.A.O applied. Staples intact. ∅ c/o pain. Instructed inmate to call c̄ any complaints. ___ C.Matthews LPN A- PO Rt hernia repair ___ C.Matthews LPN |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Krause Robert | 24889 | 10-11-68 | W/M | |

PHS-MD-70049          **Complete Both Sides Before Using Another Sheet**

PHS025

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED
PHS
PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 7-4-07 1930 | P. Cont to monitor ——— A Matthews LPN |
| 2200 | O- Inmate resting in bed Ø complaints voiced at this time. ——— A Matthews LPN |
| 7-5-07/1230 | Lying in bed resting quietly response when called Ø complaints voice aric Continue to monitor staples intact to suture lines Ø open area or drainage noted. ——— K Rec WC |
| 7-5/07 3⁰⁰ | S — I am okay O- Wm alert, oriented resp at ease lungs clear BS present walk c steady gait to tv area suture line clean dry intact TAO applied as ordered denies having any pain. BP 110/58 P66, R 18, T 99.2 A- Alt in Comfort. P- Continued to monitor. ——— K Rec WC |
| 7/5/07 - 6⁰⁰ | In bed resting response when called Ø complaints. Consumed 100% of meal will report to oncoming shift. ——— K Le WC |
| 7/5/07 8⁰⁰ pm | S- "It's not really bad. I don't need anything for pain." O- P/m noted A & O x 3. Skin warm + dry to touch. Respirations even + unlabored. Heart rate c PLL, Lungs clear. Abd. soft + non distended. BS present x 4. |

| INMATE NAME (LAST, FIRST, MIDDLE) | | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|---|
| Krause    Robert | | 248039 | 10/1/68 | W/m | VRP |

PHS MD-70049          Complete Both Sides Before Using Another Sheet

PHS026



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## INFIRMARY NURSING PROGRESS NOTES

| Date/Time | |
|---|---|
| 7/5/07 8:00 AM | Voiding freely. Last BM yesterday. B/P 100/60, P 82, R 18, T 97.8. Small amount of redness noted surgical line. No drainage noted. Sub Staples intact. A- Attention in comfort RT Hernia Repair P- Staples removed per Dr Pleasant. new orders rec'd ———— S. Smith, LPN |
| 7/5/07 8:30 PM | Ⓞ Inmate discharged to population as ordered per M.D. Discharge instructions given. Inmate stated that he understood. Advised not do any straining, lifting > 10#, or strenuous activity. ———— S. Smith, LPN |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

ADOC-OHS Form #_____    DRAFT FORM



**Alabama Department of Corrections**
**Office of Health Services**
**Return from Offsite Consult**

Name _Krause, Robert_ DOC# _248039_ Date: _6/28/07_

Subjective statement of the patient about what transpired: _"I had a hernia_
_repair"_

Apparent condition of the patient on return: (Describe any scars, wounds, dressings, casts, etc.) _dsg (gauze)_
_to ℝ groin D/I, Ø casts, scars noted to_
_body. BP 120/70, P 77, R 18, O2 sat 94%, T 98, 9/10 on pain scale_

Any new diagnoses by the consultant: _Ø_

Recommended tests: _NONE_

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

Need or plans for hospitalization: Y (N?)

If yes, for what purpose: _____

Recommended medications: _Percocet i-ii PO q 6° prn pain_

MD notified of medication recommendations (Y) N

Orders for meds received from staff physician (Y) N Circle those meds above which were ordered.

Name of MD notified _Dr Peasant_

Other recommendations of the consultant: _Lortab 5mg ii PO ~~q8°~~ q4° prn_
_x 6 doses_

Follow-up visit requested by consultant (Y) N. When? _Monday 7/2/07_

Purpose of follow-up: _S/P ℝ Hernia repair_

Appointment date to see staff physician for review and follow-up: _Monday 7/2/07_

Summary review by staff physician:
_FU S/P ℝ herniorrhaphy. 4 days ago._
_c/o pain - stopple in place._
_FU thursday._

Name: _J Peasant_    Date: _7/2/07_

PHS028



**JACKSON HOSPITAL**

KRAUSE, ROBERT
41-44-93  0717800397  10/11/68  38Y M
PAT -                    B
GARY, BRIAN C    PAT
                          06/27/07

## DISCHARGE INSTRUCTIONS: OUTPAT

DATE: 6-28-02  TIME: 1750

### INSTRUCTIONS FOR ALL PATIENTS RECEIVING SEDATION

1. REST QUIETLY the remainder of the day. A responsible adult should remain with you the remainder of today. You should be assisted to the bathroom for the first 6 to 8 hours. (Children - NO RUNNING, JUMPING, BOUNCING, ROUGH PLAY).
2. DO NOT drive or operate heavy machinery for 24 hours after receiving sedation or while taking pain medication.
3. DO NOT drink alcoholic beverages or smoke for the first 24 hours after receiving sedation/ pain medication.
4. DO deep breathing exercises for the next 6 - 8 hours. This will help rid the body of the sedative medication.
5. Eat a light diet (soup, jello, coke, tea) for your next meal, then resume your normal diet or diet ordered by physician.
6. Some anesthetics could cause nausea. If nausea persists at home, call your physician.
7. If your IV site is sore, apply warm wet compresses (wash cloth) 3 - 4 times/day.
8. You will receive a follow-up phone call from us within the next few days to check c

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

### FOLLOW CHECKED ITEMS:

☐ Follow written or oral instructions received from your physician.
☐ Keep operative/procedure site clean and dry.
☐ Do not remove bandage unless instructed by physician
☐ Avoid stress to suture line.
☐ May bathe or shower starting_____
☐ May return to work/school_____
☐ You may gargle with warm salt water for sore throat
☐ TAKE THE FOLLOWING MEDICATIONS AS ORDERED BY YOUR PHYSICIAN: _____

☐ Notify your doctor if you have any of the Following: (circle applicable)
a. fever over 100
b. redness, swelling, drainage, excessive bleeding, foul odor at procedure site.
c. severe unrelieved pain
d. more than 1 tsp. of bright red blood in bowel movement
e. numbness, tingling, change in color, coldness, increased pain of affected extremity.

### OTHER SPECIFIC INSTRUCTIONS:

RETURN/FOLLOW-UP APPOINTMENT _____ MD

PHYSICIAN'S # 265-9225
HOSPITAL # 334-293-8000

I HAVE RECEIVED AND UNDERSTAND MY INSTRUCTIONS

SIGNATURE PATIENT/RESPONSIBLE PERSON _____

INSTRUCTED BY _____
NURSE'S SIGNATURE

OP-04 JH 6/97

PHS029

**Advanced Surgical Associates, P.C.**
2101 Chestnut Street
Montgomery, AL 36106

Wesley H. Barry, Jr., M.D.,
   F.A.C.S., F.S.S.C.                          Brian R. Whyte, M.D.

Antonio J. Williams, M.D.


## Adult Hernia Post Op Instructions

1.)No heavy lifting, driving, or strenuous activities for ____
weeks.

### WOUND CARE

___Staples                                    ___Stitches

Clean with damp cloth
Neosporin on staples                          Dry dressing daily
Gauze over site
Tape

2.)No shower or tub bath for 3-4 days.
    SPONGE BATH ONLY

3.)Do not go back to work until instructed by Doctor.

4.)Appointment for_____.



FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) *Krause* / *Robert*
                    **LAST**        **FIRST**        **MI**

DATE OF BIRTH  *10 - 11 - 68*        SS# *248034*

**Housing Recommendations:**

General Population _____

Medical Observation Unit _____

Lower Level/Lower Bunk _____

Suicide Precautions _____

Special Watch (15 Minute Checks) _____

Isolation _____

Initiate Universal Precautions _____

*(1. Bottom Bunk
Profile x 180 days
2/28/07 — 8/28/07*

*(2. No lifting >20 lbs
x 365 days
2/28/07 — 2/28/08*

*3. No Straining x 365 day
2/28/07 — 2/28/08*

**Individual found to be:**

Frail/Elderly _____

Physically Handicapped _____

Developmentally Disabled _____

Drug/Alcohol Withdrawal _____

Special Mental Health Needs _____

Expressed Suicidal Ideation _____

History of Seizures _____

Other _____

Specify _____

Nurse *V. Young Ln* _____    Date *2/28/07*

*Robert Krause 248039*

GLF 1005        Original/Classification        Second Copy/Booking Staff        Third Copy/Medical Unit

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS031



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

### RELEASE OF RESPONSIBILITY

Inmate's Name: *Krause, Robert*

Date of Birth: *10-11-68*      Social Security No.: *248039*

Date: *2-6-07*      Time: *1345*      A.M.
P.M.

This is to certify that I, *R. Krause*, currently in
(Print Inmate's Name)

custody at the *Ventress C.F.*, am refusing to
(Print Facility's Name)

accept the following treatment/recommendations: *Infirmary Stay*
(Specify in Detail)

I acknowledge that I have been fully informed of and understand the above treatment(s)/recommendation(s) and the risks involved in refusing them. I hereby release and agree to hold harmless the City/County/State, statutory authority, all correctional personnel, Prison Health Services, Inc. and all medical personnel from all responsibility and any ill effects which, may result from this action/refusal and I personally assume all responsibility for my welfare.

X *Robert Krause*
(Signature of Inmate)**

*S. Allen LPN*
(Signature of Medical Person)

*V. Young LPN*
(Witness)

(Witness)

**A refusal by the inmate to sign requires the signature of at least one witness in addition to that of the medical staff member.

60115 (5/85)

PHS032





PRISON
HEALTH
SERVICES
INCORPORATED

## RELEASE OF RESPONSIBILITY

Inmate's Name: _Robert Krause_

Date of Birth: _____  Social Security No. _AIS 248039_

Date: _9-18-06_  Time: _3⁰⁰_  AM / PM

This is to certify that I, _Robert Krause_, currently in
(Print Inmate's Name)

custody at the _Ventriss Correctional_, am refusing to
(Print Facility's Name)

accept the following treatment/recommendations: _Copy of Profile on_
(Specify in Detail)

_Ventriss Sheet_

_____

I acknowledge that I have been fully informed of and understand the above treatment(s)/recommendation(s) and the risks involved in refusing them. I hereby release and agree to hold harmless the City/County/State, statutory authority, all correctional personnel, Prison Health Services, Inc. and all medical personnel from all responsibility and any ill effects which, may result from this action/refusal and I personally assume all responsibility for my welfare.

X _Robert Krause_ _____     _____ R N
(Signature of Inmate)**                    (Signature of Medical Person)

_____                    _____
(Witness)                                        (Witness)

**A refusal by the inmate to sign requires the signature of at least one witness in addition to that of the medical staff member.

60115 (5/85)

PHS033

## IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) _Krause, Robert_

                     **LAST**              **FIRST**        **MI**

DATE OF BIRTH _10-11-68_     SS# _AIS 248039_

**Housing Recommendations:** _Athletic Support KOP BB, & Straining_

    General Population _No lifting > 20 lbs._

    Medical Observation Unit ___

    Lower Level/Lower Bunk _X_ _180 lb. - Ergonics_

    Suicide Precautions ___

    Special Watch (15 Minute Checks) ___

    Isolation ___

    Initiate Universal Precautions ___

**Individual found to be:**

    Frail/Elderly ___

    Physically Handicapped ___

    Developmentally Disabled ___

    Drug/Alcohol Withdrawal ___

    Special Mental Health Needs ___

    Expressed Suicidal Ideation ___

    History of Seizures ___

    Other ___

    Specify ___ _X Robert Krause_

Nurse _[signature] RN_     Date _9/18/06_

_Written 9/7/06 from Silky   Rew 3/7/07_

FOR PROFESSIONAL USE ONLY CONFIDENTIAL RECORD NOT TO BE PHOTO COPIED

GLF 1005     Original/Classification     Second Copy/Booking Staff     Third Copy/Medical Unit

PHS034

N610

## ALABAMA DEPARTMENT OF CORRECTIONS

### *RECEIVING SCREENING FORM*

Inmate's Name: _KRAUSE Robert D Y248039_    Date: _9-15-06_    Time: _9:40 AM_

DOB: _10-11-68_    Officer: _REYNOLDS_    Institution: _UCF_

*Receiving Officer's Visual Opinion*    **FOR PROFESSIONAL USE ONLY**    Yes    No

**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

|  |  | Yes | No |
|---|---|---|---|
| 1. | Is the inmate conscious? | ✓ | |
| 2. | Does the inmate have any obvious pain or bleeding/other symptoms suggesting the need for emergency services? | | ✓ |
| 3. | Are there any visible signs of trauma or illness requiring immediate emergency treatment or doctor's care? | | ✓ |
| 4. | Any obvious fever, swollen lymph nodes, jaundice, or other evidence of infection which might spread through the institution? | | ✓ |
| 5. | Is the skin in poor condition or show signs of vermin or rashes? | | ✓ |
| 6. | Does the inmate appear to be under the influence of alcohol or drugs? | | ✓ |
| 7. | Are there any visible signs of alcohol or drug withdrawl? (extreme perspiration, shakes, nausea, pinpoint pupils, etc.) | | ✓ |
| 8. | Is the inmate making any verbal threats to staff or other inmates? | | ✓ |
| 9. | Is the inmate carrying any medication or report that he is on any medication which must be continuously administered or available? | ✓ | ✓ |
| 10. | Does the inmate have any obvious physical handicaps? | | ✓ |

*If the answer is YES to any questions from 2-10 above, specify WHY in section below.*

| | | Yes | No |
|---|---|---|---|
| 11. | Are you presently taking medication for diabetes, heart disease, seizure, arthritis, asthma, ulcers, high blood pressure or psychiatric disorder? | ✓ | ✓ |
| 12. | Are you on any special diet prescribed by a physician? (if YES, what type?) | | ✓ |
| 13. | Do you have a history of venereal disease or abnormal discharge? | | ✓ |
| 14. | Have you recently been hospitalized or recently seen a medical or psychiatric doctor for any illness? | | ✓ |
| 15. | Have you ever attempted suicide? | ✓ | |
| | (If YES, When? _1996_    How? _pill overdose_ | | |
| 16. | Do you want to do any harm to yourself now? | | ✓ |

PHS035

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## SPECIAL NEEDS COMMUNICATION FORM

**Date:** 9/7/06

**To:** DOC

**From:** OPC

**Inmate Name:** Krause, Robert    **ID#:** 248034

**The following action is recommended for medical reasons:**

1. House in _____

2. Medical Isolation _____

3. Work restrictions _____

4. May have extra _____ until _____

5. Other _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Comments:**

Athletic Support KOP/BB / ∅ straining ∅ Lift > 20LBS x 180d — (B) inguinal hernia

**Date:** 9/7/06    **MD Signature:** UO B Adams crw P/    **Time:** _____

60418

# RECEIVING SCREENING FORM

INMATE'S NAME: _Krause, Robert_    DATE: _9 05 06_ TIME: _9:50 AM_

DOB: _10-11-68_    OFFICER: _Col Hives_    INSTITUTION:    **KILBY**

## RECEIVING OFFICER'S VISUAL OPINION

|  | YES | NO |
|---|---|---|
| Is the inmate conscious? | ✗ | ___ |
| Does the inmate have any obvious pain or bleeding or other symptoms suggesting the need for doctor's care? | ___ | ___ |
| Are there any visible signs of trauma or illness requiring immediate emergency or doctor's care? | ___ | ___ |
| Any obvious fever, jaundice, or other evidence of infection which might spread through the institution? | ___ | ___ |
| Is the skin in poor condition or show signs of vermin or rashes? | ___ | ___ |
| Does the inmate appear to be under the influence of alcohol, or drugs? | ___ | ___ |
| Are there any signs of alcohol or drug withdrawal? (Extreme perspiration, shakes, nausea, pinpoint pupils, etc.) | ___ | ___ |
| Is the inmate making any verbal threats to staff or other inmates? | ___ | ___ |
| Is the inmate carrying any medication or report that he is on any medication which must be continuously administered or available? | ___ | ___ |
| Does the inmate have any obvious physical handicaps? | ___ | ___ |

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

**FOR THE OFFICER**

Was the new inmate oriented on sick/dental call procedures?

This inmate was _____ a. Released for normal processing

_____ b. Referred to health care unit

_____ c. Immediately sent to the health care unit

_____Col Hives_____

**Officer's Signature**

This form will be completed at receiving and will be filed in the inmate's medical jacket to comply with NCCH Standards.

PHS037

|  | Yes | No | No Response |
|---|---|---|---|
| 17. Do you want to talk to a mental health counselor? | ___ | ✓ | ___ |
| 18. Are you allergic to any medication? *sulfur* | ✓ | ✓ | ___ |
| 19. Have you recently fainted or had a head injury? | ___ | ✓ | ___ |
| 20. Do you have epilepsy? | ___ | ✓ | ___ |
| 21. Do you have a history of tuberculosis? | ___ | ✓ | ___ |
| 22. Do you have diabetes? | ___ | ✓ | ___ |
| 23. Do you have hepatitis? | ___ | ✓ | ___ |
| 24. Do you have a painful dental problem? | ✓ | ___ | ___ |
| 25. Do you have any medical problem we should know about? | ✓ | ___ | ___ |
| *bi polar ; hernia* 26. Do you have a past alcohol or drug history? | ✓ | ___ | ___ |

What type? _*Meth*_    How much use? _*heavy*_

For how long? _*8 yrs.*_    Last time used? _*May 2006*_

*Comments:* (Unusual behavior, etc.)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

_____

**For the Officer:**

27. Was the new inmate briefed on sick/dental call procedures?    ✓

28. This inmate was:  a. Released for normal processing    ✓

   b. Referred to appropriate health care unit    ✓

   c. Immediately sent to health care unit    ___

_____
**Officer's Signature**

*Note:* This form is completed on inter and intra system transfers at receiving and will be filed in the inmates medical jacket to comply with ACA Standards 2-4289, 2-4290 and AMA Standard 140.

_____
**Inmate's Signature**



FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**MHM SERVICES, INC.**
PROVIDING ON-SITE MENTAL HEALTHCARE

*February 16, 2001*

## RELEASE OF RESPONSIBILITY

This is to certify that I, *Krause Robert 248039* , currently in
                     (Print Inmate's Name)

the custody of the Alabama Department of Corrections, am refusing to accept the following

treatment(s)/recommendation(s): *Non- Compliance With Medication*
                              (Specify in Detail)

*I've been sick with Sinus/Head Cold x last 3 or so*

*weeks and haven't felt like Standing in the pill call line*

I acknowledge that I have been fully informed of and understand the above treatment(s)/
recommendation(s) and the risks involved in refusing them. I hereby release and agree to hold
harmless the Alabama Department of Corrections, all correctional personnel, MHM Correctional
Services, Inc. and all mental health personnel from all responsibility and any ill effects which may result
from this action/refusal and I personally assume all responsibility for my welfare.

*Robert Krause*                          *C Harris LPN 02/16/07*
   (Signature of Inmate)**                 (Signature of Mental Health Personnel)

                                           *OK 80, MD*

_____                  _____
      (Witness)                                 (Witness)

** A refusal by the inmate to sign requires the signature of at least one witness in addition to that of the
Mental Health staff member

MHM 616-30 Dec. 1, 2006

PHS039

# IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) *Krause, Robert #248039*

LAST       FIRST       MI

DATE OF BIRTH *10-11-68*      SS# _____

**Housing Recommendations:**

General Population _____

Medical Observation Unit _____

1) — Lower Level/Lower Bunk ✓

Suicide Precautions _____

Special Watch (15 Minute Checks) _____

Isolation _____

Initiate Universal Precautions _____

2) No lifting >15# x 180 days 7/5/07 - 1/5/08

3) TAO - Apply small amount to wound daily x 7 days 7/5/07 - 7/12/07

**Individual found to be:**

Frail/Elderly _____

Physically Handicapped _____

Developmentally Disabled _____

Drug/Alcohol Withdrawal _____

Special Mental Health Needs _____

Expressed Suicidal Ideation _____

History of Seizures _____

Other _____

Specify _____

4) Report to HCU on Monday 7/9/07 @ 9:30 AM to see M.D.

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Nurse *I. Smith*      Date *7/5/07*

X — *Robert Krause*

GLF 1005      Original/Classification      Second Copy/Booking Staff      Third Copy/Medical Unit

PHS040

# IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) *Krause*          *Robert T*
                          LAST                 FIRST           MI

DATE OF BIRTH   *10-11-68*          SS# *248039*

**Housing Recommendations:**

                        *To see MD*
                            *F/U*

General Population ____     *5-13-07*

Medical Observation Unit ____   *6-21-07*

Lower Level/Lower Bunk ____   *7-12-07*

Suicide Precautions ____

Special Watch (15 Minute Checks) ____

Isolation ____

Initiate Universal Precautions ____

**Individual found to be:**

                                FOR PROFESSIONAL USE ONLY

Frail/Elderly ____       **CONFIDENTIAL RECORD**

Physically Handicapped ____   NOT TO BE PHOTO COPIED

Developmentally Disabled ____

Drug/Alcohol Withdrawal ____

Special Mental Health Needs ____

Expressed Suicidal Ideation ____

History of Seizures ____

Other ____

Specify _____

Nurse *M Bengield*          Date *5-10-07*

          *Robert Krause 248039*

GLF 1005       Original/Classification       Second Copy/Booking Staff       Third Copy/Medical Unit

## IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) _Krause, Robert_

LAST                    FIRST                    MI

DATE OF BIRTH _10-11-68_                SS# _348039_

**Housing Recommendations:**

General Population _____

Medical Observation Unit _____

Lower Level/Lower Bunk _____

Suicide Precautions _____

Special Watch (15 Minute Checks) _____

Isolation _____

Initiate Universal Precautions _____

*Report to HCU on March 29, 2007 @ 8:00 AM MD Appt*

**Individual found to be:**

Frail/Elderly _____

Physically Handicapped _____

Developmentally Disabled _____

Drug/Alcohol Withdrawal _____

Special Mental Health Needs _____

Expressed Suicidal Ideation _____

History of Seizures _____

Other _____

Specify _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Nurse _T. Starks Lpn_        Date _3/27/07_

GLF 1005        Original/Classification        Second Copy/Booking Staff        Third Copy/Medical Unit

PHS042

# IDENTIFICATION OF SPECIAL NEEDS

**NAME (PLEASE PRINT)** *Krause*     *Robert*

           LAST               FIRST          MI

**DATE OF BIRTH** *10 - 11 - 68*     SS# *248039*

**Housing Recommendations:**

(1) *Truss size 34" waist X 365 days*

General Population _____

Medical Observation Unit _____

Lower Level/Lower Bunk _____ *1-25-07 —— 1-25-08*

Suicide Precautions _____

Special Watch (15 Minute Checks) _____

Isolation _____     (2) *no prolonged standing > 20 min.*

Initiate Universal Precautions _____     *X 180 days*

                                *1-25-07 — 7-25-07*

**Individual found to be:**

(3) *F/U to see MD 2-22-07*

Frail/Elderly _____

Physically Handicapped _____

Developmentally Disabled _____

Drug/Alcohol Withdrawal _____

Special Mental Health Needs _____

Expressed Suicidal Ideation _____

History of Seizures _____

Other _____

Specify _____

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

Nurse *M Benefield*     Date *1-25-07*

      X *Robert Krause*

GLF 1005      Original/Classification      Second Copy/Booking Staff      Third Copy/Medical Unit

PHS043

# IDENTIFICATION OF SPECIAL NEEDS

**NAME (PLEASE PRINT)** _Krause Robert_

LAST          FIRST          MI

**DATE OF BIRTH** _____   AIS/SS# _248039_

**Housing Recommendations:**

General Population _____

Medical Observation Unit _____

Lower Level/Lower Bunk _____

Suicide Precautions _____

Special Watch (15 Minute Checks) _____

Isolation _____

Initiate Universal Precautions _____

_Report to MCU @ 730 for MD apt. Thur 1/25/07_

**Individual found to be:**

Frail/Elderly _____

Physically Handicapped _____

Developmentally Disabled _____

Drug/Alcohol Withdrawal _____

Special Mental Health Needs _____

Expressed Suicidal Ideation _____

History of Seizures _____

Other _____

Specify _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Nurse _____     Date _1/18/07_

_Robert Krause_

GLF 1005          Original/Classification          Second Copy/Booking Staff          Third Copy/Medical Unit

PHS044

# IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) _Krause, Robert_

LAST          FIRST          MI

DATE OF BIRTH _10-11-68_          SS# _248034_

**Housing Recommendations:**

_Return to HCU
Nov. 30, 2006
@ 820 Am
Wear Truss !_

General Population _____

Medical Observation Unit _____

Lower Level/Lower Bunk _____

Suicide Precautions _____

Special Watch (15 Minute Checks) _____

Isolation _____

Initiate Universal Precautions _____

_Miconazole
Cream 2%
Apply to Rash
daily X 30 days
10/31/06 → 11/30/06_

**Individual found to be:**

Frail/Elderly _____

Physically Handicapped _____

Developmentally Disabled _____

Drug/Alcohol Withdrawal _____

Special Mental Health Needs _____

Expressed Suicidal Ideation _____

History of Seizures _____

Other _____

Specify _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Nurse _T. Starks, LPN_          Date _10/31/06_

X _[signature]_

~~inal/Classification          Second Copy/Booking Staff          Third Copy/Medical Unit

PHS045

## TUBERCULIN PPD FOR INMATES

| INITIAL SKIN TEST | |
|---|---|
| Date Given: 10-3-06 | Date Read: 10-5-06 |
| Site Given: LFA | Size: Ø mm |
| Lot #: 4525G261 | |
| Nurse: _QMarkhu_ | Nurse: _QMarkhu_ |

I have received a fact sheet on TB and have had the opportunity to have my questions answered. I agreed to TB testing by PPD. I understand the PPD must be read 72 hours after being administered. I have never had a positive reaction to a TB skin test, nor have I ever been treated with TB drugs. I have also been instructed to check with my regular physician or the public health department if I am released prior to the TB test being read.

_Robert Krause_                     10-3-06
Inmate Signature                    Date

_F. Smith Jr_                       10-3-06
Witness Signature                   Date

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

| INMATE NAME: | ID#: | RACE: | LOCATION: |
|---|---|---|---|
| Krause Robert | 248039 | | Ventress |

Tuberculin PPD for Inmates

# VENTRESS CORRECTIONAL FACILITY

# VERIFICATION OF ACCESS TO HEALTHCARE

THIS IS TO CERTIFY THAT I HAVE RECEIVED VERBAL AND WRITTEN ACCESS TO HEALTHCARE INSTRUCTIONS, TO INCLUDE ORAL HYGIENE INSTRUCTIONS. I HAVE HAD THE OPPORTUNITY TO ASK QUESTIONS AND TO HAVE MY QUESTIONS ANSWERED.

_Robert Krouse_
SIGNATURE

_248039_
AIS NUMBER

_____
WITNESS

_9-15-06_
DATE

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS047



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

**DEPARTMENT OF CORRECTIONS**

## KITCHEN CLEARANCE
## PHYSICAL ASSESMENT

|  | YES | NO |
|---|---|---|
| ANY OPEN SORES OR RASHES ON HANDS, ARMS, FACE & NECK | ___ | ✓ |
| TB TEST CURRENT | ✓ | ___ |
| DOES PT. SHOW ANY OBVIOUS SIGNS OF ANY OTHER DISEASE | ___ | ✓ |

OTHER: _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

THIS PATIENT HAS BEEN INFORMED OF THE NEED FOR THE FOLLOWING:

PROPER HANDWASHING, NOT TO HANDLE FOOD WHILE SICK, SEEK MEDICAL EVALUATION WHEN NECESSARY AND TO NOTIFY THE DIETARY SERVICES SHIFT SUPERVISOR OF ANY ILLNESS.

MEDICAL AUTHORITY: _____ DATE: 9-15-06

I attest that the above statement is true to the best of my knowledge.
PATIENT SIGNATURE: _Robert Krause_ DATE: 9-15-06

EXPIRATION DATE: 9-6-07

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | Race/Sex | FAC. |
|---|---|---|---|---|
| Krause Robert | 248034 | 10/11/68 | W/m | UCF |

PHS-MD-70042   **(White - Medical File, Yellow - Kitchen Supervisor,  Pink - Classification Administrator (Inmate))**

PHS048

# IMMUNIZATION RECORD

**Name** _Krause, Robert_    **AIS** _248034_    **D.O.B.** _10-11-68_

## Hep A Vaccine

Date _____ By _____

Date _____ By _____

## Hep B Vaccine

1) Date _____ By _____

2) Date _____ By _____

3) Date _____ By _____

## Influenza

| Date _____ By _____ | Date _____ By _____ |
| Date _____ By _____ | Date _____ By _____ |
| Date _____ By _____ | Date _____ By _____ |
| Date _____ By _____ | Date _____ By _____ |
| Date _____ By _____ | Date _____ By _____ |
| Date _____ By _____ | Date _____ By _____ |

## Pneumococcal

| Date _____ By _____ | Date _____ By _____ |
| Date _____ By _____ | Date _____ By _____ |

## TB PPD

| Date _9-7-6_ Result _neg_ | Date _____ Result _____ |
| Date _10-5-06_ Result _____ | Date _____ Result _____ |
| Date _12-7-06_ Result _____ | Date _____ Result _____ |
| Date _____ Result _____ | Date _____ Result _____ |
| Date _____ Result _____ | Date _____ Result _____ |
| Date _____ Result _____ | Date _____ Result _____ |
| Date _____ Result _____ | Date _____ Result _____ |
| Date _____ Result _____ | Date _____ Result _____ |

Tetanus  Date _____ By _____

Tetanus  Date _____ By _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS049

# INTAKE HEALTH EVALUATION

NAME: _Krause, Robert_
AIS #: _DN8034_

R.N. evaluation within 24 hours.

D.O.B.: _10-11-68_

Age _38_   Sex _M_   Race _W_      Height _5'11"_   Weight _170_

Temp: _98.4_ B/P: _120/60_   Pulse: _90_   Resp _20_

** B/P – If greater than 140/90, repeat in 1 hour.  Refer to Mid-Level if B/P remains up.

Do you now or have you _ever_ had, or been treated for:

| Problem | Y | N | Problem | Y | N | Problem | Y | N |
|---|---|---|---|---|---|---|---|---|
| Head Trauma X 2 | ✓ |  | Gastritis |  | ✓ | **HIV/AIDS ***** |  | ✓ |
| Loss of Consciousness | ✓ |  | Ulcers |  | ✓ | ***Medications Verified |  |  |
| Severe Headaches |  | ✓ | Bleeding |  | ✓ | Hepatitis - Type |  | ✓ |
| Vertigo/Dizziness |  | ✓ | Gall Bladder/Pancreas |  | ✓ | Gonorrhea |  | ✓ |
| Vision Problems | ✓ |  | Liver Problems |  | ✓ | Syphilis |  | ✓ |
| Hearing Problems | ✓ |  | Arthritis |  | ✓ | Lice, Crabs, Scabies |  |  |
| Seizures |  | ✓ | Joint Muscle Problem |  | ✓ |  |  |  |
| Strokes |  | ✓ | Back/Neck Problem |  | ✓ | **LMP** |  |  |
| Nervous Disorders |  | ✓ | Kidney Stones/Dz |  | ✓ | Date |  |  |
| DT's |  | ✓ | Bladder/Kidney Infection |  | ✓ | Duration |  |  |
| Heart Condition |  | ✓ | Alcoholism |  | ✓ | Normal |  |  |
| Angina/Heart Attack |  | ✓ | Drug Abuse | ✓ |  | Regularity |  |  |
| High Blood Pressure |  | ✓ | Psychiatric History |  | ✓ | Gravida/Para |  |  |
| Anemia/Blood Disorder |  | ✓ | Suicidal Thoughts** |  | ✓ | AB/Miscarriage |  |  |
| Sickle Cell or Trait |  | ✓ | **Immediate M.H. Referral |  |  | Contraception |  |  |
| Lung Condition |  | ✓ | **T.B.** |  |  | Type: |  |  |
| Asthma * |  | ✓ | PPD - date given: _7-5-6_ |  |  |  |  |  |
| *Peak Flow Reading |  |  | RFA/LFA? |  |  | **Lab Tests - Dates** | N | Ab |
| Bronchitis |  | ✓ | Date read: _7-7-6_ |  |  | Diagnostic Profile II |  |  |
| Emphysema |  | ✓ | Results: _0_ mm |  |  | RPR |  |  |
| Pneumonia |  | ✓ | **Visual Acuity** |  |  | Urine Dip Stick |  |  |
| Diabetes |  | ✓ | OD _20/20_ OS _20/20_ nd |  |  |  |  |  |
| Hay Fever/Allergies |  | ✓ | OU _20/20_ |  |  | EKG  (@ age 35) |  |  |

Immunization History: _____

***HIV Medications: _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Acute or Chronic Problem Noted:    Y    (N)      Refer to Mid-Level or M.D. if  yes.

_O S Weber RN_

**RN or Mid-Level, Signature**

_9-6-06  1200_

**Date/Time**

60511-AL    (rev 9/05)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

I have read the *access to health care* information sheets and have been given a copy.    I understand how to access health care.

Name _Robert Krause_    Date _9-6-06_

AIS# _248039_

Medical Staff _J. Thomas CNA_    Date _9-6-06_

4/13/04

PHS051

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## INTAKE SCREENING

| Date: | 02-05-06 | AIS#: | 248034 |

| Last Name: Krause | First: Robert | Middle: |
| Birthplace: | DOB: 10-11-68 | SS#: |

**FEMALES:** Pregnancy test: (circle one)    Positive    Negative     B/P 134/70  Temp 98  Pulse 102  Resp 20  Weight 164
FSBS 128   If level > 200, repeat within 48 hours. Above 300 call M.D.

Previous Hospitalizations/Surgeries/Major Illness/Current Illness: What? Where?    MH, *testicular hernia

Previous Incarcerations (Date & Facility)    None

| Medications: ☐ None MH | Special Diet (Prescribed) |
| Allergies: ☐ NKA Sulfur | Past Positive TB Skin Test (circle one)   YES - (Complete TB Screening Form)  NO |

ANY INMATE WHO IS UNCONSCIOUS, SEMICONSCIOUS, ACTIVELY BLEEDING, IN ACUTE PAIN AND URGENTLY IN NEED OF MEDICAL ATTENTION SHOULD IMMEDIATELY BE REFERRED FOR EMERGENCY CARE.

## CLINICAL OBSERVATIONS

1) Level of Consciousness: ( ) Alert   (✓) Oriented; time, place, person
( ) Lethargic ( ) Stuporous ( ) Comatose
Describe:

2) General Appearance   (✓) Normal ( ) Abnormal

3) Signs of Trauma   ( ) Yes   (✓) No

4a) Behavior/Conduct: ( ) Calm   ( ) Cooperative   ( ) Non-Violent
( ) Agitated   ( ) Uncooperative   ( ) Violent
( ) Manipulative ( ) Disorganized
Describe:

4c) Perceptions:   ( ) Delusional   ( ) Hallucinations

5a) Is there h/o actual suicide attempt?   (✓) Yes ( ) No

5c) Is there evidence

If ANY of the above in #5 are circled, staff MUST describe here, include previous history and dates: O.D. - 2 yrs. ago

*Any abnormal observations #4 or 5 require immediate Mental Health Referral.

3) Substance Abuse:   ( ) Yes   ( ) No   ( ) Suspected
( ) Current intoxication/Abuse   (✓) Use ( ) Withdrawal Symptoms
(✓) Drugs ( ) Alcohol
Describe- What kind? Amount/Frequency?   Meth - Daily - 7 yrs.
• If confirmed Benzo use, then call M.D. If can not be confirmed, call M.D.
Last Use: (Time/Date):   2 months

4b) Affect/Mood: ( ) Normal ( ) Manic   ( ) Depressed
( ) Euphoria   (✓) Flat   ( ) Emotionally Confused
Describe:

( ) Hearing Voices   N/A

5b) Does pt describe current suicidal thoughts or ideations? ( ) Yes   (✓) No
5d) High risk pt may become assaultive towards staff? ( ) Yes   (✓) No

| Triggers for Suicide Watch | Triggers for Close Watch |
| - Currently Suicidal | - Emotionally distraught and unable to regain composure by end of intake process |
| - History of actual attempt | |
| - Fails to maintain control on Close Watch   Y or N | - Actively hallucinating or not making any sense   Y or N |

6a) Communication Difficulties   ( ) Yes   (✓) No
6c) Hearing Impairment   ( ) Yes   (✓) No

6b) Memory Defects   ( ) Yes   (✓) No
6d) Speech Difficulties   ( ) Yes   (✓) No

7) Physical Aids: (✓) None   ( ) Glasses   ( ) Contacts   ( ) Hearing Aid   ( ) Dentures   ( ) Cane   ( ) Crutches
( ) Walker   ( ) Wheelchair   ( ) Braces   ( ) Artificial Limb   ( ) Other

8) Additional comments, complaints, symptoms:    None ☐

S)

O)    Fever  Y  N    Swollen Glands  Y  N    Signs of Infection  Y  N    Skin Intact  Y  N

A)

P)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

If known Diabetic * Call M.D. for order _____ Initial Insulin given: _____

I have answered all questions truthfully. I have been told and shown how to obtain medical services. I hereby give my consent for

health services to be provided to me by and through PRISON HEALTH SERVICES

| Robert Krause | |
| Inmate's Signature/Date | Health Provider Signature/Date |

60412-AL

PHS052

NAME: _Freed, Robert_
AIS#: _248034_
D.O.B.: _10-11-68_    R/S _4/M_

**HEALTH CLASSIFICATIONS:**
(Circle One)

1 – (No Restrictions)

2 – Temporary Restrictions
   See Special Needs Form
3 – Permanent Restrictions
   See Special Needs Form
4 – A&I (Aged & Infirmed)

5 – Not Determined
   Recheck_____.

**PLACEMENT:**

General Population (✗)
Emergency Department ( )
Isolation ( )
Medical Observation ( )
Other _____

**REFERRAL:**
CCC Placement ( )

Clinic(s) _____
   See MD/Mid-Level flow sheet
   for clinic(s).
Medical ( )
Dental ( )
Mental Health ( )
Other _____
When: ( ) Immediately
   ( ) Next Sick Call

**IMMUNIZATIONS ORDERED:**

_____

| APPRAISAL | | N | Abn/Comment |
|---|---|---|---|
| General Movement | Deformity | ✓ | |
| | Pain, Bleeding | | |
| | Habitus, Hygiene | | |
| Neuro | Mental Status | ✓ | |
| | Intox Withdrawal, Tremor | | |
| | Neuro-Deficits | | |
| Skin | Injury, Bruises, Trauma | | 6 tatoos |
| | Jaundice Diaphoretic | | scar Lt leg |
| | Rash, Lesions, Infestations | | |
| | Needle Marks | | |
| | Color, Turgor | | |
| Head | Normocaphalic | ✓ | |
| | Atraumatic | | |
| | Hair, Scalp | | |
| Eyes | Glasses/Vision | ✓ | Blind in Lt eye |
| | Pupils | | |
| | Sclera, Conjunctiva | | |
| Ears | Appearance | | Loss 8 Both EARS |
| | Canals, TMs, Hearing | | |
| Nose | Epistaxis | ✓ | |
| | Sinuses | | |
| Throat | Teeth, Gums, Dentures | ✓ | Detures |
| | Mouth, Tongue, Tonsils | | |
| | Airway | | |
| Neck | C-Spine, Mobility | ✓ | |
| | Veins, Carotids | | |
| | Thyroid, Lymph Nodes | | |
| Chest | Config. Ausc/Resp | ✓ | Lungs clear |
| | Cough/Sputum | | |
| | Breast/Masses | | |
| Heart | Ausc Rate, Rhythm | | Reg Rythem |
| | Murmurs, Ectopy | | |
| Abdomen Bowel Sounds | Palp, G/R/T, Hernia | | ⊕ Hernia |
| GU | Flank Tenderness | ✓ | |
| | Bladder Tenderness/Distention | | |
| Back | ROM, Spasm, Injury | ✓ | |
| Extremities | Edema, Pulse | ✓ | |
| Genitals | Injuries/Lesions | | Groin Hernia |
| Pelvic Pap | | | |
| Rectal/Guiac | (required @ 45 and up) Deferred/follow-up: | | |

Easily Reducible / non- strangulated

**Medications Ordered:** _____

1) ® inguinal hernia descended
   into ® Scrotrm
   - athletic support
   - motrin
   - profiles
   - FU 3 mos /PRN

_[signature]_    9/6/06

M.D. or Mid-Level Signature    Date/Time

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS053

# ALABAMA DEPARTMENT OF CORRECTIONS

# PROBLEM LIST

INMATE NAME ___Krause Robert___ AIS# _2 48 03 9_

Medication Allergies: ___No Allergies - Sulfur___

Medical: Chronic (Long-Term) Problems
      Roman Numerals for Medical/Surgical

Mental Health Code: SMI  HARM  HIST  NONE
      Capital Letter for Psychiatric Behavior

| Date Identified | Chronic Medical Problem | Mental Health Code | Date Resolved | Provider Initials |
|---|---|---|---|---|
| 9/7/06 | ℞ inguinal hernia descended into ℞ scrotum | | | — |
| 9/7/6 | PPd form | | | SB Dew |
| 9/21/06 | Mood D/O NOS ? Intermittent Expl. D/O (in remission) Hx of Polysubstance Dependence | MH = 1 | | SB, MD |
| 6/29/07 | Δ MH Code to ∅ | | | RK us |
| | | | | |
| | | | | |
| | | | | |
| | CONFIDENTIAL RECORD NOT TO BE PHOTOCOPIED | | | |
| | | | | |

**If Asthmatic label:  Mild – Moderate – or Severe.**

PHS054



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _Robert Krause_     Date of Request: _10-23-06_

ID # _248039_     Date of Birth: _10|11|68_    Location: _7-B-19_

Nature of problem or request: _I have A Bad Toothace_

_Need It Pulled_

_Robert Krause_
*Signature*

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/___

Time: _____ AM  PM

Allergies: _____

```
RECEIVED
Date: 10-25-06
Time: 8:30
Receiving Nurse Intials DS
```

**(S)ubjective:**

**(O)bjective**    (V/S):  T: _____    P: _____    WT: _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**(A)ssessment:**

**(P)lan:**

Refer to:    MD/PA   Mental Health   Dental   Daily Treatment        Return to Clinic PRN
CIRCLE ONE

Check One:   ROUTINE ( )    EMERGENCY ( )

    If Emergency was PHS supervisor notified:    Yes ( )    No ( )

    Was MD/PA on call notified:    Yes ( )    No ( )

_____
*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS055



**DEPARTMENT OF CORRECTIONS**

**MENTAL HEALTH SERVICES**

# DENTAL RECORD

| DENTAL EXAMINATION | RESTORATIONS AND TREATMENTS |
|---|---|

Date of Initial Examination: 9/6/06

Initial Classification:

Oral Pathology .................... Gingivitis
**F/**                              Vincent's Infection
                                    Stomatitis
                                    Other Findings

Occlusion _____

Roentgenograms .................... Periapical
                                    Bitewing
                                    Other

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## Health Questionnaire

| YES | NO |  | YES | NO |  |
|---|---|---|---|---|---|
| ☐ | ☑ | Rheumatic Fever | ☐ | ☑ | V.D. |
| ☐ | ☑ | Allergy (Novocaine, penicillin, etc.) | ☐ | ☑ | Hepatitis |
| ☑ | ☐ | Present Medication | ☐ | ☑ | Anemia or Bleeding Problems |
| ☐ | ☑ | Epilepsy | ☐ | ☑ | Heart Disease |
| ☐ | ☑ | Asthma | ☐ | ☑ | High Blood Pressure |
| ☐ | ☑ | Diabetes | ☐ | ☑ | Kidney Disease |
| ☐ | ☑ | HIV | ☐ | ☑ | Other Disease |

| SERVICES RENDERED | | | | | | |
|---|---|---|---|---|---|---|
| Date | Tooth # | DX | TX | | Initials | Class |
| 9/6/06 | FM | | OHI | | are | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Krause, Robert | 248034 | 10/11/68 | W | KCF |

PHS-MD-70015



PRISON
HEALTH
SERVICES
INCORPORATED

## PATIENT CONSENT AND AUTHORIZATION
## FOR ORAL SURGERY OR EXTRACTION

Patient Name _Krause, Robert_____    AIS# _248039_____

1. I understand that there are risks, and possible complications of oral surgery including swelling, bleeding, pain, loss of tooth parts or fillings, bone fragments, sinus involvement, infection, jaw fracture, temporary or permanent numbness or tingling of the lips, tongue, skin, gums, cheek or teeth. Some complications may require further treatment and or surgery.

2. I consent to the use of local anesthetics or other medications and that there are possible side effects, including allergic reactions and these have been explained to me.

3. I have had the opportunity to ask questions which have been answered to my satisfaction.

4. I understand there is no guarantee of success or permanence of the treatment.

5. I authorize the disposal of any tissues, which, in the course of treatment, may be removed.

## SPECIFIC TREATMENT

| Tooth Number | Procedure | Date |
|---|---|---|
| | | |
| | | |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

_Robert Krause_____    _11/1/06_____
Patient's Signature                         Date

_R. Thom...  DMD_____    _11/1/06_____
Dentist's Signature                         Date

60530-AL



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

### DEPARTMENT OF CORRECTIONS

## DENTAL RECORD TREATMENT

Services Rendered

| Date | Tooth # | Diagnosis | Treatment | Initials | Class |
|------|---------|-----------|-----------|----------|-------|
| 11/1/06 | (17) | N R C | 4 o cc of 2% lido. Ext. routinely. Inst. given. Pres. 2 tablets of procaine qid x 4 days. | KDS | |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| PATIENT LAST NAME | FIRST | MIDDLE | DOB | R/S | ID NO. |
|-------------------|-------|--------|-----|-----|--------|
| Krause | Robert | | 10/11/68 | w/m | 248 039 |

PHS-MD-70022

PHS058

FI-54A

ALABAMA DEPARTMENT OF CORRECTIONS

RADIOLOGY SERVICES REQUEST AND REPORT

INSTITUTION: Ventress

Name: *Krause Robert*

State ID No: *248039*

DOB *10-11-68*

Race: *W*    Sex: *M*

NOTE: PERTINENT CLINICAL INFORMATION AND TENTATIVE DIAGNOSIS MUST BE PROVIDED FOR X-RAY EXAMINATION TO BE PERFORMED

| Requesting Physician/PA/NP | Date of request | Time of request | Routine | Priority | Transportation or special needs |
|---|---|---|---|---|---|
| *Dr Peasant* | *6-21-07* | *8-30* | | | |

HISTORY/DIAGNOSIS: *Pre Op Study / Hernia Repair*

*Chest X-Ray*

|  X-RAY REQUEST | | | |
|---|---|---|---|
| ABDOMEN/KUB | FINGERS | CLAVICULAR VIEW | SOFT TISSUE STUDIES |
| ACROMIO-CLAVICULAR JOINTS (W/WO WEIGHT) | FOOT | ORBITS | STERNUM |
| ANKLE | HAND | OS CALCIS (HEEL) | TEMPORO-MANDIBULAR JOINTS |
| CERVICAL Spine | HIP | PELVIS | THORACIC SPINE |
| ✓ CHEST PA / LATERAL | HUMERUS | RADIUS/ULNA | TIBIA/FIBULA |
| COCCYX | KNEE | RIBS | TOES |
| CONE DOWN SELLA TURCICA | LUMBAR SPINE | SACRO-ILIAC JOINTS | WRIST |
| ELBOW | MANDIBLE | SCAPULA | ZYGOMA |
| FACIAL BONES | MAXILLA | SHOULDER | ZYGOMATIC ARCH |
| FEMUR | NASAL BONES | SKULL | |

Krause

REPORT

PA CHEST: The heart is not enlarged. The lungs are clear.
IMPRESSION: THERE IS NO EVIDENCE OF ACTIVE CARDIOPULMONARY DISEASE.

D & T: 06-25-07 Thomas J. Payne, III, M.D./rr Board Certified Radiologist (Signature on file)

6/24/07

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

X-RAY TECHNOLOGIST'S NAME (PRINT)

RADIOLOGIST'S NAME (PRINT)

X-RAY TECHNOLOGIST'S SIGNATURE    *6-22-07*    DATE, TIME EXAM PERFORMED

RADIOLOGIST'S SIGNATURE    DATE SIGNED

# BR BioReference LABORATORIES

| DOCTOR | |
|---|---|
| VENTRESS CORRECTIONAL FAC.<br>379 HWY 239<br>CLYTON AL, AL  36016<br><br>(A0115-9)  Bio-Net Print | BOOK/CASE:<br><br>-FINAL-  Original Report 06/27/2007 |

| NAME<br>KRAUSE, ROBERT | PATIENT I.D. / ROOM NO.<br>248039.1451 | DOCTOR / GROUP NAME<br>PEASANT, JOHN | |
|---|---|---|---|
| LAB I.D. NO.<br>104933025 | DATE COLLECTED<br>06/21/2007 09:47 AM | DATE RECEIVED<br>06/26/2007 09:39 | DATE OF REPORT<br>6/27/2007 07:17 |

AGE: 38 Y  SEX: M

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

Tests Ordered : ELECTROLYTES, CBC W/DIFF & PLTS, MONO SCREEN,
                PROTHROMBIN TIME (PT) , ,
-----------------------------* CHEMISTRY *-----------------------------

| | | | |
|---|---|---|---|
| Sodium | 143 | 133-145 | mmol/L |
| Potassium | 4.2 | 3.3-5.3 | mmol/L |
| Chloride | 106 | 96-108 | mmol/L |
| CO2 | 24 | 21-29 | mmol/L |

-----------------------------* MISCELLANEOUS *-----------------------------

| | | |
|---|---|---|
| MONO SCREEN | Negative | NEGATIVE |
| "PROBLEM" REQUEST | SEE NOTE#3 | SEE NOTE#3 |

*********************************************************************
**NOTE#3:  Dear Client: During the processing of your request,
a question arose requiring further instructions. Our Technical Services
Department will contact you for additional information. The results
of any additional testing will follow under a separate lab ID no.
If you have any questions you can call the lab and dial ext.8296

*********************************************************************
NOTE: The specimen submitted for CBC and/or ESR was TOO OLD for
accurate testing.  Please resubmit lavender-top tube for repeat
hematology testing as needed.

*********************************************************************
NOTE: Unable to perform coagulation tests (PT, APTT or Fibrinogen)
      due to age of specimen. Please resubmit.

*********************************************************************
Specimen submitted is LIPEMIC. This may cause inaccurate results.
Please resubmit a fasting specimen at your earliest convenience.

                        Final Report                    Page: 1

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

James Weisberger, M.D.
LABORATORY DIRECTOR

481 EDWARD H. ROSS DR.
ELMWOOD PARK, NJ 07407
1-800-229-LABS

PHS060

**B/R** BioReference
LABORATORIES

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| D O C T O R | VENTRESS CORRECTIONAL FAC.<br>379 HWY 239<br>CLYTON AL, AL  36016 | BOOK/CASE: |
|---|---|---|
| | (A0115-9)  Bio-Net Print | -FINAL-  Original Report 06/26/2007 |

| NAME<br>KRAUSE, ROBERT | PATIENT I.D. / ROOM NO.<br>248039 | DOCTOR / GROUP NAME<br>DR. PEASANT | | |
|---|---|---|---|---|
| LAB I.D. NO.<br>104933383 | DATE COLLECTED<br>06/25/2007 | DATE RECEIVED<br>06/26/2007 15:30 | DATE OF REPORT<br>6/26/2007 04:11 | AGE | SEX<br>M |

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

Tests Ordered : CBC W/DIFF.,PLATELET CT., PROTIME, INITIAL, ,

Comment :
        REF4933025
-----------------------------* HEMATOLOGY *----------------------------

| | | | | |
|---|---|---|---|---|
| WBC | 5.8 | | 3.4-11.8 | x10(3) |
| RBC | 4.5 | | 3.7-5.5 | x10(6) |
| HGB | 14.2 | | 11.0-16.3 | gm/dl |
| HCT | 44.5 | | 39.3-52.5 | % |
| MCV | 98.5 | | 80-100 | FL |
| MCH | 31.4 | | 25-34.1 | pg |
| MCHC | 31.9 | | 30.0-35.0 | gm/dl |
| RDW | 14.5 | | 10.9-16.9 | % |
| POLYS | 44 | | 36-78 | % |
| POLYS  - COUNT,ABS | 2552 | | 1224-9204 | |
| LYMPHS | 44 | | 12-48 | % |
| LYMPHS - COUNT,ABS | 2552 | | 408-5664 | % |
| EOS | 3 | | 0-8 | % |
| EOS    - COUNT,ABS | 174 | | 34-944 | % |
| BASOS | 1 | | 0-2 | % |
| BASOS  - COUNT,ABS | 58 | | 0-236 | % |
| MONOS | 8 | | 0-13 | % |
| MONOS  - COUNT,ABS | 464 | | 170-1416 | |
| Platelet Count | 215 | | 144-400 | x10(3) |
| PROTIME | 11.4 | | 10.1-13.6sec | |
| INTR.NORM.RATIO(INR) | 1.00 LO | | 2.00-3.00 | |

***************************************************************************
CLINICAL INDICATIONS FOR INR USE           REFERENCE RANGE
Prophylaxis or treatment of venous thrombosis,     2.0 - 3.0
systemic embolization, or              (therapeutic range)
treatment of pulmonary embolus.
High-risk patients with mechanical heart valves.   2.5 - 3.5
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
NOTE: INR values below 2.0 in patients on warfarin therapy would
be considered sub-therapeutic for the above conditions. Normal
subjects NOT treated with warfarin will have INR values in the
range of:   0.87 - 1.19


****************************************************************************
Results delayed due to unspecified request.

                            Final Report                    Page: 1

*James Weisberger, M.D.*
LABORATORY DIRECTOR

481 EDWARD H. ROSS DR.
ELMWOOD PARK, NJ 07407
1-800-229-LAB
4255 Rev 1/

PHS061

**BioReference**
LABORATORIES

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| D O C T O R | VENTRESS CORRECTIONAL FAC.<br>379 HWY 239<br>CLYTON AL, AL 36016<br><br>(A0115-9)  Bio-Net Print | BOOK/CASE<br><br>-PRELIMINARY- |
|---|---|---|

| NAME<br>KRAUSE, ROBERT | PATIENT I.D. / ROOM NO.<br>248039.1451 | DOCTOR / GROUP NAME<br>PEASANT, JOHN | |
|---|---|---|---|

| LAB I.D. NO.<br>104933025 | DATE COLLECTED<br>06/21/2007 09:47 AM | DATE RECEIVED<br>06/26/2007 09:39 6 | DATE OF REPORT<br>26/2007 12:44 | AGE<br>38 Y | SEX<br>M |
|---|---|---|---|---|---|

| Test Description | Result | Abnormal | Reference Range |
|---|---|---|---|

Tests Ordered : ELECTROLYTES, CBC W/DIFF & PLTS, MONO SCREEN,
                PROTHROMBIN TIME (PT), ,
----------------------------* CHEMISTRY *----------------------------

| | | | |
|---|---|---|---|
| Sodium | 143 | 133-145 | mmol/L |
| Potassium | 4.2 | 3.3-5.3 | mmol/L |
| Chloride | 106 | 96-108 | mmol/L |
| CO2 | 24 | 21-29 | mmol/L |

----------------------------* MISCELLANEOUS *----------------------------

| | | |
|---|---|---|
| MONO SCREEN | TO FOLLOW | NEGATIVE |
| "PROBLEM" REQUEST | SEE NOTE#3 | SEE NOTE#3 |

**************************************************************************
**NOTE#3:  Dear Client: During the processing of your request,
a question arose requiring further instructions. Our Technical Services
Department will contact you for additional information. The r_____

Tests Ordered : HEPATIC PROFILE, ,
----------------------------* CHEMISTRY *----------------------------

| | | | |
|---|---|---|---|
| Total Protein | 8.0 | 5.9-8.4 | gm/dl |
| Albumin | 4.3 | 3.2-5.2 | gm/dl |
| Globulin | 3.7 | 1.7-3.7 | gm/dL |
| A/G Ratio | 1.2 | 1.1-2.9 | |
| Bilirubin, Total | 0.4 | 0.1-1.0 | mg/dl |
| BILIRUBIN, DIRECT | 0.1 | 0.0-0.3 | MG/DL |
| Alk Phos | 87 | 39-120 | u/l |
| AST (SGOT) | 32 | < 37 | u/l |
| ALT (SGPT) | 35 | < 40 | u/L |

                          Final Report                          Page: 1



_Mulig_
**James Weisberger, M.D.**
LABORATORY DIRECTOR

481 EDWARD H. ROSS DR.
ELMWOOD PARK, NJ 0740
1-800-229-LAF
4255 Rev 1



**LabCorp**
Laboratory Corporation of America

LabCorp Birmingham
1801 First Avenue South, Birmingham, AL 35233-0000

Phone: 205-581-3500

| SPECIMEN 250-205-5465-0 | TYPE S | PRIMARY LAB MB | REPORT STATUS COMPLETE | Page #: 1 |
|---|---|---|---|---|

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| ADDITIONAL INFORMATION | | |
|---|---|---|
| PE | 9/6 | FASTING: N DOB: 10/11/1968 |

CLINICAL INFORMATION
CD- 41139336752

| PHYSICIAN ID. ROBBINS M | PATIENT ID. 248034 |
|---|---|

| PATIENT NAME KRAUSE,ROBERT | SEX M | AGE(YR./MOS.) 37 / 10 |
|---|---|---|

ACCOUNT: Kilby Correctional Facility
Prison Health Services
PO BOX 11
Mt. Meigs          AL  36057-0000
ACCOUNT NUMBER:   01306900

PT. ADD.:

| DATE OF COLLECTION TIME | DATE RECEIVED | DATE REPORTED | TIME | |
|---|---|---|---|---|
| 9/07/2006   7:12 | 9/07/2006 | 9/08/2006   7:20 | 6966 | |

| TEST | RESULT | LIMITS | LAB |
|---|---|---|---|

CMP14+LP+5AC

Chemistries                                                          MB

> Glucose, Serum            106 H   mg/dL      65  -  99      MB
  Uric Acid, Serum            5.0   mg/dL      2.4 -  8.2     MB
  BUN                          12   mg/dL      5   -  26      MB
  Creatinine, Serum           1.0   mg/dL      0.5 -  1.5     MB
  BUN/Creatinine Ratio         12              8   -  27
  Sodium, Serum               140   mmol/L     135 -  148     MB
  Potassium, Serum            4.4   mmol/L     3.5 -  5.5     MB
  Chloride, Serum             101   mmol/L     96  -  109     MB
  Carbon Dioxide, Total        22   mmol/L     20  -  32      MB
  Calcium, Serum              9.9   mg/dL      8.5 -  10.6    MB
  Phosphorus, Serum           4.0   mg/dL      2.5 -  4.5     MB
  Protein, Total, Serum       7.3   g/dL       6.0 -  8.5     MB
  Albumin, Serum              4.6   g/dL       3.5 -  5.5     MB
  Globulin, Total             2.7   g/dL       1.5 -  4.5
  A/G Ratio                   1.7              1.1 -  2.5
  Bilirubin, Total            0.8   mg/dL      0.1 -  1.2     MB
  Alkaline Phosphatase, S      99   IU/L       25  -  150     MB
  LDH                         209   IU/L       100 -  250     MB
  AST (SGOT)                   16   IU/L       0   -  40      MB
  ALT (SGPT)                   14   IU/L       0   -  55      MB
  GGT                          19   IU/L       0   -  65      MB
  Iron, Serum                 122   ug/dL      40  -  155     MB
                                                             MB
Lipids                                                       MB
  Cholesterol, Total          189   mg/dL      100 -  199     MB
> Triglycerides             174 H   mg/dL      0   -  149     MB
  HDL Cholesterol              51   mg/dL      40  -  59      MB
  VLDL Cholesterol Cal         35   mg/dL      5   -  40      MB
> LDL Cholesterol Calc      103 H   mg/dL      0   -  99      MB
Comment                                                      MB
  If initial LDL-cholesterol result is >100 mg/dL, assess for
  risk factors.
  T. Chol/HDL Ratio           3.7   ratio units   0.0 -  5.0
  Estimated CHD Risk          0.6   times avg.    0.0 -  1.0
                                    T. Chol/HDL Ratio
                                          Men    Women
                              1/2 Avg.Risk 3.4    3.3
                                  Avg.Risk 5.0    4.4

| Pat Name:  KRAUSE,ROBERT | Pat ID: 248034 | Spec #: 250-205-5465-0 | Seq #: 6966 |
|---|---|---|---|

Results are Flagged in Accordance with Age Dependent Reference Ranges
Continued on Next Page



PHS063



**LabCorp** Laboratory Corporation of America

LabCorp Birmingham
1801 First Avenue South, Birmingham, AL 35233-0000          Phone: 205-581-3500

| SPECIMEN 250-205-5465-0 | TYPE S | PRIMARY LAB MB | REPORT STATUS COMPLETE | Page #: 2 |
|---|---|---|---|---|

| ADDITIONAL INFORMATION |
|---|

PE
    9/6          FASTING: N
                DOB: 10/11/1968

| PATIENT NAME | SEX | AGE(YR./MOS.) |
|---|---|---|
| KRAUSE,ROBERT | M | 37 / 10 |

PT. ADD.:

| DATE OF COLLECTION | TIME | DATE RECEIVED | DATE REPORTED | TIME | |
|---|---|---|---|---|---|
| 9/07/2006 | 7:12 | 9/07/2006 | 9/08/2006 | 7:20 | 6966 |

| CLINICAL INFORMATION |
|---|
| CD- 41139336752 |

| PHYSICIAN ID. ROBBINS M | PATIENT ID. 248034 |
|---|---|

ACCOUNT:  Kilby Correctional Facility
             Prison Health Services
             PO BOX 11
             Mt. Meigs          AL   36057-0000
ACCOUNT NUMBER:   01306900

| TEST | RESULT | LIMITS | LAB |
|---|---|---|---|
| | | 2X Avg.Risk  9.6     7.1 | |
| | | 3X Avg.Risk 23.4    11.0 | |

                                                   .

The CHD Risk is based on the T. Chol/HDL ratio.  Other
factors affect CHD Risk such as hypertension, smoking,
diabetes, severe obesity, and family history of pre-
mature CHD.

| LAB: MB LabCorp Birmingham          DIRECTOR: John Elgin N MD |
|---|
| 1801 First Avenue South, Birmingham,  AL 35233-0000 |



| Pat Name:  KRAUSE,ROBERT | Pat ID: 248034 | Spec #:  250-205-5465-0 | Seq #: 6966 |
|---|---|---|---|

Results are Flagged in Accordance with Age Dependent Reference Ranges
Last Page of Report



PHS064

| ACCESSION NO. | NAME | FACILITY |
|---|---|---|
| NPY27/248034 | ROBERT KRAUSE | Kilby |

| DATE COLLECTED | TIME COLLECTED | | DATE RECEIVED | TIME RECEIVED |
|---|---|---|---|---|
| 9/6/06 | 8:30 AM | | 9/6/06 | 8:30 AM |

| Test Name | Result | Out of Range | Reference Range |
|---|---|---|---|
| HIV ANTIBODY | NEG | | NEGATIVE (NEG) |
| RPR | NR | | NON-REACTIVE (NR) |
| URINALYSIS | | | |
| PROTEIN | NEG | | NEGATIVE (NEG) |
| GLUCOSE | NEG | | NEGATIVE (NEG) |
| KETONES | NEG | | NEGATIVE (NEG) |
| BILIRUBIN | NEG | | NEGATIVE (NEG) |
| BLOOD | NEG | | < 5 RBC/MCL (NEG) |
| NITRITE | NEG | | NEGATIVE (NEG) |
| UROBILINOGEN | NEG | | < 1.0 MG/DL (NEG) |
| LEUK. ESTERASE | NEG | | NEGATIVE (NEG) |

* NT = Not Tested

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

CLIA ID NO.  01D0706289

WAYNE  D. MERCER, PHD
LABORATORY DIRECTOR



**LabCorp**
Laboratory Corporation of America

LabCorp Birmingham
1801 First Avenue South, Birmingham, AL 35233-0000

Phone: 205-581-3500

| SPECIMEN 249-205-5129-0 | TYPE S | PRIMARY LAB MB | REPORT STATUS COMPLETE | Page #: 1 |
|---|---|---|---|---|

| ADDITIONAL INFORMATION |
|---|

NPY27                    FASTING: N
                         DOB: 10/11/1968

| CLINICAL INFORMATION |
|---|
| CD- 41139336642 |

| PHYSICIAN ID. ROBBINS M | PATIENT ID. 248034 |
|---|---|

| PATIENT NAME | SEX | AGE(YR./MOS.) |
|---|---|---|
| KRAUSE,ROBERT | M | 37 / 10 |

PT. ADD.:

ACCOUNT: Kilby Correctional Facility
         Prison Health Services
         PO BOX 11
         Mt. Meigs        AL  36057-0000
ACCOUNT NUMBER:  01306900

| DATE OF COLLECTION | TIME | DATE RECEIVED | DATE REPORTED | TIME | |
|---|---|---|---|---|---|
| 9/06/2006 | 6:00 | 9/06/2006 | 9/07/2006 | 7:19 | 6884 |

| TEST | RESULT | | LIMITS | LAB |
|---|---|---|---|---|
| CBC With Differential/Platelet | | | | |
| WBC | 8.1 | x10E3/uL | 4.0 - 10.5 | MB |
| RBC | 4.22 | x10E6/uL | 4.10 - 5.60 | MB |
| Hemoglobin | 13.4 | g/dL | 12.5 - 17.0 | MB |
| Hematocrit | 39.0 | % | 36.0 - 50.0 | MB |
| MCV | 92 | fL | 80 - 98 | MB |
| MCH | 31.8 | pg | 27.0 - 34.0 | MB |
| MCHC | 34.4 | g/dL | 32.0 - 36.0 | MB |
| RDW | 14.0 | % | 11.7 - 15.0 | MB |
| Platelets | 319 | x10E3/uL | 140 - 415 | MB |
| Neutrophils | 58 | % | 40 - 74 | MB |
| Lymphs | 32 | % | 14 - 46 | MB |
| Monocytes | 7 | % | 4 - 13 | MB |
| Eos | 2 | % | 0 - 7 | MB |
| Basos | 1 | % | 0 - 3 | MB |
| Neutrophils (Absolute) | 4.7 | x10E3/uL | 1.8 - 7.8 | MB |
| Lymphs (Absolute) | 2.6 | x10E3/uL | 0.7 - 4.5 | MB |
| Monocytes(Absolute) | 0.6 | x10E3/uL | 0.1 - 1.0 | MB |
| Eos (Absolute) | 0.2 | x10E3/uL | 0.0 - 0.4 | MB |
| Baso (Absolute) | 0.1 | x10E3/uL | 0.0 - 0.2 | MB |

LAB: MB LabCorp Birmingham                    DIRECTOR: John Elgin N MD
1801 First Avenue South, Birmingham,  AL 35233-0000

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Pat Name: KRAUSE,ROBERT | Pat ID: 248034 | Spec #: 249-205-5129-0 | Seq #: 6884 |
|---|---|---|---|

Results are Flagged in Accordance with Age Dependent Reference Ranges
Last Page of Report



PHS066



<< Back    Print

# STATE OF ALABAMA
# INMATE HEALTHCARE AUTHORIZATION

Enrollment
Telephone (334) 833-5948
Toll Free (866) 853-1384
Fax (334) 240-1488

Blue Cross Blue Shield of Alabama                    Prison Health Services
(877) 231-7239                                       Telephone (334) 395-5973
                                                     Toll Free (877) 279-1335
                                                     Fax (334) 395-8156

6/28/2007

| | | | |
|---|---|---|---|
| Inmate Name | **KRAUSE , ROBERT D** | Inmate # | **00248039** |
| Facility Name | **VENTRESS CORRECTIONAL FACILITY** | | |
| Facility Address1 | **POB 767** | | |
| Facility Address2 | | | |
| City | **CLAYTON** | | |
| State | **AL** | | |
| Zipcode | **36016** | | |

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
\* Attention Health Care Provider \*   **NOT TO BE PHOTO COPIED**

### For Hospital/Facility Claims:

All facility claims for inpatient and outpatient services should be submitted directly to Blue Cross and Blue Shield of Alabama. Please submit your facility charges to Blue Cross under group **57688** with contract number **XAJ624689921** as you currently do for all other Blue Cross subscribers. This process applies to facility charges only and does not include physician services.

### Utilization Management Review:

All concurrent in-patient reviews must be provided to PHS Regional Office in Montgomery. The contact person is Michelle Pope, Utilization Management Coordinator. (334) 395-5973  Ext 14

### For charges not covered under SEIB - BC/BS Program:

For Payment, Please Submit Claims with Inmate number to:
Prison Health Services
Attn: Claims Department
105 West Park Drive # 200
Brentwood, TN 37027

- Medicare/Medicaid does not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number).
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.

- Payment will not be processed until a clinical summary is received.

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Patient Name: | *Krause Robert* | Inmate Number: | *248039* |
|---|---|---|---|
| Service Authorized: | *Hernia Repair* | | |
| Responsible Facility: | *Ventress* | Contact Name: | *Nettie Burns* |
| Authorization Number: | *121853114* | Telephone Number: | *(334)775-3610* |

Note to Provider of Services:

- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPPA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPPA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPPA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.  *for Dr Gary*

*6/28/07*

For Payment Please Submit Claims To:

Prison Health Services
P.O. Box 967
Brentwood, TN 37024-0967

**The consulting physician should complete this section.**
**The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility.**

| Clinical Summary or Attached Report |
|---|
| |
| |
| |
| |
| |
| |
| |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

*** For security and safety, please do not inform patient of possible follow-up appointments. ***

| Signature of Consulting Physician: | | Date | | Time |
|---|---|---|---|---|
| Reviewed and Signed By Medical Director: | | Date | | Time |

PHS069

☐ Dr. Wesley H. Barry, Jr.
☐ Dr. Antonio J. Williams, Sr.
☐ Dr. Brian R. Whyte
☑ Dr. Brian C. Gary

**Advanced Surgical Associates** P.C.
*Proven surgical results from doctors who care*

2101 Chestnut Street
Montgomery, AL 36106
Phone 265-9225
Fax 265-9257

## SURGERY SCHEDULING SHEET

_Robert Krause_ is scheduled for _6/28/07_

at _____ AM/PM. These services will be provided at:
☐Jackson Hospital   ☐Baptist Medical Center-South
☐Baptist Medical Center-East   ☐Montgomery Surgery Center
Please arrive at the Outpatient Department on _____ at
_____ AM/PM for pre-operative lab work, registration and discussion
with the Anesthesiologist. This is an important part of your surgery. If you are
unable to keep this appointment, contact our office immediately at 265-9225.

**PLEASE OBTAIN OPERATIVE PERMIT FOR:**

_Rt Inguinal Hernia repair_

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

**DIAGNOSIS:** _Rt. inguinal hernia repair_

**PRE-OP STUDIES:** ☑CBC; ☑PT; ☐PTT ; ☐UA; ☐Pregnancy Test; ☑Lytes; ☐Liver
Enzymes, ☑EKG; ☑Chest X-ray; ☐Amylase and Alkaline Phosphate. [ANESTHESIA
PRE-OP, TYPE & SCREEN]

**PRE-OP MEDICATIONS:** ☐1 gram Ancef prior to surgery if not allergic

**PRE-OP ORDERS:** Thigh Ted Hose to all laparoscopic patients. Clear liquids 1
day / 2 days prior to surgery with laxative to be taken at 8:00 AM each morning.

## DO NOT EAT OR DRINK ANYTHING AFTER 12:00 MIDNIGHT THE NIGHT BEFORE YOUR SURGERY.

**ARRIVE AT THE HOSPITAL NO LATER THAN _____ AM/PM THE DAY OF YOUR
SURGERY.** [This is very important. If you are not on time, this may be cause for
cancellation of surgery]

_____     _6/20/07_
**PHYSICIAN SIGNATURE**                **DATE**

**POST OPERATIVE APPOINTMENT:** _____
[This must be called to the office if given by MD or PA]

# Inmate/Authorization Selection

**You have Open Events!**

**Event Report:**
Site:
0845 - Ventress Correctional Facility ▼

Start Date: _____ End Date: _____

Run Events Summary Report

## Step 1: Select Inmate

| Last Name | First Name | Contract | Number | Date of Birth | Auth | ☑ Soundex |
|-----------|-----------|----------|--------|---------------|------|-----------|
| Krause | Robert | Alabama DOC ▼ | 248039 | | | Search |

| Number | Last Name | First Name | AKA Last Name | AKA First Name | Cont Code | Contract | Date of Birth |
|--------|-----------|-----------|---------------|----------------|-----------|----------|---------------|
| 248039KR | Krause | Robert | | | ALADOC | Alabama DOC | 10/11/1968 |

Found 1 record

No Inmate Found - Add Inmate, Authorization and Event

## Step 2: Select Authorization if Event Pre-Authorized

☐ Show All Auths

| Auth # | Place of Service | Start Date | End Date | Status | Site Code | Site Name | Med Class | Resp | Auth | Rec |
|--------|-----------------|-----------|----------|--------|-----------|-----------|-----------|------|------|-----|
| 17185314 | Advanced Surgical Associates | 5/8/2007 | 6/7/2007 | A | 0845 | Ventress Correctional Facility | OS | PHS | 1 | 0 |

Found 1 record

No Pre-Authorization Found - Add Authorization and Event

Refresh

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

**PHS**

must be Complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the time of the Appointment

### DEMOGRAPHICS

| | | |
|---|---|---|
| Site Name & Number: VENTRESS 0845 | Patient Name: (Last, First,) Krause, Robert | Date: (mm/dd/yy) 05.07.09 |
| Site Phone # 334-775-8178 3610 | Alias: (Last, First,) | Date of Birth: (mm/dd/yy) 10.11.68 |
| Site Fax # 334-775-8178 3610 | Inmate # 248039 | PHS Custody Date: (mm/dd/yy) 02.27.06 |
| Will there be a charge? ☑ Yes ☐ No   Sex ☑ Male ☐ Female | SS Number: ___ - __ - ____ | Potential Release Date: (mm/dd/yy) 04.18.09 |

Responsible party: ☑ PHS   ☐ Auto Ins.   ☐ Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans )   ☐ Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services):_____

### CLINICAL DATA

Requesting Provider: ☑ Physician ☐ NP, PA ☐ Dental
Dr. B. Whyte

Facility Medical Director Signature and Date: 5/7/09
J. M. Peasant, s2MD

☐ Service meets criteria for "approval to protocol"

Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.

☑ Office Visit (OV)   ☐ X-ray (XR)   ☐ Scheduled Admission (SA)
☐ Outpatient Surgery (OS)   ☐ Dialysis (DA)
☑ Routine   ☐ Urgent

Estimated Date of Service (mm/dd/yy)  __/__/__
(This starts the approval window for the "open authorization period")

Multiple Visits/Treatments: ☐ Radiation therapy ☐ Chemotherapy
Number of Visits/Treatments: 1 ☐ Other:____

Specialist referred to: Dr. B Whyte, Surgeon

Type of Consultation, Treatment, Procedure or Surgery:
Repair of ℞ IH ō mesh

Diagnosis: ℞ IH
ICD-9 code:

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

History of Illness/injury/sypmtoms with Date of Onset:
38 y/o WɔM → ō RIH
x 2 yo - ō pain inspite of
Truss

Results of a complaint directed physical examination:
Testicle NL
- Large hernie extending
into scrotal sac.
- Reduces easily, but return
immediately in spite of
TRUSS

Previous treatment and response (including medications):
Pain meds, profiles - difform
BOP. Hernia Truss x 4-6 months
Dr. B. Whyte recommend
surgery

***For security and safety, please do not inform patient of possible follow-up appointments***

### UM DETERMINATION:
☐ Alternative Treatment Plan (explain here):___
☐ More Information Requested: (See Attached)
☐ Resubmitted with requested information.

☐ Offsite Service Recommended and Authorized

Date resubmitted: __/__/__

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Regional Medical Director Signature, printed name and date required: __/__/__ (mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: | Med Class: | CPT code: | UR Auth #: |
|---|---|---|---|

05a - UM Referral review form 1

| Patient Name: | *Krause Robert* | Inmate Number: | *248039* |
|---|---|---|---|
| Service Authorized: | *RIH / Consult* | | |
| Responsible Facility: | *Ventress* | Contact Name: | *Nettie Burks* |
| Authorization Number: | *170 70828* | Telephone Number: | *775 3610* |

**Note to Provider of Services:**

- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPPA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPPA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPPA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

*Dr Whyte*
*4/26 @ 9:45*

Prison Health Services
P.O. Box 967
Brentwood, TN 37024-0967

---

**The consulting physician should complete this section.**
**The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility.**

**Clinical Summary or Attached Report**

*SEE        ATTACHED*

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\***

| Signature of Consulting Physician: | *[signature]* | | Date | Time |
|---|---|---|---|---|
| Reviewed and Signed By Medical Director: | *[signature]* *5/3/07* | | Date | Time |

KRAUSE
KROSS, ROBERT

**Advanced Surgical Associates** P.C.
Proven surgical results from doctors who care

**HPI:** THIS IS A 38 YEAR OLD MALE WITH A RIGHT INGUINAL HERNIA OF 1 YEAR DURATION. HAS GOTTEN LARGER AND HURTS DESPITE THE TRUSS. HAS HISTORY OF CONSTIPATION NOW AND THEN, NO BLOOD IN STOOL.

**ALLERGIES:** NKDA

**PMH** NONE

**PSH** NONE

**MEDICATIONS:** NONE

**SH** ⊕ CIGARETTES
⊖ ALCOHOL

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**PE**

HEENT: WNL

LUNGS CLEAR

COR RRR ⊖ m

ABDOMEN ⊕ BS, c̄ REDUCIBLE UMBILICAL HERNIA

EXT: ⊖ EDEMA          NEURO: AAO X 3, NON FOCAL

GU: RIGHT INGUINAL HERNIA REDUCIBLE

**IMPRESSION:** REDUCIBLE RIGHT INGUINAL HERNIA.

**PLAN:** WILL SCHEDULE REPAIR RIGHT HERNIA WITH MESH. PLEASE CALL TO SCHEDULE.

Thanks
Brian W. [signature]

337 St. Lukes Drive • Montgomery, AL 36117 • (334) 271-2788
2101 Chestnut Street • Montgomery, AL 36106 • (334) 265-9225

PHS074

| Patient Name: | *Krause Robert* | Inmate Number: | *248039* |
|---|---|---|---|
| Service Authorized: | *RIH Consult* | | |
| Responsible Facility: | *Ventress* | Contact Name: | *Nettie Burks* |
| Authorization Number: | *17076878* | Telephone Number: | *775 3610* |

**Note to Provider of Services:**

- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPPA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPPA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPPA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:** *Dr Whyte*
*4/26 @ 9¹⁵*

Prison Health Services
P.O. Box 967
Brentwood, TN 37024-0967

---

**The consulting physician should complete this section.**
**The completed form will be sealed in the attached envelope and**
**returned with an officer to the correctional facility.**

| Clinical Summary or Attached Report |
|---|
| |
| |
| FOR PROFESSIONAL USE ONLY |
| CONFIDENTIAL RECORD |
| NOT TO BE PHOTO COPIED |
| |
| |

**\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\***

| Signature of Consulting Physician: | | Date | Time |
|---|---|---|---|
| Reviewed and Signed By Medical Director: | | Date | Time |

## UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

**PHS**

Form must be Complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the time of the Appointment

### DEMOGRAPHICS

| Site Name & Number: | Patient Name: (Last, First) | Date: (mm/dd/yy) |
|---|---|---|
| VENTRESS 0845 | Krause, Robert | 03.29.07 |
| **Site Phone #** 334-775-8478 3610 | **Alias:** (Last, First) | **Date of Birth:** (mm/dd/yy) 10.11.68 |
| **Site Fax #** 334-775-8478 3610 | **Inmate #** 248039 | **PHS Custody Date:** (mm/dd/yy) 07.27.06 |
| **Will there be a charge?** ☒Yes ☐No  **Sex** ☒Male ☐Female | **SS Number** 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 | **Potential Release Date:** (mm/dd/yy) 09.18.09 |

RECEIVED MAR 30 AM

**Responsible party:** ☒PHS  ☐Auto Ins.   ☐Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans )
☐Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services)

### CLINICAL DATA

**Requesting Provider:** ☒Physician  ☐NP, PA  ☐Dental
Dr. B. Whyte

**Facility Medical Director Signature and Date:**
John M. Pleasant, Sr., MD

☐ Service meets criteria for "approval via protocol"

**Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.**

☒Office Visit (OV)    ☐X-ray (XR)    ☐Scheduled Admission (SA)
☐Outpatient Surgery (OS)    ☐Dialysis (DA)
☒Routine    ☐Urgent

**Estimated Date of Service** (mm/dd/yy)  __/__/__
(This starts the approval window for the "open authorization period")

**Multiple Visits/Treatments:** 1
**Number of Visits/Treatments:** 1
☐Radiation therapy  ☐Chemotherapy  ☐Other

**Specialist referred to:** Dr. B. Whyte

**Type of Consultation, Treatment, Procedure or Surgery:**
Evaluate @ IH

550

**Diagnosis:** ® IH
**ICD-9 code:**

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

**History of illness/injury/symptoms with Date of Onset:**
38 yo wo ♂ c̄ RIH
x 2 years - c/o ♯ pain
inspite of Truss - c/o truss
is not supporting Hernia

**Results of a complaint directed physical examination:**
RIH c̄ extension into
scrotal sac
® Testis/testicle feel normal
Hernia reduces - but slips
back into scrotal sac
inspite of truss

**Previous treatment and response (including medications):**
Pain meds
Rofl. ♯ of diff of / BID
Hernia Truss 4 4 months

***For security and safety, please do not inform patient of
possible follow-up appointments***

**UM DETERMINATION:**
☐Alternative Treatment Plan (explain here):
☐More Information Requested: (See Attached)
☒Offsite Service Recommended and Authorized
Date received/number __/__/__

☐Resubmitted with requested information.
Date received/number __/__/__

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

**Regional Medical Director Signature,**
printed name and date required:    3/30/07

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| USA/TPA | Mod Codes | CPT codes | UR AUTH # |
|---|---|---|---|
| GS | OV | 99201 | 7576878 |

QSa - UM Referral review form 1

FAX 7127
3-30-07
N. Burks, HSA/C Hunter, RN

# Inmate/Authorization Selection

**You have Open Events!**

| | | | | |
|---|---|---|---|---|
| **Event Report:** | **Site:** 0845 - Ventress Correctional Facility | **Start Date:** | **End Date:** | Run Events Summary Report |

## Step 1: Select Inmate

| Last Name | First Name | Contract | Number | Date of Birth | Auth | ☑ Soundex |
|---|---|---|---|---|---|---|
| krause | robert | Alabama DOC | 248039 | | | Search |

| Number | Last Name | First Name | AKA Last Name | AKA First Name | Cont Code | Contract | Date of Birth |
|---|---|---|---|---|---|---|---|
| 248039KR | Krause | Robert | | | ALADOC | Alabama DOC | 10/11/1968 |

Found 1 record

No Inmate Found - Add Inmate, Authorization and Event

## Step 2: Select Authorization if Event Pre-Authorized

☑ Show All Auths

| Auth # | Place of Service | Start Date | End Date | Status | Site Code | Site Name | Med Class | Resp | Auth | Rec |
|---|---|---|---|---|---|---|---|---|---|---|
| 17076878 | Advanced Surgical Associates | 3/30/2007 | 4/29/2007 | A | 0845 | Ventress Correctional Facility | OV | PHS | 1 | 0 |

Found 1 record

No Pre-Authorization Found - Add Authorization and Event

Refresh

Show All Auths

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

PHS077

Please send this form | Must be Complete and Legible. You must fax this form and the Authorization Letter to the service provider at the time of the Appointment

## DEMOGRAPHICS

| | | |
|---|---|---|
| Site Name & Number: VENTRESS 0845 | Patient Name: (Last, First) KRAUSE, Robert | Date: (mm/dd/yy) 03.29.07 |
| Site Phone # 334-775-8178 3610 | Alias: (Last, First) | Date of Birth: (mm/dd/yy) 10.11.68 |
| Site Fax # 334-775-8178 3610 | Inmate # 248039 | PHS Custody Date: (mm/dd/yy) 07.27.06 |
| Will there be a charge? ☑Yes ☐No  Sex ☑Male ☐Female | SS Number 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 | Potential Release Date: (mm/dd/yy) 09.18.09 |

Responsible party: ☑PHS ☐Auto Ins. ☐Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans )
☐Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services):

## CLINICAL DATA

Requesting Provider: ☑Physician ☐NP, PA ☐Dental

Dr B. Whyte

Facility Medical Director Signature and Date:

John M. Pleasant SR, MD

☐ Service meets criteria for "approval via protocol"

Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.

☑Office Visit (OV) ☐X-ray (XR) ☐Scheduled Admission (SA)
☐Outpatient Surgery (OS) ☐Dialysis (DA)
☑Routine ☐Urgent

Estimated Date of Service (mm/dd/yy): ___/___/___
(This starts the approval window for the "open authorization period")

Multiple Visits/Treatments: ☐Radiation therapy ☐Chemotherapy
Number of Visits/Treatments: 1 ☐Other:

Specialist referred to: Dr B. Whyte

Type of Consultation, Treatment, Procedure or Surgery:

Evaluate @ RIH

Diagnosis: ® IH
ICD-9 code:

You must include copies of pertinent reports such as lab results, x ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

History of illness/injury/sypmtoms with Date of Onset:

38 yo wos c̄ RIH
x 2 years - c/o pain
inspite of Truss - c/o truss
is not supporting Hernia

Results of a complaint directed physical examination:

RIH c̄ extension into
scrotal sac.
® Testticule feel normal
Hernia reduces - but slips
back into scrotal sac
inspite of Truss

Previous treatment and response (including medications):

Pain meds
Prepds of diffing / BBP
Hernia Truss x 4 mos/lg

***For security and safety, please do not inform patient of possible follow-up appointments***

## UM DETERMINATION:

☐Alternative Treatment Plan (explain here):

☐Offsite Service Recommended and Authorized

☐More Information Requested: (See Attached)

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

☐Resubmitted with requested information. Date resubmitted: ___/___/___

Regional Medical Director Signature, printed name and date required:

___/___/___ (mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: | Med Class: | CPT code: | UR Auth #: |
|---|---|---|---|

05a - UM Referral review form 1

FAXED
3-30-07
N. Burks, HSA / C. Hunter, RN

Facility Name: Ventress Correctional Facility

Month/Year of Charting: 05/07

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Motrin 600MG Tab      120.00

Take 1 tablet(s) by mouth four times
daily as needed

3am
9Am
3Pm
9Pm

Start Date: 03-31-2007

Stop Date: 06-28-2007

Prescriber: Peasant, J.

RX #: 252477531

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

Diagnosis

Allergies
Sulfa Drugs

Housing Unit: Population
Patient ID Number: 248034
Patient Name:

**Krause, Robert**

| Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|
| K. Lee CN | TCC | F. Smith, LPN | JS | 1. Discontinued Order |
| | | M. Benefield, LPN | MB | 2. Refused |
| | | | | 3. Patient out of facility |
| | | | | 4. Charted in Error |
| | | | | 5. Lock Down |
| | | | | 6. Self Administered |
| | | | | 7. Medication out of Stock |
| | | | | 8. Medication Held |
| | | | | 9. No Show |

Date of Birth: 10-11-1968

PHS079

| Facility Name: Ventress Correctional Facility | | Month/Year of Charting: 06/07 | |

**Motrin 600MG Tab        120.00**

Take 1 tablet(s) by mouth four times daily as needed

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3Am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9Am | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9A | | | | | | | | | | | | | | | | | | | | | | |
| 3PN | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9PN | | | | | | | | | | | | | | | | | | | | | | | | | am | | am | | | | |

Start Date: 03-31-2007     Prescriber: Peasant, John
Stop Date: 06-28-2007     RX #: 252477531

**Motrin 600mg PO qid ~~prn~~ x 3 days**

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3A | | | | | | | | | | | | | | | | | | | | | | | | | | | | BL | | | |
| 9A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 3P | | | | | | | | | | | | | | | | | | | | | | | | | | | | am | | | |
| 9P | | | | | | | | | | | | | | | | | | | | | | | | | | | | 6/28 | | | |

Start Date: 6/28/07     Prescriber: Peasant
Stop Date: 7/1/07     RX #:

**Lortab 5mg ïï PO now et q4° prn severe pain x 6 doses**

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R | | | | | | | | | | | | | | | | | | | | | | | | | | | | KL | | | |
| N | | | | | | | | | | | | | | | | | | | | | | | | | | | | 6/28 | | | |

Start Date: 6/28/07     Prescriber: Peasant
Stop Date:     RX #:

**Colace 100mg PO tid x 30 days**

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9A | | | | | | | | | | | | | | | | | | | | | | | | | | | | BL | | | |
| 3P | | | | | | | | | | | | | | | | | | | | | | | | | | | | 6/28 | | | |
| 9P | | | | | | | | | | | | | | | | | | | | | | | | | | | | 6/28 | | | |

Start Date: 6/29/07     Prescriber: Peasant
Stop Date: 7/29/07     RX #:

**Tylenol #3 ïï po now & q 6° PRN ~~severe~~ pain x 6 doses**

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A/R | | | | | | | | | | | | | | | | | | | | | | | | | | | | KL | | | |
| R | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Start Date: 6-30-07     Prescriber: Peasant
Stop Date:     RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Start Date:     Prescriber:
Stop Date:     RX #:

I of II

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | K. Lee RN | | KU & morgne Smith | | 1. Discontinued Order |
| Allergies | B. Little RN | BL | | | 2. Refused |
| Sulfa Drugs | | | | | 3. Patient out of facility |
| | | | | | 4. Charted in Error |
| Housing Unit: Population | | | | | 5. Lock Down |
| Patient ID Number: 248034 | | | J. Smith | | 6. Self Administered |
| Patient Name: | | | | | 7. Medication out of Stock |
| | | | | | 8. Medication Held |
| **Krause, Robert** | | | | | 9. No Show |
| | Date of Birth: | **10-11-1968** | | | 10. Other |

PHS080

6/07

| Facility Name: | | | | | | | | | | | | | | Month/Year of Charting: | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Motrin 600mg po q6° X 7 days around the clock

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 3P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Start Date: 6-30-07    Prescriber: Pleasant
Stop Date: 7-07-07    RX #:

Percocesic ㅍ po q6° X 7 days around the clock

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9A | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 3P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Start Date: 6-30-07    Prescriber: Pleasant
Stop Date: 7-07-07    RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Start Date:    Prescriber:
Stop Date:    RX #:

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

ㅍ of ㅍ

Start Date:    Prescriber:
Stop Date:    RX #:

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | | | B. Little RN | BL | 1. Discontinued Order |
| Allergies Sulfa | | | | | 2. Refused |
| | | | | | 3. Patient out of facility |
| | | | | | 4. Charted in Error |
| Housing Unit: | | | | | 5. Lock Down |
| Patient ID Number: 248034 | | | | | 6. Self Administered |
| Patient Name: | | | | | 7. Medication out of Stock |
| | | | | | 8. Medication Held |
| | | | | | 9. No Show |
| | Date of Birth: | | | | 10. Other |

April 2007

| Facility Name: VCF | | | Month/Year of Charting | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| Motrin 600mg QID Prn X90days | 3a | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 9A | | | | | | | | | | | | | W | | | | | | | | | | | | | | | | | | | |
| | 3P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 9P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Start Date: 3-29-07    Prescriber: Pleasant
Stop Date: 6-29-07    RX #:

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

Start Date:    Prescriber:
Stop Date:    RX #:

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date:    Prescriber:
Stop Date:    RX #:

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| Allergies: Sulfa Drugs | J. Smith LW / JJohnson LPN | JS | | | 1. Discontinued Order<br>2. Refused<br>3. Patient out of facility<br>4. Charted in Error<br>5. Lock Down<br>6. Self Administered<br>7. Medication out of Stock<br>8. Medication Held<br>9. No Show<br>10. Other |
| Housing Unit: | | | M Benefield MB | MB | |
| Patient ID Number: 248039 | | | | | |
| Patient Name: Kannuo | Patient | Date of Birth: 10/11/60 | | | |

PHS082

MH

| Facility Name: Ventress Correctional Facility | | Month/Year of Charting: 03/07 |

Fluoxetine HCl ( for Prozac ) 20MG Cap 60.00

Take 2 capsule(s) by mouth every morning

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3A | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | | | | | | | | | | | | | | | | | |

*Died 3/15/07*

Start Date: 12-22-2006     Prescriber: Banerjee MHM, S.
Stop Date: 03-21-2007     RX #: 252232073

Motrin 600mg
QID Prn pain
X 90 days

3A
DQ1A
R 3p
N 9p

Start Date: 3-29-07     Prescriber: Present
Stop Date: 6-29-07      RX #:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | K. Lee LPN | KL | R. Johnson LPN | RJ | 1. Discontinued Order |
| Allergies | | | D. Smith LPN | TS | 2. Refused |
| Sulfa Drugs | | | | | 3. Patient out of facility |
| | | | | | 4. Charted in Error |
| Housing Unit: Population | | | | | 5. Lock Down |
| Patient ID Number: 248034 | | | M. Enfield L | MB | 6. Self Administered |
| Patient Name: | | | | | 7. Medication out of Stock |
| **Krause, Robert** | | | | 10-11-1968 | 8. Medication Held |
| | | | | | 9. No Show |

PHS083

| Facility Name: | | | | | | | | | | | | | Month/Year of Charting: 02-07 | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| _Ventress_ | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

Prozac 40 mg ; po q
3 Am × 90 days

Hour 3Am: 9 9 9 K K 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 9 D D 9

Start Date: 12-27-06   Prescriber: Dr Banarjee
Stop Date: 03-27-07   RX #:

Motrin 600 mg
po TID × 7 days

| Hour | 3A | → | | 9B |
| | 9A | → | | 9B |
| | 3P | → | | |

Start Date: 2-6-07   Prescriber: Pleasant
Stop Date: 2-13-07   RX #:

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

Start Date:   Prescriber:
Stop Date:   RX #:

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | K Beebh | KB | | 9B | 1. Discontinued Order |
| Allergies | | | | | 2. Refused |
| Sulfa drugs | | | | | 3. Patient out of facility |
| Housing Unit: | | | | | 4. Charted in Error |
| Patient ID Number: 248034 | Fhith | | Wangfield | MB | 5. Lock Down |
| Patient Name: | | | | | 6. Self Administered |
| Kunco Robert | | | Date of Birth: | | 7. Medication out of Stock |
| | | | | | 8. Medication Held |
| | | | | | 9. No Show |
| | | | | | 10. Other |

PHS084

| Facility Name: _Ventress_ | | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | Month/Year of Charting: _Jan 07_ | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

_Prozac 40 Mg - POq_
_3Am x 90 days_

| | | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Start Date: _12-22-06_     Prescriber: _Dr Banezjee_
Stop Date: _03-27-07_     RX #:

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
**NOT TO BE PHOTO COPIED**

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | _K. Lee LPN_ | KL | _Budd_ | BB | 1. Discontinued Order |
| Allergies | _Johnson LPN_ | JJ | | | 2. Refused |
| _Sulfa Drugs_ | | | _Thithy_ | JT | 3. Patient out of facility |
| Housing Unit: | | | _Benefield_ | MB | 4. Charted in Error |
| Patient ID Number: _248034_ | | | | | 5. Lock Down |
| Patient Name: | | | | | 6. Self Administered |
| _Krauss, Robert_ | | | Date of Birth: | | 7. Medication out of Stock |
| | | | | | 8. Medication Held |
| | | | | | 9. No Show |
| | | | | | 10. Other |

PHS085

| Facility Name: | Ventress Correctional Facility | | | | | | | | | | | | | | Month/Year of Charting: | | 12/06 | | | | | | | | | | | | | | |

| Fluoxetine HCl ( for Prozac ) 20MG Cap 60.00<br><br>Take 2 capsule(s) by mouth every morning | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Start Date: | 09-07-2006 | Prescriber: | Barnett, J. |
| Stop Date: | 12-05-2006 | | RX #: 251911285 |

| Ibuprofen ( for Motrin ) 600MG Tab 60.00<br><br>Take 1 tablet(s) by mouth twice daily as needed | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Start Date: | 09-09-2006 | Prescriber: | Adams, Bradford |
| Stop Date: | 12-07-2006 | | RX #: 251918615 |

Prozac 40mg po q
9 AM x 90 days

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Start Date: | 02-29-06 | Prescriber: | Dr Banerjee |
| Stop Date: | 03-29-07 | | RX #: |

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Start Date: | | Prescriber: |
| Stop Date: | | RX #: |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Start Date: | | Prescriber: |
| Stop Date: | | RX #: |

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| Start Date: | | Prescriber: |
| Stop Date: | | RX #: |

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | K Dubal | KU | | | 1. Discontinued Order<br>2. Refused<br>3. Patient out of facility<br>4. Charted in Error<br>5. Lock Down<br>6. Self Administered<br>7. Medication out of Stock<br>8. Medication Held<br>9. No Show<br>10. Other |
| Allergies<br>Sulfa Drugs | | | | | |
| Housing Unit: MHM | | | | | |
| Patient ID Number: 248034 | | | | | |
| Patient Name: | | | | | |
| **Krause, Robert** | | | Date of Birth | **10-11-1968** | |

PHS086

| Facility Name: Ventress Correctional Facility | | Month/Year of Charting: 11/06 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Fluoxetine HCl ( for Prozac ) 20MG Cap 60.00**

( HOM )

Take 2 capsule(s) by mouth every morning

| Start Date: | 09-07-2006 | Prescriber: | Barnett, J. |
|---|---|---|---|
| Stop Date: | 12-05-2006 | | RX #: 251911285 |

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Ibuprofen ( for Motrin ) 600MG Tab 60.00**

Take 1 tablet(s) by mouth twice daily as needed

| Start Date: | 09-09-2006 | Prescriber: | Adams, Bradford |
|---|---|---|---|
| Stop Date: | 12-07-2006 | | RX #: 251918615 |

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Percogesic # po qid x4d

| Start Date: | 11/1/06 | Prescriber: | Thomas DMD |
|---|---|---|---|
| Stop Date: | 11/5/06 | | RX #: |

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| Start Date: | | Prescriber: | |
|---|---|---|---|
| Stop Date: | | | RX #: |

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Start Date: | | Prescriber: | |
|---|---|---|---|
| Stop Date: | | | RX #: |

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | K. Lee LPN | KL | J Mason RN | | 1. Discontinued Order |
| **Allergies** Sulfa Drugs | | | J Buck LPN | JB | 2. Refused |
| | | | B. Leih RN | BL | 3. Patient out of facility |
| **Housing Unit:** MHM | | | | | 4. Charted in Error |
| **Patient ID Number:** 248034 | | | Mangield LPN | | 5. Lock Down |
| **Patient Name:** | | | | | 6. Self Administered |
| **Krause, Robert** | | | Date of Birth: 10-11-1968 | | 7. Medication out of Stock |
| | | | | | 8. Medication Held |
| | | | | | 9. No Show |
| | | | | | 10. Other |

PHS087

Facility Name: _Ventress_    Month/Year of Charting: _Oct 06_

| Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|------|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|

Prozac 40 Mg ÷ QAm x 90 days

Start Date: 9-6-06    Prescriber: Banerjee
Stop Date: 12-6-06    RX #:

Pamelor 50 mg q HS x 30 days
DC 9/21/06

Start Date:    Prescriber:
Stop Date:    RX #:

Motrin 600 mg ÷ PO Bid PRN x 90 days

Start Date:    Prescriber: Peasont
Stop Date:    RX #:

Miconazole 2% Cream - Apply to Rash daily x 30d

dose given 10/31/06
Robert Krauss 248039

Start Date: 10-31-06    Prescriber: Peasant, MD
Stop Date: 11-30-06    RX #:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTOCOPIED

Start Date:    Prescriber:
Stop Date:    RX #:

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|-----------|-------------------|---------|-------------------|---------|---------------------|
| | K. Deep | KL | M. Marsh | | 1. Discontinued Order |
| Allergies | B. Laili, LPN | BS | V. Young | W | 2. Refused |
| | | | J. Smith | JS | 3. Patient out of facility |
| | | | M. Benefield | MB | 4. Charted in Error |

Housing Unit:
Patient ID Number: 248034
Patient Name: Krauss, Robert

5. Lock Down
6. Self Administered
7. Medication out of Stock
8. Medication Held
9. No Show

| Facility Name: | | Month/Year of Charting: |
|---|---|---|

9/06

| Medication | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| Prozac 40mg QAM x 90d | 0900 | |

Start Date: 9/6/06  Prescriber: Beecham
Stop Date: 12/6/06  RX #:

| Medication | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| Pamelor 50mg QHS x 30d | 2000 | D/C'd 9/21/06 |

Start Date: 9/6/06  Prescriber: Beecham
Stop Date: 9/6/06  RX #:

| Medication | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| MOTRIN 600mg PO BID PRN x 90d | 9am 9pm | |

Start Date: 9-8-06  Prescriber: Dr Pam
Stop Date: 12-8-06  RX #:

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|

Start Date:  Prescriber:
Stop Date:  RX #:

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|

Start Date:  Prescriber:
Stop Date:  RX #:

| | Hour | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|

Start Date:  Prescriber:
Stop Date:  RX #:

| Diagnosis | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| MOOD DIS. NOS | | | A Mark | | 1. Discontinued Order |
| Allergies | | | B. Little RN | BL | 2. Refused |
| , | | | R. Bruce, RN | | 3. Patient out of facility |
| Housing Unit: | | | | | 4. Charted in Error |
| Patient ID Number: 248034 | | | | | 5. Lock Down |
| Patient Name: | J Johnson LPN | | | | 6. Self Administered |
| Karmer Robert | Date of Birth: | | | | 7. Medication out of Stock |
| | | | | | 8. Medication Held |
| | | | | | 9. No Show |
| | | | | | 10. Other |

PHS089



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _Krause, Robert_    Date of Request: _7/9/07_
ID # _248039_    Date of Birth: _10-11-07_ Location: _Ventress_
Nature of problem or request: _F/u on hernia surgery_

_Robert Krause_
*Signature*

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:** _F/u on hernia repair_

02 Sat 96%  **(O)bjective** (V/S): T: _99_    P: _69_    R: _20_    BP: _110/80_   WT: _180_

**(A)ssessment:** _To see MD - FU_

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:  (MD)/PA   Mental Health   Dental   Daily Treatment       Return to Clinic PRN
CIRCLE ONE
Check One:  ROUTINE (✓)    EMERGENCY ( )
If Emergency was PHS supervisor notified:    Yes ( )    No ( )
Was MD/PA on call notified:    Yes ( )    No ( )

_Imogene Smith_
*SIGNATURE AND/TITLE*   LPN Ext
7/09/07

WHITE:    INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS090

## Nursing Evaluation Tool:
General Sick Call

**Facility:** Alabama Department of Corrections

Patient Name: **Krause, Robert**

Inmate Number: **#248039**

Date of Birth: **10, 11, 68**

Date of Report: **2, 6, 07**

Time Seen: _____ AM / PM  Circle One

**Subjective:** Chief Complaint(s): "I got a hernia and it's getting

Onset: bigger, it's making me have pro-

Brief History: blems using the bathroom"
(Continue on back if necessary)

**Objective:** Vital Signs: (As Indicated) T: **97-8**  P: **74**  RR: **20**  B/P: **110, 80**   **(183#)**

Examination Findings: A/O X 3. Skin w/D to touch. Resp clear.
(Continue on back if necessary) Brad. lungs clear. C/O the above. Bulging L
testicles noted. Painful to palpation. States
able to push back in. Recurrent complaint.

**Assessment:** (Referral Status)   Preliminary Determination(s): Alt in Comfort

☐ Referral **NOT REQUIRED**

☑ Referral **REQUIRED** due to the following: (Check all that apply)
☑ Recurrent Complaint (More than 2 visits for the same complaint)
☐ Other: _____

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**Comment:** You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

**Plan:** Check All That Apply:
☑ Instructions to return if condition worsens.
☐ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up.  ☐ YES  ☐ NO (If NO then schedule patient for appropriate follow-up visits)
☐ Other: _____
(Describe)

OTC Medications given  ☐ NO  ☑ YES (If Yes List): Motrin 600mg po T10 X 7 days

Referral: ☐ NO  ☑ YES (If Yes, Whom/Where): Dr. Peasant

Referral Type:☐ Routine  ☐ Urgent ☑ Emergent (If emergent who was contacted?): Dr. Peasant   Time: _____

Date for referral: 2, 7, 07

X T. Starks, Lpn   Name: Tracy Starks, Lpn
Nurses Signature                    Printed

2/8/07

PHS091



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: Robert Krause    Date of Request: 10-26-06
ID # 248039    Date of Birth: 10/11/68  Location: 7-B-19
Nature of problem or request: I have a hernia in my
GROIN It has Droped down on my Right
Testical an is causeing me pain & discomfort
I need to See the Docter ASAP Please
Robert Krause
*Signature*

### DO NOT WRITE BELOW THIS LINE

Date: 10/27/06
Time: 12:30  AM (PM)
Allergies: Sulfur.

| RECEIVED |
| --- |
| Date: 10-27-06 |
| Time: 10 |
| Receiving Nurse Intials |

**(S)ubjective:**

**(O)bjective**   (V/S): T:____  P:____   R:____   BP:____   WT:____

**(A)ssessment:** See Nett page b

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**(P)lan:** Report to HCW. Tuesday 10-31-06 @ 7 am.
See MD Apt.

Refer to: (MD/PA)  Mental Health   Dental   Daily Treatment      Return to Clinic PRN
CIRCLE ONE
Check One: ROUTINE (X)   EMERGENCY ( )
If Emergency was PHS supervisor notified:   Yes ( )   No ( )
Was MD/PA on call notified:   Yes ( )   No ( )

_____   _____
*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002   (1/4)

PHS092

Nursing Evaluation Tool

General Sick Call

...ment of Corrections

Patient Name: _Krause_                                    _Robert_
                                                          First
Inmate Number: _248039_

Date of Report: _10_ _29_ _06_          Date of Birth: _10_ _11_ _68_
                MM  DD  YYYY                            MM  DD  YYYY

                                        Time Seen: _12:30_    AM (PM) Circle One

**Subjective:** Chief Complaint(s): _Hernia_

Onset: _Couple years._

Brief History: _unable to wear hernia support, makes_
(Continue on back if necessary) _it more uncomfortable + now it is getting bigger_
_feels against inside legs more a hash._

**Objective:** Vital Signs: (As Indicated) T: _98_ P: _60_ RR: _20_ B/P: _116_ / _86_   ☐ Check Here if additional notes on back

Examination Findings: _Wt #122 O₂ Sat 96% do not have hernia_
(Continue on back if necessary) _truss only testicle support._

**Assessment:** (Referral Status)        Preliminary Determination(s): _Alt. in Health Comfort_   ☐ Check Here if additional notes on back
☐ Referral NOT REQUIRED

☒ Referral REQUIRED due to the following: (Check all that apply)
   ☐ Recurrent Complaint (More than 2 visits for the same complaint)
   ☒ Other: _Hernia evaluation_

**FOR PROFESSIONAL USE ONLY**
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

Comment: You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

**Plan:** Check All That Apply:
☐ Instructions to return if condition worsens.
☐ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up. ☒YES ☐ NO (If NO then schedule patient for appropriate follow-up visits)
☐ Other: _____ (Describe)

OTC Medications given ☒ NO ☐ YES (If Yes List): _____

Referral: ☐ NO ☒ YES (If Yes, Whom/Where): _Dr. Pleasant_

Referral Type: ☒ Routine ☐ Urgent ☐ Emergent (if emergent who was contacted?): _____   Date for referral _10_ _31_ _06_
                                                                                                      MM  DD  YYY

X _____                    Name: _S. Odis, RN_              Time
   Nurses Signature                          Printed

PHS093



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: *Robert Krause*                Date of Request: *9-17-06*
ID # *248039*                Date of Birth: *10-11-68* Location: *7-B-19*
Nature of problem or request: *I have A Spical Need From*
*Kilby I need to lets the Nurse see it*

_____

                                        *Robert Krause*
                                        **Signature**

**DO NOT WRITE BELOW THIS LINE**

Date: *8* /____ /____
Time: _____ AM  PM
Allergies: _____

```
┌─────────────────────────────────┐
│          RECEIVED               │
│  Date:                          │
│  Time:                          │
│  Receiving Nurse Intials _____ │
└─────────────────────────────────┘
```

**(S)ubjective:**

**(O)bjective**   (V/S):  T:_____  P:_____  R:_____  BP:_____  WT:_____

**(A)ssessment:**

*Waiver Signed*

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment        Return to Clinic PRN
                              CIRCLE ONE
Check One:  ROUTINE ( )       EMERGENCY ( )
        If Emergency was PHS supervisor notified:     Yes ( )     No ( )
                Was MD/PA on call notified:     Yes ( )     No ( )

_____

                *SIGNATURE AND TITLE*

MEDICAL FILE
COPY AFTER NURSE INITIALS RECEIPT

PHS094

**PHS**
PRISON HEALTH SERVICES INCORPORATED

DEPARTMENT OF CORRECTIONS
## TRANSFER & RECEIVING SCREENING FORM

RECEIVED: Inmate/Health Record

Institution: _VCF_

Date: 9-15-06  Time: 1450 AM/PM

RECEIVED FROM:
Institution/Work Release Center/Free-World Hospital

RECEIVING MEDICAL STATUS
- [x] Population
- [ ] Infirmary
- [ ] Isolation

RELEASED: Inmate/Health Record

Institution: _KCF_

Date: 9-14-06  Time: 2000 AM/PM

RELEASE FROM:
- [ ] Infirmary
- [ ] Segregation
- [x] Population
- [ ] Mental Health
- [ ] Other _____

RELEASE TO:
- [x] DOC
- [ ] Infirmary
- [ ] Mental Health

Institution/Work Release Center/Free-World Hospital

ALLERGIES: _Sulfur_

PHYSICAL EXAMINATION
Date of last exam: 9-6-06
Chest X-Ray Date: _____ Result: _____
PPD Reading 9-7-06  0 mm
Classification: gen pop
Limitations: none

| LAB RESULTS - - LAST REPORT | Date | Normal | Abnormal |
|---|---|---|---|
| CBC | 9-6-06 | [x] | [ ] |
| Urinalysis | 9-6-06 | [x] | [ ] |
| HIV & RPR | 9-6-06 | [x] | [ ] |

| | YES | NO | |
|---|---|---|---|
| Wears Glasses/Contacts | [x] | [ ] | upper denture |
| Dental Prosthesis | [x] | [ ] | |
| Hearing Aide | [ ] | [x] | |
| Other Prosthesis | [ ] | [x] | |

Receiving Nurse _____

CURRENT OR CHRONIC MEDICAL/DENTAL/MENTAL HEALTH PROBLEMS OR COMPLAINTS

Pt. inguinal hernia - athletic supporter    "Chicken Pox" in children

CURRENT MEDICATION - - DOSAGE AND FREQUENCY

Prozac
Pamelor
Motrin

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| MEDICATIONS | | |
|---|---|---|
| X-RAY FILM | [ ] Sent w/ inmate | [ ] Not sent w/ inmate |
| HEALTH RECORD | [ ] Sent w/ inmate | [ ] Not sent w/ inmate |
| Released to: | [ ] Sent w/ inmate | [ ] Not sent w/ inmate |

Date: _____ Time: _____ AM/PM

| MEDICATIONS | [ ] Received | [ ] Not Received |
|---|---|---|
| X-RAY FILM | [ ] Received | [ ] Not Received |
| HEALTH RECORD | [x] Received | [ ] Not Received |
| CHART REVIEWED | [x] YES | [ ] NO |

Received by: _____
Signature of Receiving Nurse
Date: 9-15-06  Time: 1452 AM/PM

SCHEDULE FOR CHRONIC CARE CLINIC

DATE: _____  LAST CLINIC: _____

FOLLOW-UP CARE NEEDED
- [ ] Medical
- [ ] Dental
- [ ] Mental Health

Date _____ Time _____ With Whom - - Location (Sending Nurse) _____ Date/Appt. Made w/Whom (Rec. Nurse) _____

NURSING ASSESSMENT (SENDING NURSE)
(Noted from health record documentation)

| HISTORY | Yes | No |
|---|---|---|
| Drug Use | [x] | |
| Mental Illness | [x] | |
| Suicide Attempt | | [x] |
| Chronic Care | [x] | |

| STATUS | | |
|---|---|---|
| Special Diet | | [x] |
| Appearance | [x] | |

OTHER PERTINENT NURSING ASSESSMENT

NURSING ASSESSMENT (RECEIVING NURSE)
(Noted from inmate assessment)

| SKIN | Yes | No |
|---|---|---|
| Open Sores | | [x] |
| Lice | | [x] |
| Edema | | [x] |
| Warm & Dry | [x] | |
| Cool & Moist | | |

| | | |
|---|---|---|
| Alert | [x] | |
| Oriented | [x] | |
| Uncooperative | | [x] |
| Depressed | | [x] |

INTAKE
Sick Call Procedures Explained  yes
Height  5'11"
Weight  170
Blood Pressure  130/70
Temperature  98.8
Pulse Resp.  80/18
Other _____

D. Lawrence for HSA  9-14-06
Signature of Nurse Completing Assessment (Sending Nurse)    Date

_____  9-15-06
Signature of Intake Screening Nurse (Receiving Nurse)    Date

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | Race/Sex | FAC. |
|---|---|---|---|---|
| Krause, Robert, D. | 248034 | 10/11/68 | W/M | KCF |

PHS-MD-70009

**(White - Medical Jacket, Yellow - Transfer Coordinator)**

PHS095



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## PRISON HEALTH SERVICES, INC.
### SICK CALL REQUEST

Print Name: _Krause, Robert_    Date of Request: _9-6-6_

ID # _248034_    Date of Birth: _10-11-68_  Location: _E-27_

Nature of problem, or request: _FLU    Re (Hernia)    nut adms in Am_

_____

_____

_____
                                    *Signature*

### DO NOT WRITE BELOW THIS LINE

_____

Date: ____/____/____
Time: _____ AM  PM
Allergies: _____

```
┌─────────────────────────────────┐
│           RECEIVED              │
│  Date:                          │
│  Time:                          │
│  Receiving Nurse Intials _____ │
└─────────────────────────────────┘
```

**(S)ubjective:**

**(O)bjective**  (V/S): T: _98.4_  P: _86_  R: _20_  BP: _120/70_ WT: _170_

**(A)ssessment:**

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

**(P)lan:**

Refer to:  MD/PA  Mental Health  Dental  Daily Treatment    Return to Clinic PRN
                    CIRCLE ONE
Check One:  ROUTINE ( )    EMERGENCY ( )
    If Emergency was PHS supervisor notified:    Yes ( )    No ( )
            Was MD/PA on call notified:    Yes ( )    No ( )

_9/7/06_

_____
            *SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)

PHS096



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: | D.O.B.: / / |
|-----------|----------------|-------------|

7/9/07
4:00

⑤ F/U S/P Ⓡ I H Surgery - Pt D/C from
Infirmary 7/5/07

Ⓞ alert NAD

wack's prob

Ⓡ scrotol soc heavy + Swollen Ⓡ testicle
feel normal.

Ⓐ RIH - repair - healing well

Ⓟ Recheck in 2 wk

Ⓞ poc                                          [signature]

7-23-07    WT.180   BP 116/80   P66   R18   T 98⁸   F/U hernia, scrotum repair

⑤ I feel geet. NO c/o is I feel normal
there again

Ⓞ alert NAD

Ⓡ + Ⓛ testicle present
surgical wound healed - ∅ TTP ∅ swelling.

Ⓐ scrotum s̄ TTP

Ⓐ Ⓡ I H - repair - looks good

Ⓟ Rto PRN

Ⓞ poc.                                          [signature]

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

60111 (5/85)                    **Complete Both Sides Before Using Another Sheet**

PHS097



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PHYSICIANS' ORDERS

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / | |
| ALLERGIES: | |
| Use Last    Date  /  / | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B.  /  / | |
| ALLERGIES: | |
| Use Fourth    Date  /  / | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

| NAME: Kraroey Robert | DIAGNOSIS (If Chg'd) |
|---|---|
| 248039 | ① F/U 2 wk  &  ✓ |
| D.O.B. 10/11/68   7/9/07 | ② Scrotum & hernia |
| ALLERGIES: Sulfa   noted E. Smith, | repair |
| Use Third    Date 7/9/07 | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Krause, Robert | DIAGNOSIS (If Chg'd) |
|---|---|
| 248039 | ① RBPX 8wk |
| D.O.B. 10/11/68 | ② Bactrim 715 BS X 180 day |
| ALLERGIES: Sulfa | ③ Chart back to Dr Siersdt |
| Use Second    Date 7/5/07 | today |
| | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Krause, Robert | DIAGNOSIS |
|---|---|
| #248039 | ① Remove staples — done |
| D.O.B. 10/11/68 | ② DC to Dorm today |
| ALLERGIES: Sulfa | ③ F/U visit monday |
| Use First    Date 7/5/07 | ④ TAO 7.5 gm apply to |
| | wound gd X7 day |
| | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

60110 (4/03)

**MEDICAL RECORDS COPY**



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

## PHYSICIANS' ORDERS

| | |
|---|---|
| NAME: *Krause, Robert*<br>#248039<br>D.O.B. 10/11/68 *Noted 4/*<br>ALLERGIES: *Sulfa* *4/30/*<br>*15/11*<br>Use Last    Date 7/3/05 | DIAGNOSIS (If Chg'd) ① *Plan Staple Removal*<br>*Thursday tn*<br>② *TAO — 7.5mg place on*<br>*suture line, BID · X 2 day*<br>*line dressing off*<br>☐ GENERIC SUBSTITUTION IS NOT PERMITTED |
| NAME: *Krause, Robert*<br>#248039<br>D.O.B. 10/11/68<br>ALLERGIES: *Sulfa*<br>Use Fourth    Date 7/2/07 | DIAGNOSIS (If Chg'd)<br>*File c D. Gov*<br>☐ GENERIC SUBSTITUTION IS NOT PERMITTED |
| NAME: *Krause, Robert*<br>#248039<br>D.O.B. 10/11/68 *Noted*<br>ALLERGIES: *Sulfa* *B. Lieb RN*<br>*6/30/07*<br>*0715*<br>Use Third    Date 6/30/07 | DIAGNOSIS (If Chg'd) *Percocsic II po q 6° X 7 days*<br>*Motrin 600mg po q 6° X 7 days*<br>*Dine Tylenol #3 II po now & q 6° PRN*<br>*Severe Pain X's 6 doses*<br>*T.O. Dr Pleasant / B. Lieb RN*<br>☐ GENERIC SUBSTITUTION IS NOT PERMITTED |
| NAME: *Krause Robert*<br>#248039<br>D.O.B. 10/11/68<br>ALLERGIES: *Sulfa*<br>Use Second    Date 6/29/07 | DIAGNOSIS (If Chg'd) *Colace 100mg PO tid x 30 days*<br>*TORB Dr Pleasant / Brannon*<br>☐ GENERIC SUBSTITUTION IS NOT PERMITTED |
| NAME: *Krause, Robert*<br>#248039 *noted*<br> *Thulley*<br>*6/29/07*<br>D.O.B. 10/11/68<br>ALLERGIES: *Sulfa* 6/29/07<br>Use First    Date | DIAGNOSIS<br>*Complete BR except for BRP*<br>*ice to scrotal area*<br>*call MD in 4 hours c update*<br>*T.O. Dr Pleasant / Thulley*<br>☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

**MEDICAL RECORDS COPY**

60110 (4/00)

PHS099



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

### PHYSICIANS' ORDERS

| | |
|---|---|
| NAME: Krause, Robert #248039 <br> D.O.B. 10/11/68  noted 1000 6/28/07 2025 <br> ALLERGIES: Sulfa <br> Use Last    Date 6/28/07 | DIAGNOSIS (If Chg'd)  Admit to INF <br> VS q6°, follow up c̄ MD 7/2/07 <br> Lortab 5mg # PO now et q4° prn <br> Severe pain x 6 doses. <br> Motrin 600mg PO qid x 3 days <br> TORB Dr Peasant / BBranngha <br> ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |
| NAME: Krause, Robert <br> D.O.B. 10/11/68 <br> ALLERGIES: Sulfa <br> noted 6/21/07 @ 830 T. Burk RN <br> 6/21/07 @ 830 <br> Use Fourth    Date 06/21/07 | DIAGNOSIS (If Chg'd)  Pre-Op labs / studies <br> ① CBC, PT, lytes <br> ② EKG <br> ③ Chest X-ray <br> VO Dr Peasant / T. Burk RN <br> ☐ GENERIC SUBSTITUTION IS NOT PERMITTED  Jo Penn Bru |
| NAME: Krause, Robert #248039 <br> D.O.B. 10/11/68 <br> ALLERGIES: Sulfa <br> noted 6/16 T. Burk RN 6/20/07 3.05 <br> Use Third    Date 6/20/07 | DIAGNOSIS (If Chg'd)  ① Schedule Hernia repair with <br> Dr Gary    6/28/07 <br> Dr. Gary's office will fax orders <br> ☐ GENERIC SUBSTITUTION IS NOT PERMITTED  J.M. Peasant |
| NAME: Krause, Robert <br> 248039 <br> D.O.B. 10/11/68  5/3/07 noted E. Smith RN <br> ALLERGIES: Sulfa <br> Use Second    Date 5/3/07 | DIAGNOSIS (If Chg'd)  ① Sneller Eye chart <br> ② Eye vst for HA + ① eye pain <br> ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |
| NAME: Krause, Robert <br> 248039 | DIAGNOSIS  ① F/U q 3 wk X 3 visit |



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

## PHYSICIANS' ORDERS

| | |
|---|---|
| NAME: Krause, Robert #248034 <br> D.O.B. 10/11/68 <br> ALLERGIES: Sulfa <br> Use Last   Date 5/7/07 | DIAGNOSIS (If Chg'd) <br> U m submitted for surgical report of RTH & meal <br> (submitted 5/7/07) <br> ☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: Krause, Robert #248034 <br> D.O.B. 10/11/68 <br> ALLERGIES: Sulfa <br> Use Fourth   Date 3/29/07 | DIAGNOSIS (If Chg'd) <br> ① f/u q 3 wk X 6 <br> ② UM f Dr Whyte <br> ✓ RTH (submitted 3/29/07) <br> ③ Motrin 600 BID for pain <br> X 90 dys <br> ☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: KRAUSE, ROBERT 248034 <br> D.O.B. 10/11/68 <br> ALLERGIES: SULFA <br> Use Third   Date 3/15/07 | DIAGNOSIS (If Chg'd) <br> DC Prozac (Im medicin-compliant) <br> (Im refusing meds.) <br> S.Banerjee, MD <br> ☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: Krause, Robert #248034 <br> D.O.B. 10/11/68 <br> ALLERGIES: Sulfa <br> Use Second   Date 2/28/07 | DIAGNOSIS (If Chg'd) <br> ① BBP X 180 dys <br> ② ___ 730 min K 30 dys <br> ③ lifting 7 20# 365 dys <br> ④ no standing 365 dy <br> ☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: Krause, Robert #248034 <br> D.O.B. 10/11/68 <br> ALLERGIES: Sulfa <br> Use First   Date 2/6/07 | DIAGNOSIS <br> Biopsied in infirmary for 2hrs <br> Call Dr Pleasant if bleeds @ 2hrs <br> RTC on Feb 7, 2007 @ 8:00 Am <br> Motrin 600 mg PO TID X 7 days- <br> F/O Dr Pleasant / 8/weeks. Cpn <br> ☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |

MEDICAL RECORDS COPY

PHS101



**MHM Correctional Services, Inc.**

FOR PROFESSIONAL USE ONLY
**CONFIDENTIAL RECORD**
NOT TO BE PHOTO COPIED

## PHYSICIANS' ORDERS

| | |
|---|---|
| NAME: Krause, Robert<br>248039<br>D.O.B: 10 / 11 / 68<br>ALLERGIES: Sulfa<br>Noted 1-25-07 Manjula 0925<br><br>Use Last    Date: 1 / 25 / 07 | DIAGNOSIS (If Chg'd)<br>① TRUSS size 34" waist<br>— 365 days<br>② TKO prolonged standing 720 min<br>X 180 days<br>③ F/U in 4 wk    J. Rivera<br>☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: Krause, Robert<br>248039<br>D.O.B.: 10 / 11 / 68<br>ALLERGIES: Sulfa<br>Noted 340P C Johnston 12-21-06<br><br>Use Fourth    Date: 12 / 21 / 06 | DIAGNOSIS (If Chg'd)<br>Prozac 40 mg. po. q AM X 90 days.<br><br>SBanerjee, MD<br>☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: Krause, Robert<br>#248039<br>D.O.B.: 10 / 11 / 68<br>ALLERGIES: Sulfa<br>Noted 11/1/06 2pm<br><br>Use Third    Date: 11 / 1 / 2006 | DIAGNOSIS (If Chg'd)<br>2 tablets of peroxegesic q id X<br>4 days.<br>☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: KRAUSE, ROBERT<br>248034<br>D.O.B.: 10 / 11 / 68<br>ALLERGIES: SULFA<br>Noted 7pm C Johnston 09/2/06<br><br>Use Second    Date: 9 / 2 / 06 | DIAGNOSIS (If Chg'd)<br>D/c Pamelor (Im refusing)<br><br>SBanerjee, MD<br>☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |
| NAME: Krause, Robert<br>248034<br>D.O.B.: 10/11/68<br>ALLERGIES: SULFA<br><br>Use First    Date: 9 / 6 / 06 | DIAGNOSIS    Mood DW, NOS<br>Prozac 40 mg q AM X 90 Days<br>Pamelor 50mg q HS X 30 DAYS<br>☐ GENERIC SUBSTITUTION IS **NOT** PERMITTED |

WHITE – MEDICAL RECORDS COPY    CANARY – PHARMACY COPY

24019  BRIGGS, Des Moines, IA 50306  (800) 247-2343  PRINTED IN U.S.A.

PHS102



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

FOR PROFESSION...
CONFIDENTIAL RECORD
NOT TO BE PHOTO COPIED

### PHYSICIANS' ORDERS

---

NAME: Krause, Robert
#248034

D.O.B. 10/11/68
ALLERGIES: NKA

Use Last   Date 11/30/06

noted 11-30-06
moon part
840

DIAGNOSIS (If Chg'd)
① 1 Truss size 34 waist
   profile 365 days
② F/U 3 months c Truss
   on & in place

☐ GENERIC SUBSTITUTION IS NOT PERMITTED

---

NAME: Krause, Robert
#248034

D.O.B. 10/11/68
ALLERGIES: NKA

Use Fourth   Date 10/31/06

DIAGNOSIS (If Chg'd)
① HCU visit 4 weeks
   c pt wearing his
   Truss
② Niconorals from 2 mo
② Apple to resch qd 30g/30d

☐ GENERIC SUBSTITUTION IS NOT PERMITTED

---

NAME: Krause, Robert
248034      9/7/06
            1135 A

D.O.B. 10/11/68
ALLERGIES: NKDA

Use Third   Date 9/7/06

DIAGNOSIS (If Chg'd)
① Motrin 600 mg po BID x 90d PRN
② Athletic support (koe) / BB /
   ∅ straining / ∅ lift > 20 #'s
   x 180d   (R inguinal hernia
   descended into R scrotum)

☐ GENERIC SUBSTITUTION IS NOT PERMITTED

---

NAME: Krause, Robert
248034

D.O.B. 10/11/68
ALLERGIES: NKDA

Use Second   Date 9/6/06

DIAGNOSIS (If Chg'd)
① F/U c OPC in AM
   Re: Hernia

4-06
3 hr

☐ GENERIC SUBSTITUTION IS NOT PERMITTED

---

NAME: Krause, Robert
248034

D.O.B. 10/11/68
ALLERGIES: NKDA

Use First   Date 9/6/6

DIAGNOSIS
Capi, Chg s/ vo Delens CRP
& Icg) wt 209, 6.0

☐ GENERIC SUBSTITUTION IS NOT PERMITTED

---

**MEDICAL RECORDS COPY**

60110 (4/03)

PHS103